# 23-0278-cv

## United States Court of Appeals

*for the*

## Second Circuit

———◆———

HARMEETINDER BASSI, M.D.,

*Plaintiff-Appellant,*

— v. —

NEW YORK MEDICAL COLLEGE, PHELPS MEMORIAL HOSPITAL
ASSOCIATION, DBA Phelps Hospital, NORTHWELL HEALTH, INC., OPEN
DOOR FAMILY MEDICAL CENTER, INC., DBA Open Door Family
Medical Group, SHANTIE HARKISOON, M.D.,

*Defendants-Appellees.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF FOR DEFENDANTS-APPELLEES PHELPS MEMORIAL
HOSPITAL ASSOCIATION, DBA PHELPS HOSPITAL, NORTHWELL
HEALTH, INC. AND SHANTIE HARKISOON, M.D.**

JOHN KEIL
COLLAZO & KEIL LLP
*Attorneys for Defendants-Appellees
Phelps Memorial Hospital
Association, DBA Phelps Hospital,
Northwell Health, Inc. and Shantie
Harkisoon, M.D.*
747 Third Avenue
New York, New York 10017
(212) 758-7600

CP COUNSEL PRESS    (800) 4-APPEAL • (323409)

## CORPORATE DISCLOSURE STATEMENT
## PURSUANT TO FED. R. APP. P. 26.1(A)

Northwell Health, Inc. is a not-for-profit corporation organized under the laws of the State of New York. Northwell Health, Inc. is not publicly traded, nor does it have any corporate parents, subsidiaries, or shareholders that are publicly held.

Phelps Memorial Hospital Association, doing business as Phelps Hospital, is a not-for-profit corporation organized under the laws of that State of New York. Phelps Hospital is not a publicly traded company, nor does it have any corporate parents, subsidiaries, or shareholders that are publicly held.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION ...................................................... 1

STATEMENT OF ISSUES ................................................................ 2

STATEMENT OF FACTS ................................................................ 3

STANDARD OF REVIEW ............................................................... 15

SUMMARY OF ARGUMENT ........................................................... 15

ARGUMENT ............................................................................... 16

   **I.  THE DISTRICT COURT PROPERLY DISMISSED BASSI'S CLAIM OF DISCRIMINATION** ........................................................... 17

      A.  Bassi Did Not Suffer an Adverse Employment Action .............. 18

      B.  Bassi Has Offered No Admissible Evidence Challenging The Program's Determination That He Was Not Qualified To Advance To The Next Year ........................................................... 23

      C.  Bassi Has Not Offered Direct Evidence of Discriminatory Animus. ......... 30

      D.  Bassi Has Produced No Evidence of Pretext. ............................. 34

   **II.  THE DISTRICT COURT PROPERLY DISMISSED BASSI'S RETALIATION CLAIM** ........................................................... 38

      A.  Bassi Presented No Evidence of a Causal Connection Between His Complaint and the Program's Academic Decisions.................... 39

      B.  Bassi Has Failed to Offer Admissible Evidence of Pretext. ....... 44

  **III. THE DISTRICT COURT PROPERLY DISMISSED BASSI'S CLAIM FOR BREACH OF CONTRACT** ........................................... 47

      A.  Bassi Failed to Establish a Claim For Breach of Contract........... 47

      B.  The Program Implemented the Decisions of the Appeals Committee........ 53

**CONCLUSION** ........................................................................... 55

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                              <u>Page(s)</u>

*Abdel-Raouf v. Yale Univ.*, 2015 WL 687440 (D. Conn. Feb. 18, 2015)......... 25, 43

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).................................... 16, 17

*Auguste v. New York Hosp. Med. Ctr. of Queens*, 688 N.Y.S.2d 652
   (2nd Dep't 1999)...................................................................................49

*Barsoumian v. University at Buffalo*, 2013 WL 3821540
   (W.D.N.Y. July 23, 2013)......................................................................52

*Bickerstaff v. Vassar College*, 196 F.3d 435 (2d Cir. 1999)............................ 31, 33

*Boise v. N.Y. Univ.,* 2005 WL 2899853 (S.D.N.Y. Nov. 3, 2005) ................... 31, 33

*Boyar v. Yellen,* 2022 WL 120356 (2d Cir. Jan. 13, 2022) ....................................33

*Boyle v. Merrill Lynch*, 5 F. Supp. 3d 425 (W.D.N.Y. 2014)..................................21

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................................16

*Chiaramonte v. Animal Med. Ctr.*, 677 Fed.Appx. 689 (2d Cir. 2017)........... 29, 30

*Choquette v. Motor Information Systems, Inc.,* No. 15-CV-9338
   2017 WL 3309730 (S.D.N.Y. Aug. 2, 2017)........................................................47

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009
   206 L. Ed. 2d 356 (2020)......................................................................18

*Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033 (2d Cir. 1993)............................44

*D'Andrea v. Rafla-Demetrious*, 3 F.Supp.2d 239 (E.D.N.Y. 1996)................ 20, 52

*De Jong v. Kings Cty. Hosp. Ctr.*, 812 N.Y.S.2d 502 (1st Dep't 2006)..................49

*DeMarco v. Holy Cross High Sch.,* 4 F.3d 166 (2d Cir.1993). ...............................35

*Dorfman v. Doar Commc'ns, Inc.*, 314 F. App'x 389 (2d Cir. 2009) .....................46

*Douyon v. New York City Dep't of Educ.*, 665 F. App'x 54 (2d Cir. 2016)............34

*Fed. Ins. Co. v. Yusen Air & Sea Servs. Pte. Ltd.*, 2000 WL 280020
(S.D.N.Y. Mar. 14, 2000) .......................................................................28

*Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712 (2d Cir. 2010)............39

*Gertler v. Goodgold*, 487 N.Y.S.2d 565 (1st Dep't), aff'd, 66 N.Y.2d 946 (1985) 49

*Golden Pac. Bancorp v. FDIC,* 375 F.3d 196 (2d Cir. 2004) .......................... 31, 33

*Gordon v. New York City Bd. of Educ.*, 232 F.3d 111 (2d Cir. 2000)....................43

*Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509 (S.D.N.Y. 2015).........................23

*Hankins v. Temple University*, 829 F.3d 437 (3d Cir. 1987)............... 20, 24, 37, 54

*Harsco Corp. v. Segui,* 91 F.3d 337 (2d Cir. 1996).................................................47

*Irani v. Palmetto Health*, 767 F. App'x 399 (4th Cir. 2019) .................................25

*Irani v. Palmetto Health, Univ. of S.C. Sch. of Med.*, 2016 WL 3079466
(D.S.C. June 1, 2016 )............................................................................25

*Jackson v. Fed. Exp.*, 766 F.3d 189 (2d Cir. 2014) ......................................... 16, 43

*Jalal v. Columbia University*, 4 F.Supp.2d 224 (S.D.N.Y. 1998)..........................41

*Jamilik v. Yale Univ.*, 362 Fed. Appx. 148 (2d Cir. 2009) .....................................39

*Jeffreys v. City of New York*, 426 F. 3d 549 (2d Cir. 2005).............................. 17, 28

*Jennings v. Town of Stratford*, 263 F. Supp. 3d 391 (D. Conn. 2017)...................21

*Johnson v. Schmid*, 750 F. App'x 12 (2d Cir. 2018)...............................................33

*Johnson v. Wing*, 178 F.3d 611(2d Cir. 1999).......................................................15

*Josma v. New York City Health & Hosps. Corp.,* 2012 WL 3861171
(E.D.N.Y. Sept, 5, 2012)........................................................................42

*Joyner v. Greiner*, 195 F. Supp. 2d 500 (S.D.N.Y. 2002) .......................................45

*JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418
  (2d Cir. 2005) ............................................................................................. 15, 43

*Kalra v. HSBC Bank USA*, N.A., 567 F. Supp. 2d 385 (E.D.N.Y. 2008) ..............35

*Karimian v. Time Equities, Inc.*, 569 F. App'x 54 (2d Cir. 2014) ..........................36

*Kenford Co. v. Erie Cnty.,* 67 N.Y.2d 257, 493 N.E.2d 234 (1986). .....................53

*Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199 (2d Cir. 2006) ......34

*Kleyman v. SUNY Downstate Medical Center*, 2020 WL 5645218
  (E.D.N.Y. Sept. 21, 2020)....................................................................... 34, 36, 37

*Kulak v. City of New York*, 88 F.3d 63 (2d Cir. 1996)..............................................17

*Kwan v. Andalex Group, LLC*, 737 F3d 834 (2d Cir. 2013)....................................39

*Latif v. Univ. of Tx. SW Med. Ctr.*, 834 F.Supp.2d (N.D. Tex. 2011) ............. 19, 25

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ....... 16, 17

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ......................................17

*Meiri v. Dacon*, 759 F. 2d 989 (2d Cir. 1985) .........................................................16

*Meller v. Tancer*, 174 A.D.2d 374 (1st Dep't 1991) ...............................................53

*Miller v. Nat'l Ass'n of Sec. Dealers, Inc.,* 703 F. Supp. 2d 230
  (E.D.N.Y. 2010)..................................................................................................26

*Moukarzel v. Montefiore Med. Ctr.*, 652 N.Y.S.2d 281 (1st Dep't 1997)..............49

*National R.R. Passenger Co. v. Morgan*, 536 U.S. 101 (2002)..............................19

*Naumovski v. Norris*, 934 F.3d 200 (2d Cir. 2019) .................................................32

*Nigro v. Virginia Commonwealth University/ Medical College of Virginia*,
  492 Fed.Appx. 347 (4th Cir. 2012)....................................................................24

*Ochei v. Helene Fuld Coll. of Nursing of N. Gen. Hosp.*, 802 N.Y.S.2d 28
  (1st Dep't 2005) ...................................................49

*Opals On Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362 (2d Cir. 2002)..................36

*Papelino v Albany Coll. Of Pharm. of Union Univ.*, 633 F.3d 81 (2d Cir. 2011)...48

*Parish. v. Univ. Health Ctr. of Pi*, 2019 WL 5884996 (3d Cir. July 24, 2019) ......24

*Phillips v. Bowen*, 278 F.3d 103 (2d Cir. 2002) ......................................19

*Puglisi v. Town of Hempstead Sanitary Dist. No. 2*, 2014 WL 12843521
  (E.D.N.Y. Jan. 27, 2014) .......................................................... 46, 47

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 131, (2000) ................ 29, 36

*Regents of the University of Michigan v. Ewing*, 474 U.S. 214 (1985)..................50

