# 23-0278-cv

# United States Court of Appeals

*for the*

# Second Circuit

---

HARMEETINDER BASSI, M.D.,

*Plaintiff-Appellant,*

— v. —

NEW YORK MEDICAL COLLEGE, PHELPS MEMORIAL HOSPITAL ASSOCIATION, DBA Phelps Hospital, NORTHWELL HEALTH, INC., OPEN DOOR FAMILY MEDICAL CENTER, INC., DBA Open Door Family Medical Group, SHANTIE HARKISOON, M.D.,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

## BRIEF FOR DEFENDANT-APPELLEE
## OPEN DOOR FAMILY MEDICAL CENTER, INC.,
## DBA OPEN DOOR FAMILY MEDICAL GROUP

---

GREG RIOLO
JACKSON LEWIS P.C.
*Attorneys for Defendant-Appellee Open
Door Family Medical Center, Inc.,
DBA Open Door Family Medical
Group*
44 South Broadway, 14th Floor
White Plains, New York 10601
(914) 872-8060

CP COUNSEL PRESS    (800) 4-APPEAL • (323748)

## DEFENDANT-APPELLEE OPEN DOOR FAMILY MEDICAL CENTER'S RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Open Door Family Medical Center, by and through its undersigned attorneys, certifies that it is not a publicly traded corporation, and no corporation owns stock in the Company.

# TABLE OF CONTENTS

**Page**

DEFENDANT-APPELLEE OPEN DOOR FAMILY
MEDICAL CENTER'S RULE 26.1 CORPORATE
DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ............................................................ iii

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................1

STANDARD OF REVIEW ...............................................................2

STATEMENT OF THE CASE/SUMMARY OF THE ARGUMENT ....................5

STATEMENT OF FACTS ................................................................8

    I.    BACKGROUND INFORMATION CONCERNING THE
        NEW YORK MEDICAL COLLEGE PHELPS FAMILY
        MEDICINE RESIDENCY PROGRAM ...............................8

    II.    DR. BASSI'S TIME IN THE RESIDENCY PROGRAM .................11

        A.    2014 – 2015 Academic Year......................................11

        B.    2015 – 2016 Academic Year......................................12

        C.    2016 – 2017 Academic Year......................................14

    III.    DR. BASSI'S COMPLAINT AND RESOLUTION .........................16

ARGUMENT ..............................................................................18

    I.    DR. BASSI'S DISCRIMINATION CLAIMS MUST
        BE DISMISSED AS A MATTER OF LAW .....................18

        A.    Dr. Bassi Cannot Establish A *Prima Facie* Case
            Of Discrimination .....................................19

        B.    The Program Had Legitimate Reasons For Its Actions
            Against Dr. Bassi .....................................25

        C.    There is no evidence of pretext ................................29

    II.    DR. BASSI'S RETALIATION CLAIMS MUST ALSO
        BE DISMISSED AS A MATTER OF LAW .....................34

CONCLUSION ...........................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Abdel-Raouf v. Yale Univ.*,
2015 WL 687440 (D. Conn. Feb. 18, 2015)......................................26-27, 29, 35

*Abdu-Brisson v. Delta Air Lines, Inc.,*
239 F.3d 456 (2d Cir. 2001), *cert. denied*, 534 U.S. 993 (2001) ........................23

*Abdul-Hakeem v. Parkinson*,
523 F. App'x 19 (2d Cir. 2013).............................................................................23

*Aiken v. MTA N.Y.C. Transit*,
2021 U.S. Dist. LEXIS 188628 (S.D.N.Y. Sept. 29, 2021) ......................... 19, 20

*Alvarado v. Nordstrom Inc.*,
685 F. App'x 4 (2d Cir. 2017)...............................................................................34

*Anderson v. Baxter Healthcare Corp.*,
13 F.3d 1120 (7th Cir. 1994) ......................................................................... 24, 32

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...............................................................................................3

*BellSouth Telecomms., Inc., v. W.R. Grace & Co.*,
77 F.3d 603 (2d Cir. 1996) .....................................................................................3

*Brenner v. City of N.Y.*,
132 F. Supp. 3d 407 (E.D.N.Y. 2015)...................................................................32

*Brown v. Eli Lilly & Co.*,
654 F.3d 347 (2d Cir. 2011) ...................................................................................2

*Brown v. Hamot Medical Center*,
323 F. App'x 140 (3d Cir. 2009).........................................................................28

*Castro v. New York City Bd. of Educ. Personnel Dir.*,
No. 96 Civ. 6314 (MBM), 1998 U.S. Dist. LEXIS 2863
(S.D.N.Y. Mar. 11, 1998).....................................................................................21

*Chiaramonte v. Animal Med. Ctr.*,
677 F. App'x 689 (2d Cir. 2017)............................................................................4

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
140 S. Ct. 1009 (2020) .........................................................................................18

*Dall v. St. Catherine of Siena Med. Ctr.*,
966 F. Supp. 2d 167 (E.D.N.Y. 2013)....................................................................23

*Delaney v. Bank of America Corp.*,
766 F.3d 163 (2d Cir. 2014) ......................................................................... 2, 26

*Dister v. Cont'l Group, Inc.*,
859 F.2d 1108 (2d Cir. 1988) ................................................................................3

*Espinoza v. New York City Dep't of Transportation*,
304 F. Supp. 3d 374 (S.D.N.Y. 2018) ..................................................................19

*Fall v. New York State United Teachers*,
289 F. App'x 419 (2d Cir. 2008)..........................................................................36

*Fitchett v. City of New York*,
2021 U.S. Dist. LEXIS 47763 (S.D.N.Y. Mar. 15, 2021)............................ 18, 19

*Hankins v. Temple University*,
829 F.2d 437 (3d Cir. 1987) ......................................................................... 26, 28

*Holcomb v. Iono Coll.*,
521 F.3d 130 (2d. Cir. 2008) ................................................................................18

*Howard v. MTA Metro-N. Commuter R.R.*,
866 F. Supp. 2d 196 (S.D.N.Y. 2011) ..................................................................22

*Jones v. W. Suffolk Boces*,
2008 U.S. Dist. LEXIS 13077 (E.D.N.Y. Feb. 20, 2008)....................................18

*Josma v. New York City Health & Hosps. Corp.*,
No. 10–cv–3610, 2012 WL 3861171 (E.D.N.Y. Sept. 5, 2012) ................... 24, 32

*Kleyman v. SUNY Downstate Medical Center*,
2020 WL 5645218 (E.D.N.Y. Sept. 21, 2020)......................................................28

*Kregler v. City of New York*,
604 F. App'x 44 (2d Cir. 2015)..............................................................................4

*Latif v. Univ. of Texas Sw. Med. Ctr.*,
834 F. Supp. 2d 518 (N.D. Tex. 2011)..................................................................27

*Maynard v. Montefiore Med. Ctr.*,
2021 U.S. Dist. LEXIS 21570 (S.D.N.Y. Feb. 4, 2021) ............................... 18, 34

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ..................................................................................... 18, 22

*Murray v. Visiting Nurse Servs. of N.Y.*,
    528 F. Supp. 2d 257 (S.D.N.Y. 2007) ..................................................24

*Nigro v. Virginia Commonwealth University/Medical College of Virginia*,
    492 F. App'x 347 (4th Cir. 2012) ................................................. 26, 28

*Norton v. Sam's Club*,
    145 F.3d 114 (2d Cir. 1999) ...................................................................3

*O'Shea v. First Manhattan Co. Thrift Plan & Trust*,
    55 F.3d 109 (2d Cir. 1995) .....................................................................2