*Rose v. NYC. Dep't of Ed.*, 257 F.3d 156 (2d Cir. 2001)........................................30

*Schaefer v. Brookdale Univ. Hosp. & Med. Ctr.*
  18 Misc. 3d 1142(A), 859 N.Y.S.2d 899 (Sup. Ct. 2008)...................................21

*Schaefer v. Brookdale Univ. Hosp. & Med. Ctr.* 18 Misc.3d 1142(A)
  (Kings Cty. 2008) ...............................................................53

*Schnabel v. Abramson*, 232 F.3d 83(2d Cir. 2000) ......................................... 34, 36

*Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169 (2d Cir. 2011) ............................21

*Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60 (2d Cir. 1997) ......................33

*Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87 (2d Cir. 2001)............. 43, 44

*Sotomayor v. City of New York*, 862 F.Supp.2d 226 (E.D.N.Y. 2012) ..................19

*St. Mary's Honor Ctr. v. Hicks*
  509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) ..................................35

*Stetson v. NYNEX Serv. Co.,* 995 F.2d 355 (2d Cir. 1993)....................................21

*Summa v. Hofstra Univ.*, 708 F.3d 115 (2d Cir. 2013)...........................................39

*Trejo v. Yale New Haven Hospital*, 2021 WL 6426773
(Ct. Sup. Ct. Dec. 14, 2021)...................................................................41

*Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176 (2d Cir. 1992) ...............................30

*Uddin v. City of N.Y.,* 427 F.Supp.2d 414 (S.D.N.Y. 2006)....................................19

*Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) ................45

*Vargas v. St. Luke's-Roosevelt Hospital Center*, 2020 WL 2836824 .....................31

*Varughese v. Mount Sinai Medical Center*, 2015 WL 1499618
(S.D.N.Y. Mar. 27, 2015) ....................................................... 17, 18, 34

*Vasquez v. New York City Dep't of Educ.*, 2015 U.S. Dist. LEXIS 75321
(S.D.N.Y. June 10, 2015)............................................................... 15, 43

*Vaughn v. City of New York*, 2010 WL 2076926 (E.D.N.Y. May 24, 2010) .........46

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015) ................45

*Webb v. Zimmer, Inc.*, 2019 WL 438361 (E.D.N.Y. Feb. 4, 2019)........................28

*Weeks v. New York State*, 273 F.3d 76 (2d Cir.2001).............................................19

*Weinstock v. Columbia Univ.*, 224 F.3d 33 (2d Cir. 2000).....................................35

*Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, (2d Cir.2000)) ...........21

*Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59 (2d Cir. 2015)...........................44

Statutes

28 U.S.C. § 1291 ...................................................................................................1

28 U.S.C. § 1331 ...................................................................................................1

28 U.S.C. § 1343 ...................................................................................................1

28 U.S.C. § 1367 ...................................................................................................1

42 U.S.C. § 1981 ................................................................................................1, 2

42 U.S.C. §2000e ..................................................................................................1

N.Y. Exec. Law § 296(7); .....................................................................................2

Rules

CPLR Article 78..................................................................................................48

Fed. R. Civ. P. 56(a)............................................................................................16

Fed.R.Civ.P. 56...................................................................................................28

Fed.R.Evid. 401 ..................................................................................................46

Fed.R.Evid. 404(b)..............................................................................................46

Fed.R.Evid. 608 ..................................................................................................46

Fed.R.Evid. 801(c)..............................................................................................46

Fed.R.Evid. 802 ..................................................................................................46

## STATEMENT OF JURISDICTION

The United States District Court for the Southern District of New York ("District Court") had subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 28 U.S.C. § 1367, as Plaintiff-Appellant Harmeetinder Bassi, M.D. ("Bassi") purported to assert claims under 42 U.S.C. § 1981 and 42 U.S.C. §2000e et seq., and also New York State law claims arising out of the same operative facts.

The United States Court of Appeals for the Second Circuit has jurisdiction, pursuant to 28 U.S.C. § 1291, to hear this appeal from the District Court's Opinion and Order entered on March 2, 2023, and the Judgment entered on March 2, 2023, granting Defendant-Appellees' motions for summary judgment.

On March 3, 2023, Bassi filed a Notice of Appeal. This appeal is from a final Judgment of the District Court, which disposed of all claims brought by Bassi.

<u>STATEMENT OF ISSUES</u>

1. Did the District court properly grant Defendants' motion for summary judgment dismissing Bassi's discrimination claims under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42. U.S.C. § 2000e et seq., and the New York Human Rights Law, N.Y. Exec. Law § 296(1) (NYS HRL);

2. Did the District court properly grant Defendants' motion for summary judgment dismissing Bassi's retaliation claim under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42. U.S.C. § 2000e et seq., and the New York Human Rights Law, N.Y. Exec. Law § 296(7) (NYS HRL);

3. Did the District court properly grant Defendants' motion for summary judgment dismissing Bassi's claim for breach of contract under New York Law, and deny Bassi's cross-motion for summary judgment on the same claim.

The Court should answer the foregoing questions in the affirmative.

<u>STATEMENT OF FACTS</u>

*Family Medicine Residency Program at Phelps Hospital*

Defendant-Appellee Phelps Memorial Hospital ("Phelps Hospital" or "Phelps"), a community hospital in Sleepy Hollow, New York, hired Defendant-Appellee Dr. Shantie Harkisoon in 2010 to create a Family Medicine Residency Program (the "Program"). JA-246-247. The Program was the product of collaboration between Phelps, Defendant-Appellee New York Medical College ("NYMC"), and Defendant-Appellee Open Door Family Medical Clinic ("Open Door"), pursuant to a written agreement. JA-249, 252. Under this arrangement, Phelps employs some administrators including the Program Director, JA-247, 341-342, employs the residents, provides financial support to the Program, JA-250-51, 374, and provides the venue for some of the Program's inpatient rotations. NYMC provided the academic sponsorship required for accreditation until July 1, 2017, when Defendant-Appellee Northwell Health, Inc., ("Northwell"; collectively with Phelps and Harkisoon, the "Hospital Defendants") assumed academic sponsorship of the Program. JA-251, 374. Open Door provides the outpatient medical clinic where the residents develop their skills as clinicians by working under the supervision of attending physicians predominantly employed by Open Door. JA-492, 497. Harkisoon served as the Program's first Program Director. JA-247. The Program was accredited by the Accreditation Council for Graduate Medical

Education ("ACGME") in 2011, and began training its first class of residents on July 1, 2012. JA-247. Medical school graduates must complete such a program as one of many prerequisites to become licensed to practice medicine.

Residents are assigned to work in Open Door's Family Medicine Clinic in Sleepy Hollow (the "Clinic") for 40 weeks of the year, JA-347-48; Open Door's faculty supervise them ("precept" them) in their interactions with patients and provide oral and written feedback on their performance. JA-280-281, 343. In their first year after medical school (first post-graduate year, or "PGY-1"), residents spend about four hours per week in the Clinic and see about one patient per hour. JA-278, 510, 527-28. Second-year residents ("PGY-2") spend about eight hours per week in the Clinic, and are expected to see six to eight patients in each half-day session. JA-278, 510, 529-30. Third-year residents ("PGY-3") spend about twelve hours per week in the Clinic, and are expected to see between eight and ten patients in each half-day session. JA-278, 510. By the end of their residency, residents see at least 1,650 patients in the Clinic. JA-173, 441. In addition to seeing more patients in shorter amounts of time, residents are expected to become more independent as they progress through the residency, JA-392-93; third-year residents are expected to need only minimal supervision to safely examine patients, diagnose their conditions, and develop a plan of care, so that one faculty member can supervise four of them at

once. JA-370, 440-41.  Residents interact with Open Door's physicians throughout the year. JA-524.

The academic year is divided into thirteen four-week rotations, most of which involve working with specialists in such fields as emergency medicine, internal medicine, psychiatry, intensive care, sports medicine, gynecology, surgery, and cardiology.  JA-349, 438-39, 532-33, 535.  The resident is typically not responsible for independently examining, diagnosing, and developing a plan of care for patients seen on rotation.  JA-326-27, 333, 392-93.  Depending on the rotation, a resident may work with a specific physician on rotation for as little as one week of the year. JA-327-28, 531.  Work on rotations occurs concurrently with work in the Clinic and other didactic activities.  JA-254.

ACGME guidelines require the Program to have a Clinical Competency Committee ("CCC") charged with evaluating resident performance and making determinations regarding academic progress, JA-249, 264; the CCC is primarily comprised of Open Door physicians involved in supervising the residents, the Program Director, and sometimes additional faculty members. JA-350, 375, 377, 493. Although no information is specifically excluded, resident performance is primarily assessed through the compilation of written evaluations by Clinic faculty and rotation faculty, test scores, and procedure logs.  JA-325, 407, 494, 502, 507, 511.  Each resident is assigned a faculty advisor, and every six months the advisor

compiles the resident's evaluations, together with information about procedure logs, test scores, and other resident activities or academic measures, into a draft "Summative Evaluation," which is presented to the CCC. JA-386, 353-54, 504-05, 552-54. The CCC uses the draft Summative Evaluation to evaluate the resident's progress with respect to specific competencies (sometimes called "Milestones") in Patient Care and Procedural Skills; Medical Knowledge; Practice-Based Learning and Improvement; Interpersonal and Communication Skills; Professionalism; and Systems-based Practice. JA-334, 391, 495, 498-99, 503-04, 576-580. No formal vote is taken; instead, the CCC revises the Summative Evaluation until there is a consensus among the members of the CCC as to its accuracy. JA-331-32, 352-54, 391, 422, 503, 554. The document is then signed by the advisor and presented to the resident. JA-301.

Based on its evaluation of a particular resident, the CCC decides whether a resident is qualified to advance to the next year of the residency or is qualified to graduate from the Program. JA-264, 353-54, 511. When a resident does not meet the Program's performance standards, the CCC policy calls for progressive discipline, beginning with an academic action plan typically lasting three months. JA-353-54, 378, 388-89. If the resident does not show satisfactory improvement, the plan may be extended, or the resident may be placed on remediation, which is a more formal academic action. JA-378, 421-22. Remediation may also be extended depending on

resident progress. JA-421-22. If remediation is unsuccessful, a resident is placed on probation. JA-361. Residents who fail probation are separated from the Program. JA-360. Probation and separation are subject to an internal appeal process. JA-287-88, 603-04.