*Orisek v. American Inst. of Aeronautics and Astronautics*,
    938 F. Supp. 185 (S.D.N.Y. 1996) .......................................................29

*Pacenza v. IBM Corp.*,
    No. 04 Civ. 5831 (PGG), 2009 U.S. Dist. LEXIS 29778
    (S.D.N.Y. Apr. 2, 2009) .......................................................................26

*Rexnord Holdings, Inc. v. Bidermann*,
    21 F.3d 522 (2d Cir. 1994) .....................................................................3

*Ricks v. Conde Nast Publs., Inc.*,
    92 F. Supp. 2d 338 (S.D.N.Y. 2000) ....................................................29

*Rimpel v. AdvantageCare Physicians, P.C.*,
    No. 17 Civ. 6867 (NGG) (PK), 2020 U.S. Dist. LEXIS 167700
    (E.D.N.Y. Sept. 14, 2020) ....................................................................30

*Robinson v. Concentra Health Services, Inc.*,
    781 F.3d 42 (2d Cir. 2015) .....................................................................2

*Rojas v. The Roman Catholic Diocese of Rochester*,
    660 F.3d 98 (2d Cir. 2011) .....................................................................4

*Rosario v. Hilton Worldwide*,
    No. 09 Civ. 5336, 2011 U.S. Dist. LEXIS 8719 (E.D.N.Y. Jan. 24, 2011),
    *aff'd*, 2012 U.S. App. LEXIS 7623 (2d Cir. Apr. 17, 2012) ...............23

*Russel v. Aid to Developmentally Disabled, Inc.*,
    753 F. App'x 9 (2d Cir. 2018) ..............................................................34

*Saji v. Nassau Univ. Med. Ctr.*,
    724 F. App'x 11 (2d Cir. 2018) ............................................................34

*Salahuddin v. Goord*,
    467 F.3d 263 (2d Cir. 2006) ...................................................................3

*Scotto v. Almenas*,
   143 F.3d 105 (2d Cir. 1998) ..................................................................3

*Smith v. N.Y. & Presbyterian Hosp.*,
   440 F. Supp. 3d 303 (S.D.N.Y. 2020) .................................................18

*Stroud v. New York City*,
   374 F. Supp. 2d 341 (S.D.N.Y. 2005) .................................................20

*Tepperwien v. Entergy Nuclear Operations, Inc.*,
   663 F.3d 556 (2d Cir. 2011) ...............................................................21

*Tolbert v. Smith*,
   790 F.3d 427 (2d Cir. 2015) ...............................................................18

*Viola v. Philips Med. Systems of N.A.*,
   42 F.3d 712 (2d Cir. 1994) .................................................................29

*Weeks v. N.Y. State (Div. of Parole)*,
   273 F.3d 75 (2d. Cir. 2001) ........................................................... 21-22

*Williams v. McCausland*,
   1995 U.S. Dist. LEXIS 13341 (S.D.N.Y. Sept. 14, 1995) ...................36

*Woodard v. Monticello Cent. Sch. Dist.*,
   No. 06 Civ. 13361 (KMK), 2008 U.S. Dist. LEXIS 97184
   (S.D.N.Y. Dec. 1, 2008) ......................................................................30

*Wright v. Goldman, Sachs & Co.*,
   287 F. Supp. 2d 315 (S.D.N.Y. 2005) .................................................20

## Statutes and Other Authorities:

42 U.S.C. § 1981 ........................................................................... 5, 18, 34

## <u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>

1.      Whether the District Court was correct in holding that Appellee Open Door Family Medical Center was entitled to summary judgment on Plaintiff-Appellant's discrimination claim.

2.      Whether the District Court was correct in holding that Appellee Open Door Family Medical Center was entitled to summary judgment on Plaintiff-Appellant's retaliation claim.

## **STANDARD OF REVIEW**

In reviewing the District Court's decision granting summary judgment, the Court of Appeals should review the record *de novo* and apply the same principles which governed the District Ccourt in granting Defendants' motion for summary judgment. *O'Shea v. First Manhattan Co. Thrift Plan & Trust*, 55 F.3d 109, 111 (2d Cir. 1995). The Court must construe the facts in the light most favorable to the non-moving party and resolve ambiguities and draw reasonable inferences against the movant. *Delaney v. Bank of America Corp.*, 766 F.3d 163, 167 (2d Cir. 2014).

However, "[w]hile it is true that a court is required to resolve all ambiguities and draw all factual inferences in favor of the nonmovant, a plaintiff may not survive summary judgment merely by conjuring a hypothetical issue of material fact." *Robinson v. Concentra Health Services, Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal citations and quotations omitted). The party opposing summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact. More specifically, it must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson*, 781 F.3d at 44 (*citing Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).

The non-moving party may not rely on conclusory allegations or unsubstantiated speculation to oppose summary judgment, but "must produce

2

specific facts indicating that a genuine factual issue exists." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). *See also Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1999) ("a jury cannot infer discrimination from thin air."). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986)).

Because the purpose of summary judgment is to isolate and dispose of claims lacking evidentiary support, the nonmoving party may not rest on the allegations in its pleadings, but must point to evidence showing that the case involves a genuine issue of material fact requiring a trial. "A genuine dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the non-moving party." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988). *See also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). The party opposing summary judgment may not rely on conclusory allegations or unsubstantiated speculation. *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc., v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *See Rojas v. The Roman Catholic Diocese of Rochester*, 660 F.3d 98, 105 (2d Cir. 2011) (affirming summary judgment and explaining that a fact is "material" if it affects the outcome of the suit, and an issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party); *see also Kregler v. City of New York*, 604 Fed. Appx. 44, 46 (2d Cir. 2015) (summary order) (same).

In his Brief, Dr. Bassi asks the Court to ignore the testimony of interested witnesses, which would effectively preclude all of the testimony of any Phelps, NYMC or Open Door employee. Despite this reference, in another case cited by Dr. Bassi in his Brief, this Court held the mere fact the individual was an "interested witness" did not in and of itself raise a genuine issue of material fact and the court properly relied on testimony that was uncontradicted and unimpeached in granting the defendant's motion. *Chiaramonte v. Animal Med. Ctr.*, 677 Fed. Appx. 689 (2d Cir. 2017).

Because Plaintiff-Appellant ("Dr. Bassi") cannot establish a genuine material issue of fact for trial, the District Court correctly concluded that summary judgment was warranted as a matter of law.

4

## STATEMENT OF THE CASE/SUMMARY OF THE ARGUMENT

Appellee Open Door Family Medical Center d/b/a/ Open Door Family Medical Group ("Open Door"), by and through its attorneys, Jackson Lewis P.C., submits this brief in opposition to Plaintiff-Appellant's Brief on Appeal from the United States District Court's Decision on Order granting summary judgment to Open Door and dismissing Plaintiff-Appellant's Complaint.

As explained in the well-reasoned decision of the District Court, and reiterated herein, summary judgment is appropriate in this case because the record evidence failed to demonstrate any genuine issue of material fact regarding whether Plaintiff was discriminated against, or whether a triable issue exists concerning alleged unlawful retaliation.

Plaintiff-Appellant Harmeetinder Bassi ("Dr. Bassi") asserted claims against Open Door alleging violations of the 42 U.S.C. § 1981 ("§ 1981"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the New York State Human Rights Law (the "NYSHRL"). The District Court's decision granting Summary judgment was appropriate because there is no genuine dispute as to any material fact, and it is clear that Open Door has not violated the law.