*Bassi's Performance Before His Complaint to Human Resources*

Bassi became a resident in the Program in July 2014. JA-608. From the beginning he lacked the medical knowledge required to care for patients in a clinical setting. His 90-day evaluation noted deficiencies in medical knowledge, JA-632, 634, and his October 2014 summative evaluation stated that, although his performance was at that time otherwise appropriate for his level of training, his patient encounters were below the level expected for a PGY-1, and his medical knowledge and test-taking skills required improvement. JA-636, 640.

Concerns about Bassi's performance continued in 2015. Bassi's August 2015 performance evaluation noted that his medical charting was at times incomplete and delayed, his patient care was below the expected level of training, and he had difficulty gathering appropriate information and developing evidence-based management plans. JA-641-44. Accordingly, on September 4, 2015, the CCC placed Bassi on an academic action plan. JA-645-46. The plan stated that Bassi's performance would be reassessed on October 16, 2015 (id.).

On October 16, 2015, the CCC modified Bassi's academic action plan to recognize some progress, but continued to require improvement in his patient encounters and medical knowledge. JA-645-46. Continuing performance deficiencies were noted in a November 14, 2015 ambulatory evaluation finding that he frequently needed to look information up while seeing patients. JA-647-50. Bassi was notified on November 13, 2015 that his contract might not be renewed for the following PGY-3 year. JA-651. His academic action plan was again continued in December 2015 until February 2016. JA-652-53.

*Bassi's Complaint of Discrimination*

In late 2015 or early 2016, a member of the Phelps medical staff approached Harkisoon to express concern that the patka Bassi sometimes wore in lieu of a turban seemed less professional than it could be. JA-285. Assuming that Bassi would want to be aware of the comment, JA-294-95, and believing the feedback would be easier to receive from a peer than from the Program Director, JA 289-90, Harkisoon asked one of the Chief Residents to approach Bassi privately and convey the feedback. JA-289. Bassi filed a complaint with Phelps's Department of Human Resources, as well as with the Clinic, over this feedback. JA-427-28. In response to his complaint, on January 28, 2016, Harkisoon met with Bassi, a representative from Phelps's and the Clinic's Human Resources Departments, and both Chief Residents. JA-292, 429,

556-58. Harkisoon apologized for any miscommunication, JA-293-94, 432, 438, and told Bassi that he was free to wear any religious articles he wished. JA-297, 431-32. Shortly after this meeting, to avoid any appearance of impropriety, Harkisoon largely removed herself from direct supervision of Bassi. JA-299-301. When asked at deposition whether he could identify any way that the Defendants should have responded differently to his complaint, Bassi answered in the negative.  JA-175.

*Bassi's Performance Deficiencies Continue*

Before Bassi's complaint, the CCC had recommended on January 22, 2016, that Bassi obtain a neuropsychological evaluation to help him learn, retain, and apply information in a clinical setting, and separately to seek out resources to manage anxiety that appeared to be interfering with his performance in the outpatient clinic. JA-417, 668.

Despite this intervention, Bassi did not show improvement. In an ambulatory evaluation from February 4, 2016, Dr. Rebecca Collins – who was unaware of Bassi's complaint to Human Resources, JA-359 – observed that Bassi was not functioning at the level expected of him or his peers. She noted that Bassi struggled with multiple levels of the encounter, was unable to complete patient visits within 30 minutes, lacked adequate medical knowledge, and was insufficiently skilled in physical examinations.  JA-669-72.  On February 12, 2016, the CCC placed Bassi

on remediation and also warned him of his potential termination from the Program. JA-673-74, 771.

Through the remainder of the winter and spring in 2016, Bassi exhibited no improvement, and multiple evaluations detail his continuing lack of medical knowledge and clinical insufficiency. JA-278-279, 453-56, 686-706. Harkisoon noted, JA-689, that "It is apparent that Dr. Bassi has invested time and effort, unfortunately the knowledge gained does not seem to support care on subsequent presentations of the same types of medical cases... Dr. Bassi is unable to manage patients independently and is not functioning at the level of a PGY-2 family medicine resident." Dr. Mary Rose Puthiyamadam noted, JA-700, "Despite multiple one on one precepting sessions as well as specific written feedback little improvement noted. There is now a concern that he is not competent to see patients independently." Dr. Samantha Rai emailed to Bassi, JA-706, "We cannot increase your patient volume until we can assure patient safety."

On June 17, 2016, the CCC sent Bassi a "Notice of Termination", stating that due to his continued failure to meet expectations, he did not satisfy the requirements for promotion to PGY-3, and that although his contract as a resident would be extended for six months until December 31, 2016, Bassi would be on academic probation during that period. JA-707-08.

Bassi appealed the decision not to promote him to PGY-3 pursuant to the Program's internal appeals process to a panel of three uninvolved members of the medical staff appointed by the Chair of the Graduate Medical Education Committee ("GMEC"). JA-302-06, 707-09. On November 23, 2016, the Appeals Committee upheld the CCC's decision not to promote Bassi, citing his "demonstrated deficiencies" and failure to meet expectations of the PGY-2 level of training. JA-710. The Appeals Committee recommended, however, that Bassi repeat the PGY-2 year in full, rather than be terminated in December 2016. JA-710. It left to the Program to determine what credit Bassi should receive, and recommended that Bassi receive increased supervision to help him succeed. JA-710.

The Program accepted the Appeals Committee's recommendation that Bassi should repeat his PGY-2 year, but decided that given the deficiencies in Bassi's performance, which the Appeals Committee recognized, he would be on remediation for the remainder of the PGY-2 year. JA-711-12. In the letter informing Bassi of this decision, the CCC further stated that Bassi's employment would be terminated if he failed to meet the Program's performance standards (id.).

Bassi continued to show no improvement. In February 2017, Dr. Sara Paul (then Bassi's advisor) recorded a patient encounter where Bassi examined a patient appropriately, but his presentation, reported findings, and diagnosis were incorrect, with no findings to support his diagnosis of acute otitis externa ("AOE"), a type of

bacterial ear infection. JA-713-16. Illustrating one of Bassi's recurring performance failures, this review noted that although Bassi correctly recited the criteria for a diagnosis of AOE when prompted, he failed to recognize that the patient did not meet those criteria (id.). On March 1, 2017, Dr. Rebecca McAteer noted, among other issues, that Bassi was "unable to organize his thoughts and approach sufficiently to complete the . . . patient care process, a requirement for any medical clinician to have mastered, in a timely fashion". JA-717-19. Evaluations by other physicians around the same time documented similar concerns. JA-720-28.

These shortcomings were summarized in Bassi's April 2017 Summative Evaluation, which stated that Bassi's patient histories were "still frequently repetitive and unstructured," resulting in incomplete and inaccurate assessments. JA-729-38. The evaluation further described Bassi's failure to translate general principles into specific patient care plans and education, his failure to consistently link specific exam findings with diagnoses, and his continued reporting of incorrect exam findings and overlooking potentially dangerous diagnoses (JA-731). The evaluation concluded that despite dedicating "maximum resources" to Bassi's education, including but not limited to individualized precepting for every session, biweekly advisor meetings, and extended time to see patients, Bassi was unable to "concisely, clearly and accurately assess, treat, present and educate" patients and therefore did not meet the required level of competency for promotion to PGY-3

(JA-738). Bassi did not appeal this decision to deny him promotion to PGY-3. JA-287-88.

*Bassi Fails to Improve and is Terminated*

On June 9, 2017, following a pre-termination hearing on June 2, JA-739, Bassi received formal notice of his termination from the Program. JA-740-42. This letter identified specific performance deficiencies, including Bassi's failure to consistently gather appropriate data from patients; his failure to summarize, record, and synthesize the data correctly and into an appropriate assessment and plan; his failure to independently demonstrate knowledge during patient care or apply his knowledge as would be expected of a PGY-2; his failure to consistently limit patient encounters to 20-30 minutes; and his failure to complete and sign off on medical documentation without prompting. JA-743-45.

*Bassi Appeals his Removal from the Program and is Reinstated as a PGY-2*

Bassi's appeal of his termination was heard by the same panel that heard his prior appeal. JA-710, 757. On August 10, 2017, Harkisoon received the Appeals Committee's decision, which held that no new information had been presented warranting departure from its prior decision, and so recommended reinstatement. JA-746, 757. The Program agreed to reinstate Bassi effective September 11, 2017, under the direct supervision of a newly hired faculty member. JA-758. Given the CCC's continuing lack of confidence in Bassi's ability to safely and independently

13

care for patients, Bassi was reinstated as a PGY-2, on a four-month probation plan. JA-488, 758. Bassi rejected this decision, alleged that he was constructively discharged, and refused to return to the Program. JA-461-62.

*Procedural History*

Bassi initially filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC). The EEOC issued a Notice of Right to Sue, and Bassi commenced this action by filing a Summons and Complaint in the Southern District of New York on August 12, 2019. On August 28, 2020, after a pre-motion conference, Bassi moved to file an Amended Complaint to add claims for breach of contract against defendants Phelps Hospital and NYMC, and claims for tortious interference with contract against Harkisoon and NYMC. In an oral ruling via teleconference on February 18, 2021, the district court (Andrew E. Krause, M.J.) granted Bassi's motion as to Phelps and NYMC, but denied it as to Harkisoon. On January 20, 2022, all Defendants moved for Summary Judgment to dismiss Bassi's Amended Complaint, and Bassi cross-moved for Summary Judgment with respect to his claim for breach of contract. By Opinion and Order dated March 2, 2023, the District Court (Nelson S. Román, D.J.), granted Defendants' Motions and denied Bassi's. This appeal followed.

STANDARD OF REVIEW

The standard of review on appeal from summary judgment is *de novo*. *Johnson v. Wing*, 178 F.3d 611, 614 (2d Cir. 1999).

SUMMARY OF ARGUMENT

The district court properly granted the Hospital Defendants' motion for Summary Judgment because Bassi failed to raise a genuine issue of material fact regarding the grounds for his non-promotion in the Program. The Hospital Defendants produced abundant evidence of Bassi's poor clinical performance as documented by many different supervising physicians. Bassi, in turn, cannot show he was qualified to advance to PGY-3, cannot show his evaluations were tainted by discriminatory or retaliatory animus, and has offered no evidence of pretext. Bassi's claim for breach of contract fails, among other reasons, because he cannot establish his contractual right to credit or promotion to PGY-3, and he cannot show any contractual entitlement to damages.