As a resident in the New York Medical College Phelps Family Medicine Residency Program (the "Program"), Dr. Bassi was employed by Appellee Phelps Hospital ("Phelps"), and not Open Door. While members of Open Door's

faculty provided feedback and recommendations on Dr. Bassi's advancement in the Program, Dr. Shantie Harkisoon ("Dr. Harkisoon"), Program Director and a Phelps employee, had the ultimate authority to promote, withhold, or terminate Dr. Bassi. As stated in the Statement of Facts, and as found by the District Court, as a resident, Dr. Bassi lacked medical knowledge to provide care safely and independently to patients despite various academic action plans, remediation, and probation throughout his three years in the Program. Dr. Harkisoon, under the advisement of the Clinical Competency Committee, endeavored to terminate Dr. Bassi from the Program on two occasions. Both times Dr. Bassi filed an academic appeal, was reinstated, and required to repeat his second year of residency. Following Dr. Bassi's second academic appeal, however, Dr. Bassi demanded to be promoted to his third and final year of the Program, and to be evaluated by different faculty. Dr. Bassi resigned once the Program rejected his demands.

Dr. Bassi's claims of discrimination are founded solely upon a singular remark conveyed to him by Thomas Chattahil ("Dr. Chattahil"), a Chief Resident, at Dr. Harkisoon's behest and his purported differential treatment by certain faculty, as allegedly witnessed by other residents, none of whom stated any knowledge of Dr. Bassi's evaluations, remediation plan or his probation. Importantly, those witnesses do not mention Dr. Bassi's religion or race/color, or opine that they believed any treatment was based on his religion or race/color. As found by the

6

District Court, the feedback, evaluations, and recommendations from the core faculty concerning Dr. Bassi's progression in the Program were based solely upon Dr. Bassi's performance at the clinic, and were in no way influenced by Dr. Bassi's membership in any protected group, or his internal complaint, which was promptly addressed.

After submission of the motion papers, on March 2, 2023, the District Court issued an Opinion and Order granting all Appellees their respective motions for summary judgment and dismissing the case in its entirety (JA 1539-1572). On March 2, 2023, the Clerk of the Court issued Judgment in favor of Appellees (JA 1573). Plaintiff-Appellant filed a timely Notice of Appeal on March 3, 2023 (JA 1574).

In a footnote in his Brief, Dr. Bassi stated that he "also asserted a claim for Tortious Interference with Contract as against NYMC *and Open Door*" (Brief, p. 48, fn 2 [emphasis added]). In fact, there was no such claim against Open Door for tortious interference in the First Amended Complaint (*see* JA 67 – CLAIM FOR RELIEF AGAINST DEFENDANT NYMC, COUNT VIII). The District Court noted in its Opinion and Order that in fact, Dr. Bassi "asserts a claims for tortious interference with contract against NYMC". (JA 1571). In his brief, Dr. Bassi requests that this Count be reinstated if his Breach of Contract Claim (which is only against NYMC and Phelps – *see* JA 66-67, CLAIM FOR RELIEF AGAINST

DEFENDANTS PHELPS AND NYMC – Count VII). In the event that this Court were to reinstate Dr. Bassi's breach of contract claim against Phelps and/or NYMC, thereby reviving the tortious interference claim against NYMC, Open Door would not be a party to either claim.

For the reasons set forth herein, Open Door respectfully requests the Court uphold the District Court's Decision and Order granting Summary Judgment in favor of Open Door, and dismiss each cause of action asserted by Plaintiff Harmeetinder Bassi against Open Door in his Amended Complaint.[1]

## STATEMENT OF FACTS

## I. BACKGROUND INFORMATION CONCERNING THE NEW YORK MEDICAL COLLEGE PHELPS FAMILY MEDICINE RESIDENCY PROGRAM.

In 2011, Open Door, New York Medical College ("NYMC"), and Phelps entered into a tri-party agreement to establish a new family medicine residency training program accredited by the Accreditation Council for Graduate Medical Education (the "ACGME"). (JA 89-114). NYMC served as the Program's sponsoring institution, and was primarily responsible for the Program's compliance with ACGME's institutional requirements. (JA 90, 94-95; JA 115). Phelps Hospital hosts the vast majority of the Program's required rotations, and Open Door serves as the Program's family medical center. (JA 90-96)).

---

[1] A true and correct copy of Dr. Bassi's Amended Complaint is found at JA 41-68.

The Program exposes residents to various medical specialties within family medicine including, but not limited to, obstetrics, gynecology, sports medicine, geriatric care, and cardiology. (JA 46, ¶ 29). As part of the Program, residents complete twelve (12) four-week rotations among specialties at Phelps each year. (JA 46, ¶ 30; JA 23). Some rotations require residents to complete work online, or shadow doctors. (JA 133-34; JA 147-48). Other rotations are more *hands on*, and involve direct patient care. (JA 147-48). Rotation supervisors are responsible for overseeing and evaluating residents. (JA 137; JA 149-50).

Because Phelps Hospital does not have an outpatient clinic, Open Door serves as the Program's clinic and family health center. (JA 23). The Program places an emphasis on continuity of care in the clinic. (JA 150). In other words, residents are expected to develop professional relationships with patients who repeatedly visit Open Door in order to best understand the patients' full level of care. During the first year of the Program, commonly referred to as "PGY-1," residents are expected to spend four (4) hours per week at Open Door, and complete one (1) patient encounter per hour. (JA 130). By the end of PGY-1, residents should have treated one-hundred fifty (150) patients at Open Door. (JA 130-31). During the second year of the Program, or "PGY-2", residents are expected to spend eight hours per week at Open Door, and complete one patient encounter every thirty (30) to forty-five (45) minutes. (JA 131-32). By the end of PGY-2, residents should have treated 500

9

patients at Open Door. (JA 132). During PGY-3, the residents' final year in the Program, residents are expected to spend twelve hours per week at Open Door, and complete each patient encounter within thirty (30) minutes or less. (JA 171). By the end of PGY-3, residents should have treated 1000 patients at Open Door in order to satisfy ACGME standards, which require residents to treat a total of 1650 throughout their time in the Program. (JA 173). Rotation supervisors complete evaluations for work residents perform during each rotation. (JA 146). Bassi would have spent 4 hours per week his first year and eight hours in his second and third years at Open Door, which was only one part of his residency hours.

The Program's core faculty are responsible for both patient care at Open Door, as well as everyday teaching of the Program's residents. (JA 136). Core faculty also serve as advisors to residents. (JA 136). Core faculty, as well as the clinical preceptors who also supervise residents, complete ambulatory evaluations on behalf of each resident they oversee. (JA 138; JA 135; JA 177). Because the Program is primarily focused on family medicine, most of the residents' milestones are best measured and observed by the work they perform at Open Door. (JA 158).

In their role as resident advisors, members of the core faculty review residents' formative and ambulatory evaluations, and are responsible for preparing initial drafts of residents' summative evaluations. (JA 142-43). Each advisor presents their resident-advisee's summative evaluation to the Program's Clinical

10

Competency Committee. (JA 142-43). In turn, the Clinical Competency Committee, which is comprised of members of the core faculty, discuss the resident's progression and reach a consensus as to whether a resident appears to be meeting, exceeding, or not meeting expectations for residency. (JA 142-43). The Clinical Competency Committee then makes a recommendation to the Program Director as to whether to advance the resident, place the resident on an academic action plan, probation, or remediation, or whether the resident should be terminated from the program. (JA 142-43). While the Clinical Competency Committee provides recommendations concerning residents' advancement in the program, the ultimate decision on whether to advance a resident lies with the Program Director. (JA 141).

Both the Program's residents and Program Director are employed by Phelps. (JA 140; JA 176; JA 178-79). Members of the core faculty are employed by Open Door. (JA 139).