On Appeal, Bassi has abandoned a number of claims asserted below by failing to raise them in his brief, including all claims against Defendant Harkisoon for tortious interference with contract or individual liability under N.Y. Exec. Law § 296 (NYS HRL) or § 1981. See *JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005); *Vasquez v. New York City Dep't of Educ.*, 2015 U.S. Dist. LEXIS 75321, at *39 (S.D.N.Y. June 10, 2015) (party waives

or abandons argument by failing to raise it); see also *Jackson v. Fed. Exp.*, 766 F.3d 189, 197–98 (2d Cir. 2014) ("Where a partial response to a motion is made—i.e., referencing some claims or defenses but not others ... in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

Accordingly, the decision below should be affirmed in its entirety.

<u>ARGUMENT</u>

Summary judgment is appropriate if there is no genuine dispute of material fact regarding an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Fed. R. Civ. P. 56(a). "The salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to ... other areas of litigation." *Meiri v. Dacon*, 759 F. 2d 989, 998 (2d Cir. 1985).

To avoid summary judgment, a plaintiff must offer admissible evidence, rather than conclusions, speculation, or guesswork, to show that there are specific facts in question to be decided at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-52 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Conclusory allegations or unsubstantiated speculation are insufficient to avoid summary judgment. *Jeffreys v. City of New York*, 426 F. 3d 549,

554 (2d Cir. 2005). If the nonmoving party's evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986); see *also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986) Summary judgment must be granted unless a plaintiff presents "concrete particulars" to substantiate his claim, and to show that there is a genuine issue of material fact for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-586, 106 S. Ct. 1348, 1356 (1986); *Kulak v. City of New York*, 88 F.3d 63, 70 (2d Cir. 1996).

## I. THE DISTRICT COURT PROPERLY DISMISSED BASSI'S CLAIM OF DISCRIMINATION

Discrimination claims under 1981, Title VII, and the NYS HRL are assessed under the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and its progeny.[1] *Varughese v. Mount Sinai Medical Center*, 2015 WL 1499618, at *38 (S.D.N.Y. Mar. 27, 2015) (pathology resident asserting claims under 1981, Title VII, and NYS HRL). Bassi must produce evidence that he belongs to a protected class; that his performance was satisfactory; that he suffered an adverse employment action; and the action occurred under conditions suggesting discrimination. *Varughese, supra*. If the Hospital Defendants articulate a legitimate, non-discriminatory reason for the adverse action, Bassi must show that that reason

---

[1] Bassi's claims arose New York before the legislature's June 5, 2019 amendment to the New York Executive Law.

is a pretext for discrimination to avoid summary judgment. *Id.* Bassi has cited *Sutera v Schering Corp.,* 73 F.3d 13, 17 (2d Cir 1995), a case brought under the Age Discrimination in Employment Act, to argue that he need not show the employer's proffered reasons were false or played no role in the employment decision, but only that a prohibited factor was at least one of the motivating factors. As explained in *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1011, 206 L. Ed. 2d 356 (2020), however, establishing merely a "motivating" factor would preclude Bassi from recovering damages or being awarded reinstatement under Title VII; "but-for" causation remains the standard under which Bassi seeks recovery under Title VII, and "but-for causation" remains only applicable standard for §1981 claims. In any event, Bassi has failed to meet either of these standards.

Bassi cannot establish (1) satisfactory work performance; (2) adverse employment action; and (3) conditions suggesting discrimination. Nor does Bassi have admissible evidence challenging the veracity of the Program's grounds for dismissing and failing to promote him, or showing that discrimination played a role in that decision.

### A.    Bassi Did Not Suffer An Adverse Employment Action

On appeal, Bassi fails to identify the occurrences during his residency, if any, that he still contends are adverse employment actions; nothing he identified below qualifies.

1. Negative evaluations, non-promotion, denial of credit, and heightened scrutiny were academic decisions rather than adverse employment actions.

Bassi cannot claim employment discrimination merely because instructors were critical of his patient care:  criticizing an employee in the course of correcting his work is not an adverse employment action, nor is subjecting an employee to more frequent evaluation, especially where, as here, the individual is on academic remediation.  *Sotomayor v. City of New York*, 862 F.Supp.2d 226, 254 (E.D.N.Y. 2012); see also *Latif v. Univ. of Tx. SW Med. Ctr.*, 834 F.Supp.2d 518 (N.D. Tex. 2011) (repeating a rotation not an adverse employment action). Bassi's interactions with patients were sometimes recorded on video for instructional purposes, JA-1452-53, and Harkisoon explained without contradiction that this was a teaching tool to help Bassi assimilate performance feedback.  JA-318.  *See Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002) (reprimands, threats of disciplinary action, and excessive scrutiny not adverse employment actions without other negative results such as a decrease in pay or being placed on probation.); *Uddin v. City of N.Y.,* 427 F.Supp.2d 414, 429 (S.D.N.Y. 2006); see *also Weeks v. New York State*, 273 F.3d 76, 86 (2d Cir.2001) (criticism not an adverse employment action), abrogated on other grounds, *National R.R. Passenger Co. v. Morgan*, 536 U.S. 101, 122 (2002).

As for the denial of credit, Bassi has presented no evidence of his competency in the Milestones. As Harkisoon testified, the CCC prepared – at Bassi's insistence – a list of rotations that he had completed to facilitate his potential transfer to another program. JA-255, 257, 320, 323. The CCC, mindful of the Milestones, assigned putative credit based on an assessment of the harm done to his professional development if he did not repeat them. JA-261, 320-23. Although Bassi now recasts this conciliatory gesture as an adverse action, requiring additional training to ensure basic clinical skills, i.e., "denial of credit," is entirely appropriate. *Hankins v. Temple University*, 829 F.3d 437, 442 (3d Cir. 1987). See also *D'Andrea v. Rafla-Demetrious*, 3 F.Supp.2d 239 (E.D.N.Y. 1996) (courts reluctant to opine whether plaintiff "satisfactorily performed" the requirements of the residency unless denial arbitrary, irrational, or in bad faith).

Accordingly, Bassi does not suffer a materially adverse change in terms and conditions of employment where the Hospital Defendants deemed him unready to advance to PGY-3. See *Barsoumian v. University at Buffalo*, 594 Fed.Appx. 41 (2d Cir. 2015) (reasonable for resident to be required to repeat the year subject to probation after reinstatement).

2.  Bassi failed to establish constructive discharge.

On appeal, Bassi appears to have abandoned his claim of constructive discharge.  Such a claim would require showing that defendants deliberately made his working conditions so intolerable that a reasonable person would feel compelled to resign.  See *Jennings v. Town of Stratford*, 263 F. Supp. 3d 391, 404 (D. Conn. 2017), citing *Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 185 (2d Cir. 2011). *See also Boyle v. Merrill Lynch*, 5 F. Supp. 3d 425, 437 (W.D.N.Y. 2014) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir.2000)). Constructive discharge cannot be established simply through evidence that an employee was dissatisfied with his assignments, feels that his work was unfairly criticized, or experienced difficult or unpleasant working conditions. *Stetson v. NYNEX Serv. Co.,* 995 F.2d 355, 360 (2d Cir. 1993).  Nor can Bassi assert constructive discharge by asserting that the Hospital Defendants ruptured the employment relationship, as non-promotion of a resident on academic grounds fails to state a contract claim. See *Schaefer v. Brookdale Univ. Hosp. & Med. Ctr.*, 18 Misc. 3d 1142(A), 859 N.Y.S.2d 899 (Sup. Ct. 2008), *aff'd*, 66 A.D.3d 985, 888 N.Y.S.2d 122 (2009) (no claim for constructive discharge where hospital declined to renew residency and promote resident to the next year of the program on academic grounds).

Below, Bassi claimed constructive discharge because he thinks the terms of his reinstatement – placement again in PGY-2, on academic probation, and with a newly-hired dedicated advisor – were unduly punitive, but an employee cannot prove constructive discharge merely because he was dissatisfied with his assignments, thought his work was unfairly criticized, or experienced difficult or unpleasant working conditions.

Here, going far what was done for the resident in *Schaefer,* the record shows that the Program faculty gave Bassi every opportunity for success, including intensive individualized instruction in the face of his inadequate performance. JA-355, 700, 738, 768-70. Bassi resigned rather than perform the work expected of him, and this precludes his claim for breach of contract. *Id*. Given that the Program agreed to reinstate Bassi as recommended by the Appeals Committee, and concluded Bassi had not satisfied their criteria to advancement to the third year of his residency, it was reasonable to require Bassi to return as a PGY-2 resident on probation. *Barsoumian v. University at Buffalo*, 594 Fed.Appx. 41 (2d Cir. 2015) (reasonable for resident to be required to repeat the year subject to probation after reinstatement). *Cf. Schaefer v. Brookdale Univ. Hosp. & Med. Ctr.*, 18 Misc.3d 1142(A) (Kings Cty. 2008) (no breach of contract where hospital declined to renew residency and promote resident to the next year of the program on academic grounds).

Further, as noted by the district court (S.P.A.-33 n.10; cf. JA-1064), Bassi failed to appeal his academic placement, and it is well-established that an employee cannot assert a claim of constructive discharge unless he exhausts the reasonable procedures the employer has provided to address his grievances. *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 525 (S.D.N.Y. 2015) (employee who fails to explore alternative avenues offered by the employer before resigning cannot assert constructive discharge). Accordingly, Bassi failed to articulate an actionable adverse employment action.

B.   Bassi Has Offered No Admissible Evidence Challenging The Program's Determination That He Was Not Qualified To Advance To The Next Year

Bassi was not promoted to the next academic year because the CCC determined that he did not consistently treat patients in a safe, independent, and timely manner commensurate with the expected performance of a PGY-3 resident. JA-729-738.

1.  Bassi did not meet the Milestones required to advance in the Program.

a.  *Bassi produced no evidence calling into question the sincerity of the evaluations he received.*

The Hospital Defendants produced voluminous evidence that Bassi's performance was deficient from the beginning of his residency. In October 2014, his 90-day evaluation noted deficiencies in medical knowledge, JA-628-34, and his

October 2014 summative evaluation noted that his patient encounters were below average and his medical knowledge and test-taking skills required improvement. JA 635-640. Plaintiff continued to receive consistently negative evaluations of his clinical performance from multiple instructors for the next three years, with each evaluation identifying the same flaws: he did not safely and independently apply his medical knowledge to appropriately diagnose and develop treatment plans for patients in a clinical setting. JA-641-46, 686-706. Bassi claims in rebuttal that his performance was not fairly evaluated, but he produced no evidence challenging the factual basis of the evaluations he received.