## II.     DR. BASSI'S TIME IN THE RESIDENCY PROGRAM.

### A.     2014 – 2015 Academic Year.

Dr. Bassi signed a Residency Contract with Phelps to begin the Program on July 1, 2014. (JA 186-97). Residency Contracts, including Dr. Bassi's, are subject to review/renewal on an annual basis. (JA 186-97). Dr. Harkisoon initially served as Dr. Bassi's advisor during PGY-1. (JA 124). Halfway through the year, Dr. Harkisoon asked Dr. Puthiyamadam to take over as Dr. Bassi's advisor.

(JA 198). According to Dr. Harkisoon, some residents believed she exhibited preferential treatment towards her own advisees, which included Dr. Bassi at the time. (JA 198). Even during his first year, Dr. Bassi lacked medical knowledge required to care for patients in a clinical setting, which was noted in his 90 day evaluation. (JA 632). And his October 2014 summative evaluation stated that his patient encounters were below the level expected for a first year resident and his medical knowledge and test-taking skills required improvement. (JA 640). Dr. Bassi did complete the first year of his residency, and was renewed for a second year. (JA 49, ¶ 46).

## B.    <u>2015 – 2016 Academic Year.</u>

Dr. Bassi's August 2015 performance evaluation noted that medical charting was incomplete at times and delayed and his patient care continued to be below the expected level for his year. (JA 642). Based upon feedback concerning Dr. Bassi's Performance in the Program, Dr. Bassi was placed on an academic action plan during the second year of his residency. (JA 200-01). As part of Dr. Bassi's academic action plan, the Clinical Competency Committee expected Dr. Bassi to improve by exhibiting greater independence in patient assessments and developing patient plans, increasing his ITE scores, and completing assignments in a timely matter. (JA 200-01). Dr. Bassi's academic action plan began in September 2015, and was reassessed and extended in October 2015. (JA 199). In November 2015, Dr.

Harkisoon issued a letter to Dr. Bassi notifying him that he may not progress to PGY-3 if he did not successfully complete the academic action plan. (JA 199). In December 2015, the Program extended Dr. Bassi's academic action plan a third time to February 2016. (JA 202-03).

In February 2016, the Program formally placed Dr. Bassi on remediation after he failed to substantially improve his performance. (JA 204-05). The Clinical Competency Committee reassessed Dr. Bassi's remediation in April 2016, and extended Dr. Bassi's remediation program to June 2016. (JA 206-07). In June 2016, Dr. Samantha Rai notified Dr. Bassi that, rather than advancing to PGY-3, Dr. Bassi's PGY-2 contract was extended for six months during which Dr. Bassi would be placed on probation. (JA 206-07). The letter to Dr. Bassi specifically stated that it served as a notice of his termination effective December 31, 2016 unless he met the expectations of his probation plan. (JA 206-07). In December 2016, Dr. Bassi was notified that his PGY-2 contract would be extended for the remainder of the academic year due to his continued underperformance. (JA 208-09). This letter likewise stated that Dr. Bassi would be terminated effective June 2017 unless he met the expectations of his remediation plan. (JA 208-09). In August 2017, Dr. Bassi challenged the Program's decision to not promote him to PGY-3. (JA 54, ¶ 78). The Appeals Committee recommended that Dr. Bassi repeat his PGY-2 year rather than be terminated from the Program. (JA 122-23).

**C.** **2016 – 2017 Academic Year**.

Soon after Dr. Bassi began PGY-2 for the second time, which was Dr. Bassi's third year in the Program, Open Door reprimanded Dr. Bassi for backdating his patient notes. (JA 210-11). Dr. Bassi understood patient notes were due within twenty-four (24) hours of seeing a patient, that there were times when he took more than twenty-four (24) hours to complete his notes, that faculty spoke with him concerning the accuracy and timeliness of his notes, and that more than one of his evaluations provided him with negative feedback concerning his patient notes. (JA 159). Dr. Bassi admitted to backdating the patient notes but, similar to all of Dr. Bassi's excuses disputing any negative feedback he received throughout his time in the Program, Dr. Bassi reasoned that other residents *also* backdated notes. (JA 170-71). As a result of this incident, Open Door placed Dr. Bassi on probation separate from the Program's probation.

Dr. Bassi's performance deficiencies continued throughout the 2016 – 2017 academic year, and the Program endeavored to terminate Dr. Bassi's residency a second time based on continued underperformance. (JA 55). Again, Dr. Bassi appealed his termination from the Program. (JA 55). The Appeals Committee initially concluded that: (1) Dr. Bassi should be reinstated and allowed to complete any outstanding rotations needed to finish his training; and (2) Dr. Bassi should complete these rotations in a different environment within the larger NYMC family,

14

under supervision by other clinical faculty. (JA 212). Procedurally, however, the Appeals Committee did not have the authority to stipulate or require that Dr. Bassi finish his residency at another program hosted by NYMC. (JA 118-19). The Appeals Committee was specific to the Program, and could not instruct other residency programs to admit residents even if they shared an institutional sponsor. (JA 119). Despite the Appeals Committee's lack of authority, Dr. Harkisoon reached out to other family residency program sponsored by NYMC to inquire whether they would take Dr. Bassi as one of their residents, but they all declined. (JA 156-57). To comply with the Appeals Committee's decision, Dr. Bassi would have needed to formally transfer programs, but the American Board of Family Medicine requires residents to complete their second *and* third year in the same program. (JA 311-12). The Appeals Committee revised their decision to exclude the requirement that Dr. Bassi complete his residency in another program, and instead required that Dr. Bassi be reinstated, and allowed to complete his remaining rotations under supervision by other clinical faculty. (JA 213).

In response to the Appeals Committee's determination, the Program hired a new attending physician to supervise Dr. Bassi. The Program notified Dr. Bassi that he was reinstated as a PGY-2, but Dr. Bassi demanded to be reinstated as PGY-3 without any probation period. (JA 57, ¶ 102). The Program rejected Dr. Bassi's demands, which resulted in Dr. Bassi's departure from the program that Dr.

15

Bassi now alleges amounted to a constructive discharge. (JA 57, ¶ 109).

## III.    DR. BASSI'S COMPLAINT AND RESOLUTION.

On or about January 21, 2016, Dr. Chattahil spoke to Dr. Bassi at Dr. Harkisoon's behest.  (JA 162-63, 165).  During this conversation, Dr. Chattahil relayed that faculty perceived Dr. Bassi's patka, which is a layer of cloth Dr. Bassi wears under his turban, as unprofessional when worn alone. (JA 50, ¶ 54-56; JA 162-63, 165). Dr. Bassi testified that he typically wore his patka, as opposed to wearing both his turban and his patka, during overnight shifts at Phelps and during surgeries. (JA 169, 126-27, 129).  Dr. Bassi did not wear his patka without his turban while at Open Door during PGY-1, and does not recall wearing his patka without his turban at Open Door during PGY-2. (JA 125, 126, 128).  Following this conversation with Dr. Chattahil, Dr. Bassi filed a complaint with Open Door's Human Resources Department. (JA 166, 180-81). Specifically, Dr. Bassi spoke to Ms. Rodriguez, Director of Human Resources for Open Door, on January 25, 2016, who simultaneously memorialized the conversation. (JA 167, 210-11). During this conversation, Dr. Bassi did not identify any Open Door faculty members as being responsible for the allegedly prejudicial statement. (JA 183).  Dr. Bassi filed a separate complaint with Phelps that same day. (JA 168).