Courts decline to second-guess well-documented concerns about a resident's ability to provide proper medical care in a clinical setting. *Nigro v. Virginia Commonwealth University/ Medical College of Virginia*, 492 Fed.Appx. 347 (4th Cir. 2012) (despite some average or positive reviews on non-substantive criteria, no evidence of departure from accepted academic norms in finding resident's performance deficient and in requiring, among other things, repetition of academic year); *Hankins v. Temple University*, 829 F.2d 437 (3d Cir. 1987) (no evidence casting doubt on legitimacy of university's academic judgment*); Parish v. UPMC Univ. Health Ctr. of Pittsburgh*, 373 F. Supp. 3d 608, 630-32 (W.D. Pa. 2019), *cause dismissed sub nom.*, *Parish. v. Univ. Health Ctr. of Pi*, 2019 WL 5884996 (3d Cir. July 24, 2019) (pregnancy and sex discrimination claims dismissed due to well-

24

documented and largely undisputed evidence of poor medical knowledge and clinical performance); *Irani v. Palmetto Health, Univ. of S.C. Sch. of Med.*, 2016 WL 3079466, at *30-32 (D.S.C. June 1, 2016 ) , *aff'd sub nom. Irani v. Palmetto Health*, 767 F. App'x 399 (4th Cir. 2019) (resident claiming he was called "Achmed the Terrorist" failed to show discrimination in academic standards where several faculty members found his performance unacceptable and he was placed on remediation several times); *Abdel-Raouf v. Yale Univ.*, 2015 WL 687440, at *5 (D. Conn. Feb. 18, 2015) (deferring to institution's academic judgment where plaintiff offered only his own opinion to dispute less than laudatory comments, and his own witnesses and exhibits showed he was unprepared to function independently as required in the third year of residency). *Cf. Latif v. Univ. of Texas Sw. Med. Ctr.,* 834 F. Supp. 2d 518, 527-28 (N.D. Tex. 2011) (national origin claim dismissed where plaintiff failed his final clinic rotation and could not show he was treated worse than those outside the protected group). As in the foregoing cases, the Hospital Defendants' evidence of Bassi's clinical deficiency is unrebutted, and the district court properly granted their motion for summary judgment.

### b. *Bassi's supporters outside Program Faculty did not provide evidence that Bassi met the Milestones.*

Bassi purports to identify an issue of fact by contrasting his clinical evaluations with positive feedback from other quarters. Such feedback is neither competent nor relevant for purposes of measuring Bassi's academic progress,

because there is no evidence that the anecdotes reported by Dr. Johnny Kovoor (JA-1470), the physicians supervising Bassi's performance in rotations other than family medicine, or his peers were commenting on his performance with respect to the Program's ACGME-approved Milestones for advancement; none of them were responsible for certifying Bassi's fitness to practice to the licensing board. The same is true for Bassi's performance on the National In-Training Examination; although Bassi's improved performance on that test may be commendable, it did not measure his application of medical knowledge in a clinical setting, where his deficiencies were most pronounced.

Even if Bassi had introduced evidence of an informed difference of opinion regarding his performance, "[t]he relevant inquiry is not whether the performance-based justification for plaintiff's termination articulated by defendant is accurate or fair, but whether plaintiff can show any evidence that it was not the actual justification." *Miller v. Nat'l Ass'n of Sec. Dealers*, *Inc.,* 703 F. Supp. 2d 230, 247 (E.D.N.Y. 2010). This, Bassi has utterly failed to do. As a result, the praise Bassi received from supporters outside the CCC and Program faculty failed to create an issue of fact regarding his qualifications for academic advancement.

> c. *The 2017 Appeals Committee Decision did not comment on whether Bassi met the Milestones or whether Bassi was qualified to advance to the next year of his training.*

Bassi also misstates the decision of the Appeals Committee. By its terms, the Appeals Committee's August 9, 2017 decision stated that "No new information was presented to warrant the committee's departure from its decision, to reinstate Dr. Bassi." JA-757. The Appeals Committee's prior decision on November 23, 2016, in turn, had recommended that "Dr. Bassi and the program would be best served by repeating the PGY2 year, of which credit may be given as deemed proper, such that *if successful* he would start the PGY3 year in July 2017. It is hoped through increased supervision of faculty designated to help him succeed, Dr. Bassi will graduate from the program, and achieve success as a Family Practice Physician." JA-710 (emphasis supplied). In other words, the Appeals Committee did not guarantee that Bassi would successfully complete PGY-2 in November 2016, and did not opine in August 2017 that he had done so.

As a result, although the Appeals Committee recommended that Bassi be reinstated and be permitted to continue his training, its 2017 decision did not depart from its 2016 decision to defer entirely to the Program with respect to questions of credit, academic placement, and advancement. Contrary to Bassi's claims, the Appeals Committee did not hold that he satisfied the Milestones or qualified for

promotion to PGY-3; it simply recommended his reinstatement. JA-710, 757. As a result, Bassi failed to establish his qualifications for advancement in the Program.

### 2. Bassi's argument about excluding testimony of "interested witnesses" misapplies Fed.R.Civ.P. 56.

Bassi attempts to disregard admissible evidence by baselessly impugning the credibility of witnesses, and by insisting on an eccentric interpretation of Fed.R.Civ.P. 56 that derives from the misreading of two cases. In the first instance, Bassi presented no evidence that Defendants' witnesses lacked trustworthiness, and simply saying that a jury could choose not to credit their testimony is insufficient. See *Jeffreys v. City of New York*, 426 F. 3d 549, 554 (2d Cir. 2005). To the contrary, it is well-established that a plaintiff cannot avoid summary judgment by accusing the defendant's witnesses of lying, or claiming that witnesses could be discredited on cross-examination. See *Webb v. Zimmer, Inc.*, 2019 WL 438361, at *12 (E.D.N.Y. Feb. 4, 2019) ("The Plaintiff is not permitted to use an affidavit "that impeaches, without explanation, sworn testimony" to defeat summary judgment."); *Fed. Ins. Co. v. Yusen Air & Sea Servs. Pte. Ltd.*, 2000 WL 280020, at *4 (S.D.N.Y. Mar. 14, 2000) (questioning of the credibility of witnesses was insufficient to preclude a motion for summary judgment), *rev'd and remanded on other grounds*.

Further, Bassi seeks to exclude the Program's testimony by rewriting the Federal Rules of Civil Procedure. Fed.R.Civ.P. 56(c)(1)(A) explicitly permits a moving party to rely, *inter alia*, on depositions and affidavits, without restrictions as

to the identity of the witness. He misquotes *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 131, 151 (2000) to hold that "a court must disregard the testimony and evidence that comes from interested witnesses" (App. Br. at 41), when *Reeves* says nothing of the kind: quoting an excerpt from a treatise on civil procedure, the Court merely said that the district court should not make credibility determinations, not that the moving party has an obligation on summary judgment to find witnesses who have no interest in the outcome of the case. *Hayes v. City of NY*, 2014 U.S. Dist. LEXIS 92953, at *16 (S.D.N.Y. July 7, 2014), concerned a motion for summary judgment based solely on witness testimony concerning whether a police officer had probable cause for an arrest, where the non-moving party had failed to submit a Counterstatement of Undisputed Facts. The district court's decision to deny summary judgment solely on the basis of conflicting witness testimony in *Hayes* did not imply that parties in other cases were barred from offering testimony in support of their own motion, and no court has construed it as such. Finally, *Chiaramonte v. Animal Med. Ctr.*, 677 Fed.Appx. 689 (2d Cir. 2017), as noted by the district court, S.P.A.-19 n.4, says the opposite of what Bassi claims: "That an "interested witness" has testified regarding a certain issue, however, does not in and of itself raise a genuine issue of material fact." *Id.* at 693. This Court went on in the next sentence to reaffirm that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth

29

specific facts showing that there is a genuine issue for trial. *Id*. That, Bassi has utterly failed to do.

Accordingly, the district court properly dismissed Bassi's retaliation claims, and its decision should be affirmed.

C. <u>Bassi Has Not Offered Direct Evidence of Discriminatory Animus.</u>

1. Bassi has not offered any direct evidence

"Direct evidence" is evidence that does not require the factfinder to draw inferences to conclude that discrimination or retaliation motivated an employment decision, and Bassi's claim to have "direct evidence" of discrimination or retaliation misrepresents both the law and the record. "Direct evidence" is not, as his argument suggests, merely evidence that he thinks helps his case, but evidence that does not require the factfinder to draw any inferences to find that discrimination or retaliation motivated an employment decision. In effect, only an admission that the decision was made because of an impermissible factor meets this standard. *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1185 (2d Cir. 1992) (the admission "I fired him because he was too old" is direct evidence, but even a highly-probative statement like "You're fired, old man" still requires the factfinder to infer that the plaintiff's age had a causal relationship to the decision, hence is not direct evidence). See*, e.g., Rose v. NYC. Dep't of Ed.*, 257 F.3d 156, 162 (2d Cir. 2001)(supervisor saying plaintiff to be replaced with someone "younger and cheaper" was direct

30

evidence); *contrast Vargas v. St. Luke's-Roosevelt Hospital Center*, 2020 WL 2836824 (S.D.N.Y. June 1, 2020) (not direct evidence to say disabled employee had "no rights" and "it was not looking good for him"; comments open to non-discriminatory interpretations). Animus may be established either by direct evidence of an intent to discriminate or by establishing circumstances giving rise to an inference of discrimination. See *Vega*, 801 F.3d at 87. It is well-established that "personal speculation is insufficient as a matter of law to raise an inference of discrimination," *Boise v. N.Y. Univ.,* 2005 WL 2899853, at *4 (S.D.N.Y. Nov. 3, 2005), and so his claim should be dismissed. *Bickerstaff v. Vassar College*, 196 F.3d 435, 558 (2d Cir. 1999) (courts must distinguish inference from speculation or conjecture); *Golden Pac. Bancorp v. FDIC,* 375 F.3d 196, 200 (2d Cir. 2004) (conclusory allegations or speculation).

Here, Bassi falsely claims he submitted "direct evidence" of discrimination: at most, he claims someone reported that someone else said he looked unprofessional *without* his turban. JA-289-92, 297. He was also told unequivocally by Harkisoon that he could wear whatever religious articles his faith required. JA-297, 431-32. Such comments do not speak at all to Bassi's academic or clinical performance, or his prospects for advancement, and his turban and patka are mentioned nowhere in the clinical evaluations of performance on which his advancement depended. As a result, the stray remarks Bassi alleges are not direct evidence of discrimination, and

are insufficient to raise a plausible inference of employment discrimination. See

*Naumovski v. Norris*, 934 F.3d 200, 215-16 (2d Cir. 2019).