On January 28, 2016, three days after Dr. Bassi's complaint, Dr. Bassi met with Dr. Harkisoon, Dr. Chattahil, Dr. Molly Kilpatrick ("Dr. Kilpatrick"),

another senior resident, Ms. Rodriguez, and a representative from Phelps' human resources department. (JA 182, 184). Neither Doctor Bassi nor any of the other individuals present mentioned Open Door, or Open Door faculty during this meeting. (JA 185). In fact, Dr. Harkisoon explicitly stated that no Open Door faculty members (the core faculty) complained about Dr. Bassi's patka. (JA 151-54). During Dr. Harkisoon's deposition, Dr. Harkisoon clarified that it was Dr. Jill Waldman ("Dr. Waldman"), Chief Hospitalist at Phelps, who complained about Dr. Bassi's patka. (JA 151-53). In turn, Dr. Harkisoon relayed Dr. Waldman's concerns to Dr. Chattahil and Dr. Kilpatrick in an effort to find a sensitive way to relay this feedback to Dr. Bassi. (JA 153-54). At the meeting, Dr. Harkisoon apologized for the remark, and Dr. Bassi was reassured that he could wear whatever religious attire he believed was appropriate. (JA 432, 5, 297). When asked whether Dr. Bassi could identify another way either Phelps or Open Door should have responded differently to his complaint, Dr. Bassi answered in the negative. (JA 175). At no time did any fellow resident ever say they heard any faculty member, or representative of Phelps or Open Door comment about his complaint to Human Resources. (JA 435). In fact, Dr. Bassi does not recall any faculty member (other than possibly a hospital attending) saying anything else about his patka. (JA 522). Dr. Bassi argues without factual support in the record (other than Dr. Chattahil's purported statement to Dr. Bassi about what Dr. Harkisoon told him) that core faculty complained about his patka.

17

(*see* Point I, A, 1 of Brief). There is no evidence that any core faculty or anyone at Open Door made complaints about Dr. Bassi's patka. Other than the comment(s) about is patka, Dr. Bassi does not submit any evidence that anyone said anything referencing his religion or race/color.

## **ARGUMENT**

## **I.** **DR. BASSI'S DISCRIMINATION CLAIMS MUST BE DISMISSED AS A MATTER OF LAW.**

Discrimination claims under § 1981, Title VII, and the NYSHRL are all analyzed using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and its progeny. *Jones v. W. Suffolk Boces*, 2008 U.S. Dist. LEXIS 13077, at *16 (E.D.N.Y. Feb. 20, 2008); *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 327 (S.D.N.Y. 2020) (citing *Tolbert v. Smith*, 790 F.3d 427, (2d Cir. 2015). Under this framework, Dr. Bassi must first adduce sufficient evidence to establish a *prima facie* case of discrimination. *Fitchett v. City of New York,* 2021 U.S. Dist. LEXIS 47763, at *25 (S.D.N.Y. Mar. 15, 2021) (citing *Holcomb v. Iono Coll.*, 521 F.3d 130, 138 (2d. Cir. 2008). Assuming Dr. Bassi satisfies this burden, the burden of production shifts to Open Door to rebut Dr. Bassi's *prima facie* case with a legitimate, nondiscriminatory reason for its employment decision. *Maynard v. Montefiore Med. Ctr.*, 2021 U.S. Dist. LEXIS 21570, at *11 (S.D.N.Y. Feb. 4, 2021) (citing *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020)). Once Open Door

articulates its nondiscriminatory reason, summary judgment is appropriate unless Dr. Bassi can demonstrate that Open Door's proffered reason is pretextual, and that the adverse employment decision was more likely than not motivated by discriminatory animus. *Fitchett v. City of New York*, 2021 U.S. Dist. LEXIS 44763, at *38-39 (S.D.N.Y. Mar. 15, 2021) (holding that the plaintiff failed to adduce "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant[s] were false, and the *more likely than not* discriminatory was the real reason for the adverse employment action." (internal quotations and citations omitted) (emphasis added).

## A. Dr. Bassi Cannot Establish A *Prima Facie* Case Of Discrimination.

To establish a *prima facie* case of religious discrimination based on disparate treatment, Dr. Bassi must show that: (1) he belonged to a protected class; (2) he was qualified for the position at issue[2]; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discriminatory intent. *Aiken v. MTA N.Y.C. Transit*, 2021 U.S. Dist. LEXIS 188628, at *7 (S.D.N.Y. Sept. 29, 2021) (citing *Espinoza v. New York City Dep't of Transportation*, 304 F. Sup. 3d 374, 387 (S.D.N.Y. 2018)). Here, Open Door does not dispute that Dr. Bassi is a member of a protected class. Because Dr.

---

[2] While Open Door maintains that Dr. Bassi's remediation plan and his failure to achieve proficiency to advance to PGY-3 despite multiple chances make him unqualified for the residency position, it will address this argument in support of the Program's legitimate reasons for Dr. Bassi's academic plan, remediation and offer to repeat the PGY-2 year again.

Bassi voluntarily resigned from his position, he has not suffered an adverse employment action. Alternatively, if Dr. Bassi did in fact suffer an adverse employment action, the adverse action did not occur under circumstances giving rise to an inference of discrimination.

First, Dr. Bassi's voluntary resignation from the Program does not constitute an adverse employment action. Since he was not terminated from the program, but rather offered to repeat his year but refused to do so, he resigned from the program and must prove a claim of constructive discharge. To proceed on a constructive discharge claim, Dr. Bassi must demonstrate that his working conditions were "intolerable," such that they were so "difficult or unpleasant that a reasonable person in [his] shoes would have felt compelled to resign." *Aiken v. MTA N.Y.C. Transit.*, 2021 U.S. Dist. LEXIS 188628, at *68 (S.D.N.Y. Sept. 29, 2021) (quoting *Stroud v. New York City*, 374 F. Supp. 2d 341, 350 (S.D.N.Y. 2005). Constructive discharge claims are "difficult to establish," and "are routinely rejected by the courts." *Id.* at 68-69. (quoting *Wright v. Goldman, Sachs & Co.*, 287 F. Supp. 2d 315, 325 (S.D.N.Y. 2005). The record evidence demonstrates that the Program afforded Dr. Bassi several opportunities to improve his performance, including placing Dr. Bassi on an academic action plan, remediation and probation. Throughout this time, Dr. Bassi's advisors met with him biweekly to provide guidance and feedback, and Dr. Bassi was afforded more direct attention than his

20

cohorts to help fill the gaps in his medical knowledge. In addition, the Program afforded Dr. Bassi three opportunities to become proficient as a PGY-2, and hired an additional attending physician to supervise Dr. Bassi during the 2017-2018 academic year to negate any doubt as to the Program's evaluation of Dr. Bassi's progress. Dr. Bassi cannot show that his working conditions were so intolerable that a reasonable person would have felt compelled to leave the program. To the contrary, the avenues that the Program provided to Dr. Bassi to gain proficiency in his medical knowledge and skills belie any intolerable working conditions, and provided a pathway to completing the residency program.

There is no other actionable adverse action taken. Dr. Bassi does claim he was scrutinized more closely and treated more harshly than other residents, without any specific examples provided. While purportedly harsh and unwarranted scrutiny may cause an employee embarrassment or anxiety, such intangible consequences are not recognized as being materially adverse. *See Castro v. New York City Bd. of Educ. Personnel Dir.*, No. 96 Civ. 6314 (MBM), 1998 U.S. Dist. LEXIS 2863, at *21 (S.D.N.Y. Mar. 11, 1998). This Court has acknowledged that "criticism of an employee (which is part of training and necessary to allow employees develop, improve, and avoid discipline) is not considered an adverse employment action." *See Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011) (quoting *Weeks v. N.Y. State (Div. of Parole)*, 273 F.3d 75,

86 (2d. Cir. 2001).