> 2. Bassi has produced no evidence of discriminatory disparate treatment or an unlawful motivating factor in any decisions that were made concerning him.

In addition, Bassi has identified no admissible evidence that he was judged

harshly or failed to advance in the residency program because of his religion, race,

or national origin. Bassi wore his turban when he interviewed for the residency

program, JA-426, and throughout his residency. JA 433, 519-21, 531. He admits

that no other references were made to his religious practice throughout his residency,

JA-426, 435, 452, and admits that he had no knowledge of discriminatory animus

on the part of the preceptors and attending physicians who criticized his performance

in the Clinic. JA-443-45, 457-58, 468-73. When he complained to Human

Resources, Harkisoon apologized for the misunderstanding, JA 293-94, 432, 438,

and told him unequivocally that he could wear whatever garments he considered

appropriate as a matter of religious observance. JA-297, 431-32. After this, there

were no further comments or negative interactions about to his turban or patka. JA-

426, 435, 522. Bassi also failed to identify anything that the Hospital Defendants

should have done differently to respond to his complaint. JA-175. Instead, Bassi

testified that it is merely his perception that discrimination took place, and that he

witnessed nothing to substantiate this, because he does not "know what was said behind closed doors".  JA- 436, 445.

It is well-established that "personal speculation is insufficient as a matter of law to raise an inference of discrimination," *Boise v. N.Y. Univ.,* 2005 WL 2899853, at *4 (S.D.N.Y. Nov. 3, 2005), and so his claim should be dismissed. *Bickerstaff v. Vassar College*, 196 F.3d 435, 558 (2d Cir. 1999) (courts must distinguish inference from speculation or conjecture); *Golden Pac. Bancorp v. FDIC,* 375 F.3d 196, 200 (2d Cir. 2004) (conclusory allegations or speculation).

Further, Bassi has failed to produce any relevant or admissible evidence regarding differential treatment of his peers.  None of his peers, notably, were the subject of decisions by the Appeals Committee calling for "increased supervision of faculty designated to help him succeed," JA-750, nor is there any evidence that Bassi's peers consistently exhibited the academic and clinical deficiencies documented so extensively in Bassi's evaluations.  JA-446-47, 450.  *Boyar v. Yellen, ,* 2022 WL 120356, at *2 (2d Cir. Jan. 13, 2022) (to be similarly situated, comparators must be alleged to have exhibited similar disapproved behaviors or similar poor performance); see *also Shumway v. United Parcel Serv., Inc*., 118 F.3d 60, 64 (2d Cir. 1997) (to be similarly situated, the individuals to whom plaintiff compares himself must be similar in all material respects); *Johnson v. Schmid*, 750 F. App'x 12, 17 (2d Cir. 2018) (no reasonable jury could find that supervisors were

33

similarly situated to trainee).  See also *Kleyman v. SUNY Downstate Med. Ctr.*, 2020 WL 5645218, at \*18 (E.D.N.Y. Sept. 21, 2020) (underperforming resident not similarly situated to peers).  As a result, Bassi failed to establish evidence of disparate treatment, and his claim was properly dismissed by the district court.

    D.    <u>Bassi Has Produced No Evidence of Pretext.</u>

It is undisputed that to avoid summary judgment, a Plaintiff has to provide evidence supporting the conclusion that the employer's proffered reason is pretextual. *Douyon v. New York City Dep't of Educ.*, 665 F. App'x 54, 58 (2d Cir. 2016*); Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 211 (2d Cir. 2006). "A plaintiff who establishes both a prima facie discrimination case and pretext must still, in order to survive summary judgment, demonstrate that she can meet her "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her." *Varughese v. Mount Sinai Med. Ctr.*, 2015 WL 1499618, at \*38 (S.D.N.Y. Mar. 27, 2015), aff'd, 693 F. App'x 41 (2d Cir. 2017), citing *Schnabel v. Abramson*, 232 F.3d 83, 90–91 (2d Cir.2000) and *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).  *Schnabel v. Abramson*, 232 F.3d 83, 88 n.3 (2d Cir. 2000), for example, held that the plaintiff had introduced evidence discrediting the employer's stated reasons for discharge were pretext, but that summary judgment remained appropriate because the plaintiff had offered no evidence that his protected status was a

motivating factor. Thus, to find for Plaintiff, the factfinder must find both (1) the defendant's reason to be pretextual and (2) that the true motive was discriminatory. See *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S. Ct. 2742, 2749, 125 L. Ed. 2d 407 (1993)(factfinder's disbelief of the reasons put forward by the defendant—particularly if disbelief is accompanied by a suspicion of mendacity—may, together with the elements of the prima facie case, suffice to show intentional discrimination.); *Weinstock v. Columbia Univ*., 224 F.3d 33, 42 (2d Cir. 2000) (Plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the Defendant were false, and that more likely than not [discrimination] was the real reason for the [employment action]).

When considering whether the legitimate, non-discriminatory reasons are pretextual, the "fact-finder need not, and indeed should not, evaluate whether a defendant's stated purpose is unwise or unreasonable," but should instead "determin[e] whether the articulated purpose is the actual purpose for the challenged employment-related action." *DeMarco v. Holy Cross High Sch.,* 4 F.3d 166, 170–71 (2d Cir.1993). Similarly, it is well-settled that "federal anti-discrimination law 'may not be used as a vehicle for second-guessing an employer's business judgment.' " *Kalra v. HSBC Bank USA*, N.A., 567 F. Supp. 2d 385, 400 (E.D.N.Y. 2008), *aff'd sub nom. Kalra v. HSBC Bank* U.S.A., N.A., 360 F. App'x 214 (2d Cir. 2010). To

establish pretext, "[a]n opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." *Opals On Ice Lingerie v. Bodylines Inc*., 320 F.3d 362 n.3 (2d Cir. 2002) (citations omitted). "In an employment discrimination or retaliation case, summary judgment may be granted 'if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.' " *Karimian v. Time Equities, Inc*., 569 F. App'x 54, 54-55 (2d Cir. 2014) (citing *Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000).

Bassi claims that some of his evaluations were harsh or ignored relevant context, that he received positive evaluations on some rotations, that in his third year he received the highest score on the In-Training Examination, and that other residents sometimes made mistakes but were promoted and ultimately graduated from the Program; all of this, however, fails to establish an issue of fact regarding whether Bassi himself satisfied the Milestones. *Kleyman v. SUNY Downstate Medical Center*, 2020 WL 5645218, at *15-16 (E.D.N.Y. Sept. 21, 2020) (summary judgment granted in light of frequent clinical and academic complaints about

surgical resident from many sources; plaintiff's disagreement with employer's assessment does not establish pretext). Nor was Bassi similarly situated to his peers, none of whom were alleged to be on remediation or probation for academic or clinical deficiencies. JA-446-47. *Kleyman, supra*, at *18 (to be similarly situated, other employees would have to be subject to the same standards for performance evaluation and discipline, and have engaged in conduct similar to plaintiff's without mitigating circumstances that would distinguish their conduct).

To the contrary, despite receiving far more attention and support than any other resident, including a dedicated preceptor, no one associated with the Program, whether as Clinic faculty or Rotation faculty, believed that Bassi could safely and independently provide medical care to the gamut patients expected in the Clinic. JA-488, 641-46, 686-706, 758. See *Hankins v. Temple University*, 829 F.2d 437, 443 (3rd Cir. 1987) (no reasonable jury could find plaintiff was terminated from fellowship for reasons other than as a result of academic decisions by professors over several months of interaction and observation; plaintiff provided no evidence of discriminatory intent or pretext). The record confirmed that Defendants made multiple efforts to help Bassi meet the required standard. He was placed on an academic action plan on September 4, 2015, JA-645-46; further deficiencies noted on November 14, 2015, JA-647-50, extended the plan until December 2015 and then February 2016. JA-652-53. Meanwhile, to improve his performance, on January 22,

2016, the CCC recommended Bassi obtain a neuropsychological evaluation to help him learn, retain, and apply information in a clinical setting, and separately to seek out resources to manage anxiety. JA-668. Despite these interventions, Bassi showed no improvement. As noted in one ambulatory evaluation, Bassi still struggled with multiple levels of the patient encounter, lacked adequate medical knowledge, and was insufficiently skilled in physical examination. JA-359, 669-72.

Simply put, in the course of three years, despite additional supervision, Plaintiff failed to "concisely, clearly and accurately assess, treat, present and educate" his patients, and accordingly, Defendants articulated a legitimate, non-discriminatory and non-retaliatory reason why Bassi was not promoted: the CCC did not believe he could consistently treat patients in a safe, independent, and timely manner commensurate with the expected performance of a PGY-3 resident. Further, Plaintiff presents no evidence to demonstrate Plaintiff's religion, race, national origin, or complaint "more likely motivated the employer" to deny Plaintiff's promotion than other non-discriminatory reasons. For all of these reasons, there is no triable issue of pretext, and summary judgment should be affirmed.

## II.   THE DISTRICT COURT PROPERLY DISMISSED BASSI'S RETALIATION CLAIM

Retaliation claims are evaluated under the same burden-shifting analysis as discrimination claims. See *Kwan v. Andalex Group, LLC*, 737 F3d 834, 843 (2d Cir.

2013); *Jamilik v. Yale Univ.*, 362 Fed. Appx. 148, 151 (2d Cir. 2009) (summary order). To state a prima facie case, a plaintiff must show "(1) [plaintiff] engaged in a protected activity; (2) [the] employer was aware of this activity; (3) the employer took adverse employment action against [plaintiff]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (Title VII and NYSHRL); *accord Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (Section 1981). As noted above, Plaintiff cannot advance his claim because criticism of his performance, repeating a rotation, reprimands, threats of disciplinary action, and excessive scrutiny are not actionable adverse employment actions, and, as properly noted by the district court, Plaintiff failed to demonstrate a causal connection between protected activity and these alleged actions.

    A.    <u>Bassi Presented No Evidence of a Causal Connection Between His Complaint and the Program's Academic Decisions.</u>

      1.   Bassi has failed to produce direct evidence of retaliation.

         *a.  Puthiyamadam's alleged comment was not "direct evidence" of retaliation.*

As noted above, Bassi's claim of "direct evidence" of retaliation misrepresents both the law and the record. "Direct evidence" is not merely evidence that he thinks helps his case, but evidence that does not require the factfinder to draw any inferences to find that discrimination or retaliation motivated an employment

decision. Drawing inferences about the Program's intentions, however, is explicitly what Bassi begs for here.