Even if the Court were to find that Dr. Bassi was constructively discharged from the Program, Open Door maintains there is no evidence that gives rise to an inference of discrimination. The District Court did not address the elements of the prima facie case, stating that this Court "may assume that a plaintiff has established a prima facie case and skip to the final step in the *McDonnell Douglas* analysis, as long as the employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action." (*see* JA 1556, *citing Howard v MTA Metro-N. Commuter R.R.*, 866 F.Supp. 2d 196, 205 (S.D.N.Y. 2011)). Open Door maintains that Dr. Bassi cannot meet this element of a prima facie case.

At the outset, Dr. Harkisoon is admittedly responsible for the statement at issue concerning Dr. Bassi's patka. The purported statements regarding Dr. Bassi's patka were not made or attributed to any of the core faculty or instructors at Open Door. Dr. Harkisoon testified that the comment was made by a hospitalist at Phelps and the comment was made during Dr. Bassi's rotation at Phelps Hospital. Dr. Harkisoon explicitly stated that no Open Door faculty members complained about Dr. Bassi's patka. (JA 185). There are no statements or animus in the record by any Open Door employee at any time. Even with respect to the complaint that Dr. Bassi brought to Open Door's HR representative, that issue was promptly investigated, and a meeting was held within days of the complaint, which included

the Hospital's HR representative. Dr. Bassi testified that there is nothing more that Open Door could have done or should have done differently (JA 175).

While the Second Circuit has not categorically defined what circumstances or evidence is sufficient to permit an inference of discrimination, it has stated that a plaintiff "must come forward with some evidence, beyond merely stating that [s]he is a member of a protected class that suffered an adverse employment decision." *See Rosario v. Hilton Worldwide*, No. 09 Civ. 5336, 2011 U.S. Dist. LEXIS 8719, at *9 (E.D.N.Y. Jan. 24, 2011) (citation omitted), *aff'd*, 2012 U.S. App. LEXIS 7623 (2d Cir. Apr. 17, 2012). Evidence that may support an inference of discrimination includes, for example, the employer's criticism of the plaintiff's performance in discriminatory terms, invidious comments about others in the employee's protected group, or evidence of more favorable treatment of employees outside the protected group. *Rosario*, 2011 U.S. Dist. LEXIS 8719, at *9; *Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 468 (2d Cir. 2001), cert. denied, 534 U.S. 993 (2001); *Abdul-Hakeem v. Parkinson*, 523 Fed. Appx. 19, at *20 (2d Cir. 2013); *Dall v. St. Catherine of Siena Med. Ctr.*, 966 F.Supp.2d 167, 182 (E.D.N.Y. 2013). It is Plaintiff's responsibility to "set forth factual circumstances from which discriminatory motivation may be inferred." *Dall*, at 182. Bassi admits that were no further comments about is patka or his turban after his complaint (JA 175), and it is undisputed that many of his preceptors were unaware

of the complaint (including Collins and Muse). *See Murray v. Visiting Nurse Servs. of N.Y.*, 528 F.Supp.2d 257, 271 (S.D.N.Y.2007) ("[D]istrict courts have consistently held that, with regard to the causation prong of the prima facie standard, absent any evidence to support an inference that the decision makers knew of plaintiff's complaints, plaintiff cannot rely on circumstantial evidence of knowledge as evidence of causation."). Dr. Bassi relies on vague generalizations about his treatment compared to the treatment of residents outside of his protected group, but cannot identify another resident who was not placed on remediation or probation for academic or clinical deficiencies similar to his. Dr. Bassi's comparison of his performance to the performance of other residents in the program is speculative, and unsupported by admissible, non-hearsay evidence. The only differential treatment allegations submitted by Dr. Bassi were three declarations from former co-residents of Dr. Bassi, who collectively opined that Dr. Bassi was treated more harshly by the core faculty, but none of whom mentioned that Dr. Bassi's religion or race/color played any role in the harsher treatment. "A co-worker's positive opinion of a plaintiff's work is inadequate to create an issue of fact where the employer was dissatisfied with plaintiff's performance." *Josma v. New York City Health & Hosps. Corp.*, No. 10–cv–3610, 2012 WL 3861171 (E.D.N.Y. Sept. 5, 2012) (citing *Anderson v. Baxter Healthcare Corp.*,13 F.3d 1120 (7th Cir.1994) (submission of materials from co-worker or supervisor indicating that employee's performance was

satisfactory does not create issue of fact where employer was dissatisfied with employee's performance)).  There are simply no facts to support that any decisions by Open Door faculty regarding Dr. Bassi's well documented deficiencies over the years support any inference of discrimination.

**B.**    **The Program Had Legitimate Reasons For Its Actions Against Dr. Bassi.**

Assuming that Plaintiff could establish a *prima facie* case of discrimination and point to evidence to support an inference of discrimination, Open Door has articulated legitimate, nondiscriminatory reasons for the academic plans and remediation.  The uncontroverted record demonstrates that Plaintiff was not progressing in his training and proficiencies, all of which started even before his one complaint to Open Door in early 2016.  Dr. Mary Rose Puthiyamadam ("Dr. Puthiyamadam"), a core faculty member and one-time advisor to Dr. Bassi noted that Dr. Bassi lacked an analytical approach to patient problems and, while Dr. Bassi was able to converse well with patients, he failed to ask key questions about patient symptoms and care. (JA 1509-10).  Dr. Rebecca Collins ("Dr. Collins") likewise reported that Dr. Bassi was academically deficient, unable to keep up with the clinical care, and lacked medical knowledge. (JA 1511). Notably, Dr. Bassi cannot attribute *any* discriminatory statement or behavior toward Dr. Puthiyamadam or Dr. Collins and yet, inconceivably, Dr. Bassi wants the Court to find that they (along with the entire core faculty) *must have* been acting discriminatorily. Dr. Bassi's lack

of self-awareness in this respect is jarring; He's taken a single remark made by Dr. Harkisoon or the hospitalist about his patka, neither of whom are employed by Open Door nor a member of the CCC, and imputed it onto anyone who criticized his performance as a resident.  It is a long-standing rule that Courts "do not sit as a super-personnel department that reexamines an entity's business decisions."  *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) (internal quotations omitted).  Nor does it matter whether the challenged employment decision was the correct one.  *Pacenza v. IBM Corp.*, No. 04 Civ. 5831 (PGG), 2009 U.S. Dist. LEXIS 29778, at *42-43 (S.D.N.Y. Apr. 2, 2009).  The contemporaneous reports from the core faculty reflect the reasonable conclusion that Plaintiff's performance was unsatisfactory.  In a resident setting, it is critical that the decisions regarding a resident's advancement through the program be left to the medical faculty evaluating the resident.  Courts have declined to second-guess well-documented concerns about a resident's ability to provide proper medical care in a clinical setting. *Nigro v. Virginia Commonwealth University/ Medical College of Virginia,* 492 Fed.Appx. 347 (4th Cir. 2012) (despite some average or positive reviews on non-substantive criteria, no evidence of departure from accepted academic norms in finding resident's performance deficient and in requiring, among other things, repetition of academic year); *Hankins v. Temple University,* 829 F.2d 437 (3d Cir. 1987) (no evidence casting doubt on legitimacy of university's academic judgments); *Abdel-Raouf v. Yale Univ.*, 2015 WL 687440, at

26

*5 (D. Conn. Feb. 18, 2015) (deferring to institution's academic judgment where plaintiff offered only his own opinion to dispute less than laudatory comments, and his own witnesses and exhibits showed he was unprepared to function independently as required in the third year of residency). *Cf. Latif v. Univ. of Texas Sw. Med. Ctr.*, 834 F. Supp. 2d 518, 527-28 (N.D. Tex. 2011) (national origin claim dismissed where plaintiff failed his final clinic rotation and could not show he was treated worse than those outside the protected group). Notably, Dr. Bassi does not, and cannot, point to any resident that had similar performance issues but was treated differently than the core faculty.