Further, the evidence is not as Bassi claims. Puthiyamadam's deposition testimony of "Not that I recall" (JA-1424) is obviously not a claim of ignorance, as Bassi argues, but a denial, equivalent to "To my recollection, no." When called upon to prove a non-occurrence, such testimony cannot reasonably take another form. Accordingly, Bassi has offered no direct evidence of discrimination.

> ### b. Bassi produced no evidence that anyone involved in evaluating his performance regarded him in a negative light because of his complaint.

Bassi also argues (App. Brief at 45-46) that "The lower court ignored multiple instances in the record where members of the CCC confirmed their knowledge of the complaint, and the issue was brought up in the context of evaluating Bassi." Mere *knowledge*, however, is not retaliatory animus; *McDonnell-Douglas* does not impose a strict liability standard. Indeed, after Bassi complained about Harkisoon, she recused herself from evaluating him (JA-1308), and the Program's later actions all reflected unanimous decisions by the Clinical Competency Committee, to whose members Bassi has ascribed no evidence of discriminatory or retaliatory intent. JA-443-45, 457-58, 468-73. Even assuming members of the CCC knew of the complaint, Bassi presented no evidence to prove retaliatory animus or that his performance was evaluated unfairly. *Cf. Trejo v. Yale New Haven Hospital*, 2021

WL 6426773 (Ct. Sup. Ct. Dec. 14, 2021) (courts decline to infer discrimination where the decision was made by multiple actors – here, a CCC – and plaintiff cannot show that the group was influenced by a member's alleged discriminatory animus) (collecting cases); *Jalal v. Columbia University*, 4 F.Supp.2d 224, 239 (S.D.N.Y. 1998) (no inference that committee was influenced by a member's alleged discrimination where committee already had grave reservations about plaintiff's work).

Bassi tried the same gambit with his advisors, apparently expecting the Court not to review his citation. Although he argues (App. Brief p. 46) that "Paul and Andron both acknowledged Bassi's complaint during an advisory meeting, and when Bassi raised his concern that it was being held against him, said that he had to learn how to cope with 'anger and resentment.' (JA-763)" reviewing the document disproves his argument:

> Dr. Paul encouraged Dr. Bassi to differentiate whether or not he felt these issues were not addressed appropriate (as for the turban issue it was handled by HR and for the contract email he was formally apologized to by the person who sent the email) vs him still being upset at what happened. If he felt it was not handled appropriately then that was an issue to bring to administration vs if he was still upset then K Andron suggested ways in which to cope with anger and resentment. Dr. Bassi reported he felt the issues he discussed were handled.

JA-763.

Further, to the extent Bassi appears to argue pretext because he experienced differential treatment compared to other residents, the district court properly noted that, as with his discrimination claim, none of this showed unlawful animus. The declarations he offered by former co-residents, who opined that Bassi was treated more harshly than others, did not suggest that his race, religion, or national origin were a factor in that treatment; and a coworker's positive opinion of a plaintiff's work fails to create an issue of fact where the employer was dissatisfied with the plaintiff's performance. *Josma v. New York City Health & Hosps. Corp.,* 2012 WL 3861171 (E.D.N.Y. Sept, 5, 2012). To the contrary, and as argued above, given that Bassi's performance in the Clinic was demonstrably poorer than his peers, and it is undisputed that the Program invested "maximum resources" (JA-738) to rehabilitate his academic standing, Bassi's standing was not sufficiently comparable to his peers for such a comparison to be apt. JA-446-447, 466-467. As a result, the district court properly observed that Bassi presented no evidence of retaliatory animus sufficient to avoid summary judgment.

> 2. Bassi has failed to state a *prima face* case
> of retaliation based on temporal proximity.

> a. *Bassi abandoned his argument of temporal proximity on appeal*

Bassi abandoned his temporal proximity argument by omitting it on appeal. Indeed, he argues that district court improperly assumed him to be making this

argument below (App. Brief p. 45). See *JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005); *Vasquez v. New York City Dep't of Educ.*, 2015 U.S. Dist. LEXIS 75321, at *39 (S.D.N.Y. June 10, 2015) (party waives or abandons argument by failing to raise it); see also *Jackson v. Fed. Exp.*, 766 F.3d 189, 197–98 (2d Cir. 2014) ("Where a partial response to a motion is made—i.e., referencing some claims or defenses but not others ... in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

### b. *The district court properly noted that Bassi exhibited performance deficiencies before his complaint.*

Bassi cannot establish a claim of retaliation based on temporal proximity because the CCC identified performance deficiencies several months before his complaint to Human Resources. JA-645-653, 668. See *Abdel-Raouf v. Yale Univ.*, No. 3:12CV776 HBF, 2015 WL 687440, at *5 (D. Conn. Feb. 18, 2015) (citing *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)) (finding no retaliation where no evidence existed to suggest members of residency program evaluation committee "discussed [the derogatory comment] at the [evaluation] meetings"); see also *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (finding no retaliation where "extensive period of progressive discipline" began five months before filing EEOC charges). Bassi tries to discredit this by

arguing that those prior evaluations were also unfair (App. Brief at 44) – which, even if so, could not be retaliation for a complaint that had not yet occurred – and then asserts that "Appellees have provided no explanation to explain how Bassi, in such a brief span of time, could have gone from improving to performing so poorly that his academic action plan would be elevated to remediation." (*Id*.)  The argument fabricates a non-existent legal burden:  it is enough to disprove his claim of retaliation, as attested by the Program's abundant and objective documentation and as Bassi's argument apparently concedes, that Bassi's performance in fact deteriorated.

B.     Bassi Has Failed to Offer Admissible Evidence of Pretext.

Even assuming Bassi established a prima facie case, where the Hospital Defendants demonstrate a 'legitimate, nondiscriminatory reason' for their decisions, plaintiff has the burden to prove that they intentionally discriminated or retaliated against him for engaging in protected activity. See *Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1039 (2d Cir. 1993) (Citation omitted). "If the defendant provides an explanation, the plaintiff must prove that the desire to retaliate was the but-for cause of the challenged employment action." *Rasmy*, 952 F.3d at 392 (internal quotation, italics, and alteration from original omitted); accord, e.g., *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015) (affirming summary judgment where plaintiff failed to present sufficient evidence for a reasonable jury to conclude

"that the desire to retaliate was the but-for-cause"). Although retaliation need not be the only motivation for the employer's actions, the plaintiff must prove that "the adverse action would not have occurred in the absence of the retaliatory motive." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90-91 (2d Cir. 2015); see *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

As the district court correctly held, even assuming Bassi established a prima face case of retaliation, summary judgment was proper because Bassi failed to produce evidence sufficient to suggest that defendant's proffered non-retaliatory reason for its actions toward him—"ongoing problems with [his] work performance and behavior"—was pretextual and that the consequences Bassi suffered would not have occurred but for a retaliatory motive.

      1.  Bassi's continued attacks on Harkisoon are both factually and legally irrelevant.

Bassi also cannot establish pretext by reference to unsubstantiated complaints that others made about Harkisoon, with no reference to Bassi, several years after he quit the Program. In fact, the Hospital found – and Bassi has no independent evidence otherwise – that those later allegations, which had nothing to do with Bassi, were without merit and that Harkisoon engaged in no misconduct – and moreover, Bassi misconstrues the Hospital's findings. See JA-1515-21. *Joyner v. Greiner*, 195 F. Supp. 2d 500, 507 (S.D.N.Y. 2002) ("Obviously, he cannot keep his complaint

alive by the expedient of misquoting the letters"). In any event, the allegations in the anonymous complaint, and the comments compiled by Human Resources during its investigation, are inadmissible hearsay. Fed.R.Evid. 801(c), 802. Further, extrinsic evidence, such as SA-32, is inadmissible to prove specific instances of a witness's conduct in order to attack the witness's character for truthfulness. Fed.R.Evid. 608; *Puglisi v. Town of Hempstead Sanitary Dist. No. 2*, 2014 WL 12843521, at *8 (E.D.N.Y. Jan. 27, 2014) (excluding letter as inadmissible hearsay and under FRE 608).

Even if any of this were properly before the Court, it is well-established that complaints against Harkisoon three years after Bassi's departure cannot retroactively, and merely by association, provide evidence for Bassi's retaliation claim; to the contrary, they are irrelevant because they do not make it more probable that the Clinical Competency Committee, or any of the Defendants, engaged in discrimination or retaliation against Bassi. Fed.R.Evid. 401; *Dorfman v. Doar Commc'ns, Inc*., 314 F. App'x 389, 391 (2d Cir. 2009) (generalized allegations about other individuals in the protected group, without more, do not show discrimination was present); *Vaughn v. City of New York*, 2010 WL 2076926, at *11 (E.D.N.Y. May 24, 2010) (evidence of negative evaluations to other foreign-born employees inadmissible under Fed.R.Evid. 404(b) absent a connection in those other cases between the evaluations and the employees' foreign origin or protected activity).

Bassi does not claim that Harkisoon or the CCC discriminated against others based on religion, or retaliated against protected complaints. Thus his proffered evidence is inadmissible and should be stricken. *Puglisi v. Town of Hempstead Sanitary Dist. No. 2*, 2014 WL 12843521, at *3 (E.D.N.Y. Jan. 27, 2014) (pleadings from other litigation inadmissible).

## III. THE DISTRICT COURT PROPERLY DISMISSED BASSI'S CLAIM FOR BREACH OF CONTRACT

To state a claim for breach of contract, New York law requires a plaintiff to allege: (i) the existence of an enforceable agreement, (ii) plaintiff's performance, (iii) defendant's breach, and (iv) damages. *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir. 1996). "Plaintiffs bear the burden of proof as to all elements of a breach of contract claim." *Choquette v. Motor Information Systems, Inc.,* No. 15-CV-9338, 2017 WL 3309730, at *3 (S.D.N.Y. Aug. 2, 2017).

A. <u>Bassi Failed to Establish a Claim For Breach of Contract.</u>

1. Bassi was not contractually entitled to course credit.

The district court properly dismissed Bassi's claim for breach of contract based on a denial of course credit because none of the documents he characterizes as contractual promised him course credit, progress in the Program is not based on a credit system, and he failed to demonstrate adequate progress in the Program to warrant advancement.