Dr. Bassi's performance was consistently poor in some areas and remained so throughout his residency. This began during his PGY-1 (2014-2015), long before his one complaint to Open Door. In October 2014, Dr. Bassi's patient encounters were below expectations, as well as his expect medical knowledge (JA 640). These performance deficiencies continued during Dr. Bassi's first PGY-2 year, which resulted in an action plan being formulated in September 2015 (JA 200-01), which was extended in November 2015 (JA 199 and again in December 2015 (JA 202-03), actions all taken prior to any complaint from Dr. Bassi. The plan was ultimately extended again in 2016, and ultimately Dr. Bassi was not promoted and had to repeat his PGY-2 year (JA 206-07). These deficiencies continued throughout his second PGY-2 year (2016-2017) which prompted the decision to terminate Dr. Bassi from

the Program (JA 55). After Dr. Bassi's appeal of his termination, the Program was willing to allow Dr. Bassi to repeat his PGY-2 year again, but Dr. Bassi refused and insisted that he be promoted to PGY3 (JA 57, ¶ 102). While Bassi may disagree with his evaluations, or point to the fact that he received positive evaluations on some rotations outside of the Open Door Clinic, and earned the highest score on the In-Training Examination, these fail to establish an issue of fact regarding whether Bassi satisfied the Program requirements. *See Kleyman v. SUNY Downstate Medical Center*, 2020 WL 5645218, at *15-16 (E.D.N.Y. Sept. 21, 2020) (summary judgment granted in light of frequent clinical and academic complaints about surgical resident from many sources - plaintiff's disagreement with employer's assessment does not establish pretext). *See Hankins,* 829 F.2d 437, 443 (no reasonable jury could find plaintiff was terminated from fellowship for reasons other than as a result of academic decisions by professors over several months of interaction and observation; plaintiff provided no evidence of discriminatory intent or pretext). Simply put, Bassi was not qualified to advance in the Program, and his claims should be dismissed upon summary judgment. *See also Nigro v. Virginia Commonwealth University*, 492 Fed.Appx. 347, 359 (4th Cir. 2012) (no discrimination where resident denied promotion because she failed to show satisfactory performance); *Brown v. Hamot Medical Center*, 323 Fed. Appx. 140, 142-143 (3rd Cir. 2009) (resident failed to show she was qualified for promotion; no similarly situated residents who were treated more

favorably, and no evidence that academic and clinical problems were pretextual); *Abdel-Raouf v. Yale University*, 2015 WL 687440 (D. Conn. Feb. 18, 2015) (although resident claimed evaluations were biased, no evidence that non-promotion or termination were discriminatory; faculty unanimously found plaintiff was not ready for PGY-3). Simply put, Dr. Bassi's overall performance fell below the Program's expectations as assessed by the Core Faculty.

## C. <u>There is no evidence of pretext.</u>

Appellees have submitted indisputable evidence that Dr. Bassi's evaluations and the decisions regarding his remediation, probation and ultimately the decision to have him repeat his PGY-2 were based on legitimate, nondiscriminatory reasons. Dr. Bassi's own conclusory allegations cannot defeat Open Door's motion – there is no fact or triable question of fact supporting the contention that discrimination played *any part* in Open Door's treatment of Dr. Bassi. *See Viola v. Philips Med. Systems of N.A.*, 42 F.3d 712, 718 (2d Cir. 1994) (employee's disagreement with employer's negative performance evaluation insufficient to support a discrimination claim); *Ricks v. Conde Nast Publs., Inc.*, 92 F. Supp. 2d 338, 347 (S.D.N.Y. 2000) (mere fact that an employee disagrees with an employer's assessment of their work will not, standing on its own, show that the employer's asserted reason for termination was pretextual); *Orisek v. American Inst. of Aeronautics and Astronautics*, 938 F. Supp. 185, 191 (S.D.N.Y. 1996) (employee's

own disagreement with employer's perception of job performance does not satisfy the burden of showing that the employer's proffered justification was a pretext for discrimination); *Woodard v. Monticello Cent. Sch. Dist.*, No. 06 Civ. 13361 (KMK), 2008 U.S. Dist. LEXIS 97184, at *43 (S.D.N.Y. Dec. 1, 2008) (ruling that an employee failed to show evidence of racial bias where the employee "offer[ed] no evidence, other than her own opinion that she was a good teacher"); *Rimpel v. AdvantageCare Physicians, P.C.*, No. 17 Civ. 6867 (NGG) (PK), 2020 U.S. Dist. LEXIS 167700, at *25 (E.D.N.Y. Sept. 14, 2020) (finding no evidence of pretext despite plaintiff's disagreement with his performance ratings).  Dr. Bassi's burden is to show that he was subjected to an adverse action *because of* intentional discrimination and/or retaliation for making a complaint of the same.  Bassi testified that it is merely his perception that discrimination took place, and that he witnessed nothing to substantiate this, because he does not "know what was said behind closed doors" (JA 445).

In his argument, Dr. Bassi argues that the lower Court dismissed his evidence of pretext, which included his rotation evaluations (which are separate and distinct from his family practice clinical work at Open Door) and the opinions of the on-call physicians at the hospital (again separate and distinct from his clinical work at Open Door), the opinions and observations of his co-workers, the Appeals

Committee's determination, and the National In-Training Examination in October 2016.

First, these rotation evaluations on which he relies are separate from his work at Open Door – the rotation faculty and the hospital physicians were not core faculty and did not supervise him at Open Door's clinic. Bassi would have spent 4 hours per week his first year and eight hours in his second and third years at Open Door, which again was only one part of his residency hours. By Dr. Bassi's own admission, he spent significantly more time in rotations, the majority of which took place at Phelps Hospital, than he did in the Open Door Clinic. (JA 1241). That *some* doctors outside of the Core Faculty evaluated Dr. Bassi positively does not undermine the Program's overall assessment of his performance and competency: neither does the fact that Dr. Bassi received positive feedback in many areas during his residency at the Open Door Clinic from the core faculty.[3]

Second, to rebut this overwhelming evidence of legitimate nondiscriminatory reasons for the evaluations by the core faculty, Dr. Bassi also points to his fellow residents and their opinions that Dr. Bassi was treated more harshly, and the core faculty questioned him more aggressively (JA 1492, 1496-97, 1500-02).

---

[3] Dr. Bassi also cites to the use of videotaping him as a form of retaliation following his complaint. The District Court, however, noted that this was done with Dr. Bassi and other residents as training, but also provided visual confirmation that any decisions later on regarding Dr. Bassi's performance were based on his performance rather than mere opinion. JA 1561.