47

Neither Bassi's residency contract nor the Residency Handbook describe any process of awarding "credit" for successfully completed rotations; neither the Agreement nor the Resident Handbook contains any detailed description of Bassi's entitlement to academic credit, due process, or right of appeal, JA 597-604, and the word "credit" does not appear in Section VIII of the Handbook on which Bassi relies for his argument. Instead, Bassi's success in the Program was a holistic academic determination by the CCC based on the evaluations of several different physicians across three years—that he lacked the competencies necessary for promotion to PGY-3. JA-598, 729-38.

Supporting his argument for advancement, Bassi relies entirely on *Papelino v Albany Coll. Of Pharm. of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011), which held that a student complying with a university's prescribed terms and completing the required courses must be awarded a degree. In *Papelino*, which described itself as "one of those rare education cases where it is appropriate for a court to intervene," *id*. at 94, the plaintiff had been expelled for cheating, and had established in a prior proceeding brought under New York CPLR Article 78 that the university's accusations were arbitrary and capricious. The plaintiff had, however, produced evidence that he otherwise met the standards of the program, and so was permitted to proceed on his contract claim.

48

Bassi, by contrast, did not bring an Article 78 proceeding, which, with a 4-month statute of limitations, is the exclusive means of seeking a judicial remedy for an academic determination, and as discussed above, he has not produced competent evidence of his satisfactory performance in the Program. It is well-settled that a substantive evaluation of academic performance is beyond judicial review absent a showing of bad faith, arbitrariness, capriciousness, irrationality, or a constitutional or statutory violation. See *Moukarzel v. Montefiore Med. Ctr.*, 652 N.Y.S.2d 281, 282 (1st Dep't 1997) (reinstatement beyond judicial review where several faculty members assessed resident's knowledge, clinical skill, and competence to be inadequate or borderline); *Auguste v. New York Hosp. Med. Ctr. of Queens*, 688 N.Y.S.2d 652, 653 (2nd Dep't 1999); *De Jong v. Kings Cty. Hosp. Ctr.*, 812 N.Y.S.2d 502, 503 (1st Dep't 2006). Conclusory assertions of wrongdoing are insufficient to overcome the public policy against judicial interference with the judgment of professional educators. *Gertler v. Goodgold*, 487 N.Y.S.2d 565, 572 (1st Dep't), aff'd, 66 N.Y.2d 946 (1985); see also *Ochei v. Helene Fuld Coll. of Nursing of N. Gen. Hosp.*, 802 N.Y.S.2d 28, 28 (1st Dep't 2005). As a result, when reviewing a genuinely academic decision, courts "should show great respect for the faculty's professional judgment; plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."

49

*Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 225 (1985).  Such questions of institutional competence are of particular concern where, as here, the Program is responsible for certifying physicians as capable of safely and independently providing medical care to the general public.

Bassi has also failed to offer any competent evidence that the Program regularly awarded credit at all.  JA-255, 268, 274.  As noted by the district court, the "transcript" that the Program developed at Bassi's request to facilitate his potential transfer elsewhere – and there is no record evidence that one was prepared for any other resident – attempted to gauge the amount of progress Bassi had still to demonstrate to be prepared for his PGY-3 year.  JA-261, 320-23.  S.P.A.-21 ("At base, Plaintiff asks this Court to substitute its judgment for that of numerous faculty members—all of whom possess more experience in family medicine than this Court—who documented Plaintiff's performance deficiencies in numerous written evaluations over a period of three years.")  As properly noted by the district court, this is unequivocally an academic question beyond judicial review. See, e.g., *Abdel-Raouf*, 2015 WL 687440, at *3.

2. Bassi cannot assert a claim based on untimely notice.

   a. *Bassi received adequate notice of potential adverse academic decisions*

Bassi appears to complain that the Program failed to give him timely notice that he would not be promoted and that his contract would not be renewed; the

Handbook provides that Residents will be informed no later than February 1 if they are not going to be promoted to the next academic PGY level; after February 1, promotion may be rescinded if the resident fails to meet minimum training standards with approval by the GMEC. JA-599. The handbook also provides that residents will be informed "as early as possible" of non-renewal. JA-599.

As noted by the district Court, S.P.A.-30, Bassi received ample notice that he might not be promoted unless he demonstrated progress in his academic action plan, and his deadline to show progress was extended many times. Further, nothing in the Bassi's residency contract or the Resident Handbook guarantees promotion unless he receives notice to the contrary by a certain deadline; such an interpretation runs contrary to the academic nature of the Program, and indeed would imply the education received between February 1 and June 30 had no bearing on the resident's eligibility for promotion. Bassi has offered no evidence to suggest that was the intent of the parties. Here, where the minutes show that Bassi's non-renewal was presented to the GMEC, JA-654-67, and Bassi did not meet the minimum training standards for promotion to PGY-3, JA-262-63, 390, 729-38, he cannot claim that he was in breach of an alleged contractual obligation when the Hospital Defendants, finding him unprepared to advance and unlikely to improve, declined to promote him or renew his contract. Moreover, as noted by the district court, S.P.A.-30 n.8, Section VIII.5 of the Handbook provides that termination will ordinarily become effective

not less than two weeks after receipt of the written notice." Plaintiff was timely notified of non-promotion and non-renewal by the deadline.

  b.  *Bassi's claims of improper notice do not entitle him to damages.*

Second, even assuming improper notice was established, a lack of sufficient notice does not entitle Bassi to damages. Unexplained in Bassi's papers is any mention of the remedy he believes would be appropriate for such a breach – and because the remedy would surely not be waiver of the ACGME's Milestones for successful completion of an accredited Family Medicine Residency Program, *D'Andrea v. Rafla-Demetrious*, 3 F.Supp.2d 239 (E.D.N.Y. 1996) (denying radiology resident a certificate that he "satisfactorily performed" the requirements of the residency did not support an actionable contract claim),  the only conceivable remedy would be (assuming ACGME approval were forthcoming) to allow him to continue his training at an appropriate level of placement – which is exactly what Bassi was offered before he resigned.  S.P.A.-31 ("The record confirms that Plaintiff received precisely what he seeks"); *Barsoumian v. University at Buffalo*, 2013 WL 3821540, at *3-5 (W.D.N.Y. July 23, 2013) (resident's claim for lost future earnings, based on assumption that he would have successfully completed his residency program and obtain board certification, rejected as speculative). See also *Barsoumian v. University at Buffalo*, 594 Fed.Appx. 41 (2d Cir. 2015) (reasonable for resident to be required to repeat the year subject to probation after reinstatement).

Moreover, to the extent Bassi seeks academic remedies, it is well established that that is beyond the court's purview. *Schaefer v. Brookdale Univ. Hosp. & Med. Ctr.,* 18 Misc.3d 1142(A) (Kings Cty. 2008) (no breach of contract where hospital declined to renew residency and promote resident to the next year of the program on academic grounds); *Meller v. Tancer*, 174 A.D.2d 374, 375 (1st Dep't 1991) (evaluations showing plaintiff's poor professional performance and personal character precluded finding that decision to withhold certification was arbitrary or capricious). See *Kenford Co. v. Erie Cnty.,* 67 N.Y.2d 257, 261, 493 N.E.2d 234, 235 (1986).

As a result, the district court properly dismissed his claim.

B.   The Program Implemented the Decisions of the Appeals Committee.

1. The Appeals Committee ordered reinstatement, not promotion.

Bassi claims, on Appeal, that the 2017 Appeals Committee found that he met the required competencies to advance in the Program, and that the Program was in breach by failing to implement its directive. (App. Brief at 50-53.) The district court correctly found, however, that the Appeals Committee stated no such thing: it stated, "The Appeals Committee finds objective evidence to support Dr. Bassi's claim for relief. No new evidence was presented to warrant the committee's departure from its previous decision, to reinstate Dr. Bassi." (J.A. 982.) The committee did not comment on Bassi's PGY placement, and although Bassi continues to argue that the

Appeals Committee deemed him qualified to advance in the Program, the district court correctly noted that this stretches the decision's language beyond its plain meaning: Bassi has presented no evidence that he ever appealed his academic placement. S.P.A-33 n.10; *cf.* JA-1064. To the contrary, Bassi only learned that he would not be promoted after the Program agreed to implement the Appeals Committee's decision, and as noted by the district court, he was invited to appeal that decision but chose not to.

     a. *Ex parte" communications did not invalidate the appeals process or amount to breach of contract.*

Further, to the extent Bassi alleges that he was denied due process, which claim, on appeal, appears to be limited to the *ex parte* email between New York Medical College and the Appeals Committee regarding the scope of its authority, Bassi does not even attempt to argue that this email compromised the integrity of the process. To the contrary, it is undisputed that Bassi received abundant notice of his academic problems and his risk of termination from the program, and he received far more opportunities to present his case and dispute these academic findings than were deemed adequate in *Hankins v. Temple University*, 829 F.2d 437, 444-45 (3d Cir. 1987) (due process adequate where plaintiff received written notice of performance deficiencies and attended several meetings where she received opportunities to defend herself; courts should not override the faculty's professional

judgment unless it is such a departure from accepted academic norms as to show that the committee did not actually exercise professional judgment).

Accordingly, for all the foregoing reasons, the district court properly dismissed Bassi's claims for breach of contract upon summary judgment, and that decisions should be affirmed.

## **CONCLUSION**

For the reasons set forth above, the Court should uphold the District Court's ruling dismissing Bassi's Complaint in its entirety.

Dated: New York, New York
    September 7, 2023

COLLAZO & KEIL LLP

By: /s/ John P. Keil
    John P. Keil
    747 Third Avenue, 25th Floor
    New York, New York 10017
    (212) 758-7600
    *Attorneys for Defendants-Appellees*
    *Phelps Memorial Hospital*
    *Association, Northwell Health,*
    *Inc., and Shantie Harkisoon, M.D.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with: (1) the length and type-volume limitation of Fed. R. App. P. 32(a)(7)(A) and Second Circuit Local R. 28.1.1(a) because it contains 12,329 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and (2) the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman) using Microsoft Word 2016 (the same program used to calculate the word count).

COLLAZO & KEIL LLP

By:  /s/ John. P. Keil
      John P. Keil
      747 Third Avenue, 25th Floor
      New York, New York 10017
      (212) 758-7600
      *Attorneys for Defendants-Appellees*
      *Phelps Memorial Hospital*
      *Association, Northwell Health,*
      *Inc., and Shantie Harkisoon, M.D.*