Notably, the same residents who provided their opinions never attribute the criticism to Dr. Bassi's religion or race/color (or even reference either). Further, they provide general opinions but never state whether they were aware of any of the evaluations or feedback provided, or whether they knew of the remediation that was provided to address Dr. Bassi's noted deficiencies. As stated above, "[a] co-worker's positive opinion of a plaintiff's work is inadequate to create an issue of fact where the employer was dissatisfied with plaintiff's performance." *Josma*, No. 10–cv–3610, 2012 WL 3861171 (E.D.N.Y. Sept. 5, 2012) (citing *Anderson v. Baxter Healthcare Corp.*,13 F.3d 1120 (7th Cir.1994); *see also Brenner v. City of N.Y.*, 132 F. Supp. 3d 407, 419 (E.D.N.Y. 2015). Lastly, two of the former residents that opined on Dr. Bassi's treatment also stated that a number of residents went to Dr. Richard McCarrick, an officer with New York Medical College, to complaint about concerns regarding the Program and specifically Dr. Harkisoon; they did not go forward with the complaints because of fear of retaliation, having nothing to do with religion, race/color or any other protected category.[4] This common concern among the residents regardless of ethnicity or religion, was also expressed by Dr. Bassi, who admitted that "several residents, faculty, and outside investigators have all expressed

---

[4] Dr. Bassi also raises Dr. Harkisoon's departure from the Program as support for his claims. While the decision is irrelevant to disposition of this case since Dr. Bassi's employment, and his complaints had nothing to do with the decision. Dr. Harkisoon was placed on a performance improvement plan in early 2020, and none of the issues raised had anything to do with unlawful discrimination or retaliation. (SA 38-51).

the belief that the Program, and Dr. Harkisoon in particular, was prone to retaliate . . . against individuals who raised any objection to *how the Program was run."* (JA 1238-39, ¶6)(emphasis added).

Third, Dr. Bassi also points to the Appeals Committee decisions to support pretext. The Appeals Committee is not comprised of Open Door employees, did not address any issues about discrimination (JA 983), and ultimately the Program offered a path forward for Dr. Bassi to continue after the Appeals Committee issued its findings. Again, there is no evidence that the core faculty or anyone at Open Door was involved in the Appeals Committee's review or decision, or the Program's decisions after the Appeals Committee issued its findings. In his residency contract, Dr. Bassi was informed that "[i]n the event the Program Director in good faith determines that you have not performed satisfactorily during the term of this Agreement, the Hospital (defined as Phelps – JA 186) has the option to terminate. (JA 189, ¶ 11).

As the District Court found, Dr. Bassi provided no evidence that any action by Open Door was "*more likely motivated*" by his religion or race/color. (JA 1560). Or that he was treated differently than other residents *because of his religion or race/color*. And Dr. Bassi has not provided this Court with any such evidence. For the reasons set forth herein, Plaintiff cannot prove pretext and his claims must fail.

## II.  DR. BASSI'S RETALIATION CLAIMS MUST ALSO BE DISMISSED AS A MATTER OF LAW.

To establish a *prima facie* case of retaliation under § 1981, Title VII and the NYSHRL, Dr. Bassi must establish: (1) he engaged in a protected activity; (2) Open Door was aware of this activity; (3) Open Door took an adverse employment action against Dr. Bassi; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Maynard v. Montefiore Med. Ctr.*, 2021 U.S. Dist. LEXIS 21570, at \*15 (S.D.N.Y. Feb. 4, 2021) (internal citations omitted).  Both § 1981 and Title VII claims must "must be proved according to traditional principals of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action of the employer." *Id.* While the Second Circuit has yet to explicitly decide whether the but-for causation standard applies to claims under the NYSHRL, as it does under § 1981 and Title VII, the Circuit has implicitly applied this standard to NYSHRL claims on several occasions. *See Saji v. Nassau Univ. Med. Ctr.*, 724 F. App'x 11, 14-16 (2d Cir. 2018) (affirming grant of summary judgment for defendant on Title VII and NYSHRL claims where plaintiff failed to raise genuine issues of material fact as to but-for causation); *Russel v. Aid to Developmentally Disabled, Inc.*, 753 F. App'x 9, 14-15 (2d Cir. 2018) (explaining but-for causation where retaliation claim brought only under the NYSHRL); *Alvarado v. Nordstrom Inc.*,  685 F. App'x 4, 6 (2d Cir. 2017) (finding that "the record lack[ed] sufficient support for [plaintiff's]

argument under the but-for causation standard of [the NYSHRL]").  Open Door does not dispute that Dr. Bassi engaged in protected activity when he made his internal complaint, nor does Open Door dispute its knowledge of Dr. Bassi's complaint.  Dr. Bassi cannot establish a *prima facie* case of retaliation against Open Door because: (1) he voluntarily resigned from the Program; (2) Dr. Harkisoon, who was in Phelps' employ, ultimately had the discretion to advance Dr. Bassi, not Open Door; and (3) Dr. Bassi cannot establish a causal connection between his complaint and any action taken against him.

Open Door avers that Dr. Bassi's voluntary resignation from the program does not amount to a constructive discharge and, therefore, Dr. Bassi has not suffered an adverse employment action. *See* II.A. *supra*. Additionally, Dr. Harkisoon, a Phelps employee, was ultimately responsible for any decision to advance or withhold Dr. Bassi not Open Door. *Id.*

Moreover, Dr. Bassi's retaliation claim fails as a matter of law because he cannot show that he would have successfully advanced in the program "but for" his complaint.  *See Abdel-Raouf v. Yale University*, 2015 WL 687440 (D. Conn. Feb. 18, 2015) (no retaliation where no evidence presented that residency review committee discussed or where the recipient of the complaint attempted to influence the outcome of deliberations).  It is undisputed that core faculty identified Dr. Bassi's performance deficiencies while at the Clinic *prior* to his complaint, as evidence by the Program's

decision to place Dr. Bassi on an academic action plain in the fall of 2015. Dr. Bassi did not meet the requirements of his academic action, remediation, or probation plans. Despite feedback from several faculty members concerning both the timeliness and efficiency of Dr. Bassi's notetaking, Dr. Bassi was nonetheless written up during in the Fall of 2016 – his third year in the program – for deliberating backdating his notes.  Further and even more importantly, Dr. Bassi was unable to treat patients safely and efficiently in the allotted time despite the additional help he was receiving. Thus, Dr. Bassi's performance deficiencies were the motivation and cause of any purported adverse action – not his complaint against an individual (Dr. Harkisoon) who was not even employed by Open Door. Accordingly, Dr. Bassi's claims fail as a matter of law. *See Fall v. New York State United Teachers*, 289 F. App'x 419, 421 (2d Cir. 2008) (poor performance is a legitimate reason for an adverse employment action); *Williams v. McCausland*, 1995 U.S. Dist. LEXIS 13341 at *39-40 (S.D.N.Y. Sept. 14, 1995) (failure to fulfill job duties "is an obviously legitimate justification" for a suspension and termination).

As explained above in detail, Open Door has offered legitimate, non-discriminatory reasons for the remedial actions taken against Dr. Bassi. *See* Point II, B.  Finally, Plaintiff cannot adduce any evidence that the explanations for the purported adverse employment actions taken against Dr. Bassi were pretext for unlawful retaliation.  *See* Point II, C.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Appellee Open Door Family Medical Center respectfully requests that this Court affirm the District Court's Opinion and Order granting summary judgment and dismissing Plaintiff-Appellant's Amended Complaint in its entirety.

Respectfully submitted,
JACKSON LEWIS P.C.


By:   /s/    Greg Riolo
         Greg Riolo

44 South Broadway, 14th Floor
White Plains, NY 10601
Tel.: (914) 872-6902
greg.riolo@jacksonlewis.com

ATTORNEYS FOR
DEFENDANT-APPELLEE
OPEN DOOR FAMILY
MEDICAL GROUP

Dated:     September 7, 2023
         White Plains, New York

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Second Circuit Rule 32.1 because this brief contains 8,655 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

/s/    Greg Riolo
       Greg Riolo