# Case No. 23-278

**UNITED STATES CIRCUIT COURT OF APPEALS
FOR THE SECOND CIRCUIT**

---

**HARMEETINDER BASSI, M.D.,**
*Plaintiff-Appellant,*

v.

**NEW YORK MEDICAL COLLEGE, PHELPS MEMORIAL HOSPITAL
ASSOCIATION, DBA Phelps Hospital, NORTHWELL HEALTH, INC.,
OPEN DOOR FAMILY MEDICAL CENTER, INC., DBA Open Door Family
Medical Group, SHANTIE HARKISOON, M.D.**
*Defendants-Appellees.*

---

*Appeal from*
United States District Court for the Southern District of New York
Case No. 7:19-cv-07542

---

**BRIEF FOR DEFENDANT-APPELLEE NEW YORK MEDICAL COLLEGE**

---

Mariah L. Passarelli
Cozen O'Connor
One Oxford Centre
301 Grant Street, 41st Floor
Pittsburgh, PA 15219
Telephone – (412) 620-6502
Email: mpassarelli@cozen.com

*Attorneys for Appellee
New York Medical College*

## <u>DEFENDANT NEW YORK MEDICAL COLLEGE'S RULE 26.1 CORPORATE DISCLOSURE STATEMENT</u>

New York Medical College, by and through its undersigned counsel,

certifies that it is not a publicly-traded corporation and no corporation owns stock

in the Company.

# <u>TABLE OF CONTENTS</u>

DEFENDANT NEW YORK MEDICAL COLLEGE'S RULE 26.1 CORPORATE DISCLOSURE STATEMENT ................................................ 2

TABLE OF CONTENTS ............................................................................... i

JURISDICTIONAL STATEMENT .......................................................... 1

ISSUES PRESENTED ................................................................................. 2

STATEMENT OF THE CASE .................................................................... 3

I.   THE RELATIONSHIP BETWEEN THE PARTIES ....................... 3

II.  BACKGROUND OF THE PROGRAM ........................................ 5

III. BASSI'S TIME IN THE PROGRAM ........................................... 6

    A.   Bassi struggled with performance in the Program. .............. 6

    B.   In the middle of his performance struggles, Bassi complained to Phelps and Open Door, but not NYMC, about comments related to his patka ........................................ 11

IV. PROCEDURAL POSTURE ........................................................ 13

V.  STANDARD OF REVIEW ......................................................... 18

VI. SUMMARY JUDGMENT FOR NYMC ON BASSI'S DISCRIMINATION AND RETALIATION CLAIMS SHOULD BE AFFIRMED. .......................................................................... 19

    A.   Judgment for NYMC on Bassi's discrimination and retaliation claims should be affirmed because Bassi abandoned or waived his arguments to the contrary. ............ 20

    B.   Even if Bassi had not abandoned his arguments against NYMC with respect to his discrimination and retaliation claims, judgment for NYMC should be affirmed on these claims because none of Bassi's evidence on appeal has anything to do with NYMC. ........................................ 23

    C.   Even if Bassi had not waived the opportunity to argue that NYMC was his employer, judgment for NYMC should be affirmed on these claims because the undisputed record evidence proves NYMC was not Bassi's employer. ............ 30

D.      Even if Bassi had not abandoned or waived his arguments against NYMC with respect to his discrimination and retaliation claims, judgment for NYMC should be affirmed on these claims because Bassi cannot prove the required elements..................39

VII.    SUMMARY JUDGMENT FOR NYMC ON BASSI'S BREACH OF CONTRACT CLAIM SHOULD BE AFFIRMED. ......................................50

A.      Bassi's contract claim against NYMC fails as a matter of law because NYMC is not a party to the contracts Bassi seeks to enforce. ..........................................................................................50

B.      Bassi waived his arguments that non-party NYMC should be bound to the Residency Agreements on appeal. ..................................52

C.      New York law does not allow for NYMC to be added as a party......................................................................................................53

D.      Bassi's contract claim fails as a matter of law because there he cannot establish a brief or recoverable damages..................................55

E.      Bassi is certainly not entitled to summary judgment on his breach of contract claim against NYMC...............................................55

VIII.   SUMMARY JUDGMENT FOR NYMC ON BASSI'S TORTIOUS INTERFERENCE CLAIM SHOULD BE AFFIRMED. .............................55

A.      Bassi abandoned and waived all arguments relating to his tortious interference claim by failing to raise them at summary judgment or on appeal. ........................................................................55

B.      Bassi's tortious interference claims fails as a matter of law because Bassi cannot show NYMC induced Phelps to breach the Residency Agreement ...................................................................58

CONCLUSION ........................................................................................................59

CERTIFICATE OF COMPLIANCE .....................................................................60

LEGAL\65787581\1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdu-Brisson v. Delta Air Lines Inc.*,
239 F.3d 456 (2d Cir. 2001), *cert. denied*, 534 U.S. 993 (2001) ......................20

*Action Nissan, Inc. v. Nissan N. Am.*,
454 F. Supp. 2d 108 (S.D.N.Y. 2006) ................................................................60

*Alvarado v. United Hospice, Inc.*,
631 F. Supp. 3d 89 (S.D.N.Y. 2022) ...........................................................*passim*

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)............................................................................................19

*Arculeo v. On-Site Sales & Marketing, LLC*,
425 F.3d 193 (2d Cir. 2005) ..............................................................................37

*Ayyaz v. City of N.Y.*,
Case No. 19-CV-01412-LTS-SN, 2021 WL 1225684 (S.D.N.Y.
Mar. 31, 2021)..............................................................................................32, 33

*Baity v. Kralik*,
51 F. Supp. 3d 414 (S.D.N.Y. 2014) ..................................................................45

*Barsoumian v. Univ. at Buffalo*,
2012 WL 930331 (W.D.N.Y. Mar. 19, 2012) ....................................................55

*Beards v. Bronxcare Health Sys.*,
2021 WL 704177 (S.D.N.Y. Feb. 23, 2021) ......................................................19

*Bickerstaff v. Vassar Coll.*,
196 F.3d 435 (2d Cir. 1999), *cert. denied*, 530 U.S. 1242 (2000) ....................20

*Black Car & Livery Ins., Inc. v. H & W Brokerage, Inc.*,
28 A.D.3d 595 (N.Y. App. Div. 2006) ...............................................................52

*Brown v. CSX Transp., Inc.*,
155 F. Supp. 3d 265 (W.D.N.Y. 2016)...............................................................47

*Burlington Coat Factory Warehouse Corp. v. Espirit De Corp.*,
  769 F.2d 919 (2d Cir. 1985) ............................................................................. 19

*Edwards v. Sequoia Fund, Inc.*,
  938 F.3d 8 (2d Cir. 2019) ................................................................................. 52

*Fahrenkrug v. Verizon Svcs. Corp.*,
  652 Fed. App'x 54 (2d Cir. 2016) ..................................................................... 45

*Glaser v. Upright Citizens Brigade, LLC*,
  377 F. Supp. 3d 387 (S.D.N.Y. 2019) ......................................................... 33, 34

*Goenaga v. March of Dimes Birth Defects Found.*,
  51 F.3d 14 (2d Cir. 1995) ................................................................................. 20

*Graham v. Elmira City Sch. Dist.*,
  Case No. 6:15-CV-6645T, 2015 WL 1383657 (W.D.N.Y. Mar. 25,
  2015) ................................................................................................................. 45

*Gulino v. N.Y. State Educ. Dep't*,
  460 F.3d 361 (2d Cir. 2006) .............................................................................. 32

*Johnson v. L'Oreal*,
  2023 WL 2637456 (2d Cir. Mar. 27, 2023) ................................................. 44, 45

*Jordan v. United Health Grp., Inc.*,
  783 Fed. App'x 31 (2d Cir. 2019) ..................................................................... 45

*Joseph v. Ocwen Fin. Corp.*,
  2023 WL 3635077 (2d Cir. May 25, 2023) ......................................... 21, 53, 57

*Kirkland v. Cablevision Sys.*,
  760 F.3d 223 (2d Cir. 2014) .............................................................................. 42

*Lima v. Addeco*,
  634 F. Supp. 2d 394 (S.D.N.Y. 2009), *aff'd* 375 Fed. App'x 54 (2d
  Cir. 2010) ..................................................................................................... 38, 40

*Lima v. Adecco*,
  375 Fed. App'x 54 (2d Cir. 2010) ..................................................................... 40

*McDonnell Douglas v. Green*,
  411 U.S. 792 (1973) ..................................................................................... 41, 42

iv

*McLee v. Chysler Corp.*,
   109 F.3d 130 (2d Cir. 1997) ...............................................................20

*Meloff v. New York Life Ins. Co.*,
   51 F.3d 3725 (2d Cir. 1995) ...............................................................20

*Mira v. Kingston*,
   715 Fed. App'x 28 (2d Cir. 2017) ......................................................32

*Nelson v. Argyropoulous*,
   Case No. 1:18-cv-11413 (AT) (SDA), 2021 WL 4927059
   (S.D.N.Y. Mar. 18, 2021) ...............................................32, 33, 35, 36

*Niagara Mohawk Power Corp. v. Hudson River-Black River
   Regulating Dist.*,
   673 F.3d 84 (2d Cir. 2012) ........................................................22, 58

*O'Connor v. Davis*,
   126 F.3d 112 (2d Cir. 1997) ........................................................33, 34

*Parsons v. JPMorgan Chase Bank, N.A.*,
   2018 WL 4861379 ...............................................................................19

*In re Platinum & Palladium Antitrust Litigation*,
   61 F.4th 242 (2d Cir. 2023) ...............................................21, 54, 58

*Reels v. Dynamics in Play, LLC*,
   Case No. 516534/2020, 2023 WL 2721671 (N.Y. Sup. Ct. Mar. 30,
   2023) ....................................................................................................52

*Rennaker Co. Consulting, Inc. v. TLM Grp., LLC*,
   Case No. 16 Civ. 3787 (DAB), 2017 WL 2304302 (S.D.N.Y. May
   18, 2017) ..............................................................................................52

*Ruiz v. Cnty. of Rockland*,
   609 F.3d 486 (2d Cir. 2010) (*McDonnell Douglas* applies to claims
   under Section 1981) .............................................................................41

*Ruiz v. Cnty. of Rockland*,
   609 F.3d 489 (2d Cir. 2010) .........................................19, 42, 45, 46

*Saji v. Nassau Univ. Med. Cntr.*,
   724 Fed. App'x 11 (2d Cir. 2018) .....................................................45

v

*SEC v. Grossman*,
887 F. Supp. 649 (S.D.N.Y. 1995) ....................................................20

*Shah v. Wilco Sys., Inc.*,
76 Fed. App'x 383 (2d Cir. 2003) ...............................................22, 58

*Shehab v. N.Y. State Dep't of Transp.*,
251 Fed. App'x 9 (2d Cir. 2007) .......................................................35

*Shiflett v. Scores Holding Co., Inc.*,
601 Fed. App'x 28 (2d Cir. 2015) ...........................................32, 36, 37

*Spiegel v. Schulmann*,
604 F.3d 72 (2d Cir. 2010) ...............................................................42

*St. Pierre v. Dyer*,
208 F.3d 394 (2d Cir. 2000) ..............................................................20

*Sutton v. Houllou*,
191 A.D.3d 1031 (N.Y. App. Div. 2021) ..........................................56

*Syntel Sterling Best Shores Mauritius Ltd. v. The Trizetto Grp., Inc.*,
68 F.4th 792 (2d Cir. 2023) ........................................................21, 58

*Toledo v. Brend Restoration, LLC*,
Case No. 21 Civ. 882 (GBD) (SN), 2023 WL 3381249 (S.D.N.Y.
May 11, 2023)..............................................................................37, 40

*U.S. v. Botti*,
711 F.3d 299 (2d Cir. 2013) ........................................................22, 58

*Vitti v. Macy's Inc.*,
758 Fed. App'x 153 (2d Cir. 2018) ...................................................37

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ...............................................................58

*York v. Ass'n of the Bar of the City of N.Y.*,
286 F.3d 122 (2d Cir. 2002) ..............................................................33

*Zuk v. Onondaga Cnty.*,
471 Fed. App'x 70 (2d Cir. 2012) .....................................................46

vi

**Statutes**

28 U.S.C. § 1291 ....................................................................................1

28 U.S.C. §§ 1331, 1343, and 1367 ......................................................1

42 U.S.C. § 1981 ...........................................................................*passim*

42 U.S.C. § 2000e-2(a) ........................................................................31

42 U.S.C. § 2000e-3(a) ........................................................................31

ADA .......................................................................................................38

Civil Rights Act of 1964 Title VII ................................................*passim*

NYSHRL ..............................................................................................*passim*

Section 1981 ...................................................................................13, 17

State Human Rights Law ......................................................................13

Title VII ..........................................................................................*passim*

**Other Authorities**

Fed. R. App. P. 28(a)(8) .......................................................................59

Fed. R. Civ. P. 56(a) .............................................................................19

Fed. R. Civ. Pro. 56(c)(4) ....................................................................44

LEGAL\65787581\1

## JURISDICTIONAL STATEMENT

Jurisdiction in the United States District Court for the Southern District of New York was proper under 28 U.S.C. §§ 1331, 1343, and 1367, because plaintiff-appellant Harmeetinder Bassi, M.D. ("Bassi") purported to allege claims involving federal questions under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"), as well as state law claims arising out of the same operative facts.

The United States Court of Appeals for the Second Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because Bassi timely filed a Notice of Appeal on March 3, 2023 seeking review of a final order entered March 2, 2023, which granted summary judgment for the defendant appellees on all claims and closed the case below.  JA-1573-JA-1574.

## ISSUES PRESENTED

1.     Did the District Court properly grant summary judgment in favor of NYMC on Bassi's employment discrimination and retaliation claims under Title VII, Section 1981 and the NYSHRL?

**Suggested Answer: Yes.**

2.     Did the District Court properly grant summary judgment in favor of NYMC, and deny summary judgment for Bassi, on Bassi's breach of contract claim?

**Suggested Answer: Yes.**

3.     Did the District Court properly grant summary judgment in favor of NYMC on Bassi's tortious interference with contract claim?

**Suggested Answer: Yes.**

LEGAL\65787581\1

## STATEMENT OF THE CASE

## I.   THE RELATIONSHIP BETWEEN THE PARTIES

This case involves plaintiff-appellant Bassi and five defendant-appellees: (1) Phelps Memorial Hospital Association ("Phelps"); (2) Open Door Family Medical Center, Inc. ("Open Door"); (3) Shantie Harkisoon, M.D. ("Harkisoon"); (4) New York Medical College ("NYMC"); and (5) Northwell Health, Inc. ("Northwell").

The parties' relationships to one another can be summarized as follows:

- At all relevant times, Phelps and Open Door ran, and were responsible for the day-to-day operations of, a Family Medicine Residency Program ("Program"). *E.g.,* JA-251:8-JA-252:25; JA-829:8-15; JA-936 ¶¶ 6-7; JA-1195 ¶¶ 3-5, 8-9.

- Phelps employed the Program's Director, Harkisoon, as well as the Program's residents.   JA-822:12-25;  JA-824:20-25;  JA-830:4-8;  JA-854:20-25; JA-1119 ¶¶ 1, 3; JA-1179 ¶ 12.

- Phelps hosted the majority of the Program's rotations and Open Door operated the clinic where residents were assigned to work for the majority of their time each year.  JA-1121 ¶ 14; JA-936 ¶¶ 6-7; JA-1195 ¶¶ 3, 5, 9.

- Phelps and Open Door employed the faculty physicians and specialty physicians who supervised the residents.   JA-183:3-6;  JA-832:20-JA-833:11; JA-859:4-19; JA-1181 ¶ 22; JA-1122 ¶ 15.  The "Core Faculty"

LEGAL\65787581\1

were employed by Open Door.  JA-252:9-22; JA-497:21-23; JA-830:12-14.

- Decisions regarding Program standing – such as whether a resident should receive credit for rotation or be advanced in the Program – were made by the Clinical Competency Committee ("CCC"), which was comprised of Harkisoon (a Phelps employee) and Open Door employees.  JA-320-JA-323; JA-331:7-14; JA-334:15-24; JA-351:4-17; JA-353:13-JA-354:10; JA-357-JA-358; JA-389:6-10; JA-486:15-JA-487:2; JA-494; JA-500-JA-503; JA-509:2-20; JA-598-JA-599; JA-828:5-13; JA-830:12-16; JA-900-JA-901; JA-946 ¶ 48; JA-1125 ¶ 30; JA-1180 ¶¶ 20-21.

- Bassi was a Phelps employee and Resident in the Program from 2014-2017 pursuant to a series of Residency Agreements between he and Phelps that are governed by New York law.  JA-182:18-20; JA-605-JA-627[1]; JA-1131 ¶ 63; JA-1176 ¶ 1.  Phelps determined Bassi's schedule, assignments and work location, as well as provided Bassi's compensation, benefits, vacation, and professional malpractice insurance. JA-605-JA-627; JA-829:4-15.  The extension or renewal of Bassi's Residency Agreement was at Phelps's sole discretion.  JA-608; JA-620.

---

[1] Both signed and unsigned copies of the Residency Agreements exist in the record. For purposes of this brief, NYMC cites to signed copies.

- NYMC co-sponsored the Program from 2011 through mid-2017, during which time its role was limited to ensuring that Phelps and Open Door complied with accreditation guidelines in administering the Program. JA-251:15-JA-252:8; JA-845:7-20; JA-846:9-11; JA-848:12-22. The Program residents were not NYMC employees or NYMC students. JA-830:4-8; JA-847:12-16. NYMC was not a party to Bassi's Residency Agreements. JA-605-JA-627. NYMC did not employ Bassi, Harkisoon, or the CCC. JA-252:9-22; JA-497:21-23; JA-605-JA-627; JA-822:12-25; JA-824:20-25; JA-830:4-8; JA-830:12-14; JA-854:20-25; JA-1119 ¶¶ 1, 3; JA-1179 ¶ 12; JA-1180-JA-1181 ¶ 21.

- NYMC sponsorship of the Program ceased effective July 1, 2017, and NYMC was not a sponsor of the Program at the time of Bassi's separation therefrom. JA-831:10-24; JA-990; JA-1177 ¶ 3.

- Northwell took over as the Program's sponsor beginning July 1, 2017 and was the sponsor at the time of Bassi's separation. JA-831:10-24; JA-990; JA-1177 ¶ 3.

## II.  BACKGROUND OF THE PROGRAM

The Program was established on March 29, 2011 via a tripartite Affiliation Agreement between Phelps, Open Door, and NYMC. JA-870-JA-884; JA-1176. At all relevant times, NYMC's involvement in the Program was limited to ensuring

LEGAL\65787581\1

that Phelps and Open Door complied with the Accreditation Counsel for Graduate

Medical Education ("ACGME") guidelines in operating the Program. JA-251:15-

JA-252:8; JA-481:4-22; JA-845:7-20; JA-846:9-11; JA-848:12-22. As a practical

matter, this meant NYMC ensured the Program had appeals processes in place to

meet ACGME guidelines and NYMC's Designated Institutional Official, Richard

McCarrick ("McCarrick") would complete site visits and evaluate the Program to

ensure it maintained accreditation. JA-826:2-7; JA-849:12-JA-850:3 JA-1412.

## III. BASSI'S TIME IN THE PROGRAM

### A. Bassi struggled with performance in the Program.

Bassi signed a Residency Contract with Phelps to join the Program in the Fall

of 2014, such that 2014-2015 was considered Bassi's Program Year 1 ("PGY"-1).

JA-605-JA-616; JA-1181-JA-1182 ¶ 26. The contract had a one-year term and was

subject to review and renewal at Phelps's discretion. JA-608.

Bassi struggled from the outset. Bassi's 90-day evaluation and October

2014 summative evaluation, both by Harkisoon, noted various performance

deficiencies, including a lack of medical knowledge, subpar test performance, and

a failure to achieve sufficient patient encounters for his level. JA-632; JA-636; JA-

638; JA-640.

Bassi nevertheless completed PGY-1 and was advanced to PGY-2 pursuant

to a second Residency Agreement with Phelps on or about July 1, 2015. JA-617-

JA-627; JA-1182 ¶ 30.  Like its predecessor, this contract had a one-year term and was subject to review and renewal at Phelps's discretion.  JA-620.

Bassi continued to struggle with performance.  JA-641-JA-644 (August 2015 evaluation indicates medical charting was incomplete and delayed, patient care was below expected level of training, and inability to appropriately gather information and develop management plans).  On September 4, 2015, the CCC placed Bassi on an academic action plan due to ongoing poor performance.  JA-200; JA-902.  The CCC modified the action plan the following month.  JA-645-JA-646; JA-651; JA-902.  On November 13, 2015, Bassi was notified that his advancement to PGY-3 was in jeopardy given his failure to meet expectations and, on December 18, 2015, the CCC continued Bassi's academic action plan until February 2016.  JA-651-JA-653; JA-902.

Unfortunately, Bassi's performance deficiencies persisted.  In an ambulatory care evaluation dated February 4, 2016, Dr. Rebecca Collins gave Bassi failing ratings in two categories and a "fair" rating in numerous others.  JA-669-JA-672.  She noted that Bassi was "not at the level that is expected in his clinical care or that of his peers.  He is struggling with multiple levels of the [patient] encounter. . ." and "concerns remain" with respect to Bassi's medical knowledge and ability to timely complete patient visits.  JA-672.  On or about February 12, 2016 – after Bassi's failure to successfully complete his academic action plan – the CCC placed Bassi on

7

remediation and again informed him that he would not be promoted to PGY-3 if the poor performance continued.  JA-673-JA-674; JA-902.

Despite these warnings, Bassi's performance did not sufficiently improve and, on June 17, 2016, he was placed on probation and held back from promotion to PGY-3.  JA-675-JA-679 (February 29, 2016 evaluation by Dr. Collins stating that Bassi remained unable to collect information necessary for diagnoses or timely complete patient encounters); JA-680-JA-683 (March 1, 2016 evaluation by Dr. Samantha Rai indicating that Bassi lacked medical knowledge and the ability to develop appropriate patient plans); JA-686-JA-689 (March 9, 2016 evaluation by Harkisoon indicating that Bassi's performance deficiencies continue); JA-690-JA-700 (Spring 2016 Summative Evaluation showing Bassi scored well below competence in numerous areas and, among other things, "his lack of medical knowledge is a barrier to effective patient care"); JA-707-JA-708; JA-902.  At that time, Bassi's PGY-2 contract was extended for six months and Bassi was again warned that his failure to achieve core competency would result in non-renewal and termination from the Program effective December 31, 2016.  JA-707-JA-708.

Bassi appealed the June 2016 determination, and his appeal was heard by a committee comprised entirely of Phelps physicians.  JA-835:10-21; JA-837:9-JA-838:2; JA-839:19-JA-841:5; JA-1188 ¶¶ 47-48.  The appeals committee upheld the CCC's decision not to promote Bassi on account of his "demonstrated deficiencies

8

with regards to his PGY2 performance" and "fail[ure] to meet expectations of the PGY2 level of training." JA-710. The appeals committee also recommended that Bassi be permitted to repeat PGY-2 rather than be terminated from the Program. JA-710.

On December 19, 2016, the CCC accepted the appeals committee's recommendation and allowed Bassi to repeat PGY-2, provided, however, that he would be on remediation during that period. JA-711-JA-712; JA-902. Bassi was warned that his failure to fulfill the requirements of remediation would result in termination. JA-711; JA-902.

Bassi continued to struggle in his second PGY-2 term. JA-713-JA-738 (evaluations showing, among other things, persistent lack of medical knowledge and inability to complete timely and appropriate patient encounters). In Bassi's April 2017 Summative Evaluation, the CCC again concluded that his performance was insufficient for advancement to PGY-3. JA-729-JA-738.

The CCC met with Bassi on May 19, 2017 and, on June 2, 2017, Bassi, his advisor, his representative, Harkisoon, and various CCC members attended a pre-termination hearing regarding Bassi's potential dismissal from the Program. JA-739; JA-742. Following the hearing, the CCC's assessment of Bassi's performance was unchanged. JA-742. Consequently, on June 9, 2017, Harkisoon notified Bassi that his Residency Agreement with Phelps would not be renewed and, consequently,

his employment with Phelps would terminate effective June 30, 2017.  JA-742; JA-902-JA-905.

Bassi once again appealed the CCC's decision, and the second appeal was heard by the same panel of Phelps physicians that heard the first.  JA-747; JA-1152 ¶ 131.  Though NYMC was transitioning out of and would no longer be sponsoring the Program, it confirmed that the appeals process continued to meet ACGME standards.  JA-849:12-JA-850:3.  Bassi's second appeal was successful, and the appeals committee recommended that Bassi be allowed to continue his residency but complete his rotations in a different environment "within the larger NYMC … family."  JA-747.  The program re-assignment was beyond the committee's authority, and by that time NYMC's sponsorship of the Program had already ended.  JA-118:20-JA-119:24; JA-831:10-24; JA-990; JA-1177 ¶ 3.  Accordingly,  NYMC reminded the appeals committee that – whatever their decision with regard to Dr. Bassi's reinstatement – it could not involve NYMC or any other program affiliated with NYMC.  JA-748-JA-751.  The appeals committee revised its decision and the Program offered Bassi conditional reinstatement, but he found the terms of the Program's offer to be unacceptable and voluntarily left the Program instead.  JA-757-JA-758; JA-947 ¶ 51; JA-1157 ¶ 146.

There is no dispute that the record evidence shows *all* of the aforementioned actions were taken by Program Director Harkisoon, Phelps, or the CCC – not

NYMC. *See also* JA-806:8-13 (Bassi concedes in deposition that the decisions not to promote him and, ultimately, to terminate him from the Program, were made by the CCC); JA-490:16-24 (NYMC's Designated Institutional Official for the Program was never even present during the CCC's discussions regarding Bassi).

**B.  In the middle of his performance struggles, Bassi complained to Phelps and Open Door, but not NYMC, about comments related to his patka.**

Bassi is South Asian/Punjabi and practices Sikhism, which requires that he wear a head covering outside the home.  JA-60 ¶ 119; JA-788:21-23; JA-789:5-6; JA-1189 ¶¶ 51-52.  This might include a formal turban or a less formal patka, both of which Bassi wore during his time in the Program.  JA 433:15-JA-434:7 JA-789:4-12; JA-1131 ¶¶ 60-61; JA-1189 ¶ 53.

On or about January 21, 2016, during Bassi's first PGY-2 and nearly five months after Bassi was first placed on an academic action plan, resident Dr. Tom Chattahil ("Chattahil") told Bassi that certain Core Faculty opined he (Bassi) should not wear the patka head covering alone (without turban) because it appeared unprofessional.   JA-789:21-JA-790:9;  JA-1189-JA-190 ¶¶ 55-56;  JA-1241 ¶ 13. Bassi and Chattahil then brought the comment to the attention of another resident, Dr. Molly Kilpatrick ("Kilpatrick").  JA-794:24-JA-796:23.  As Program residents, Chattahil and Kilpatrick were employed by Phelps.  JA-830:4-8.  The Core Faculty were employed by Open Door.  JA-252:9-22; JA-497:21-23; JA-830:12-14.  NYMC

11

had no involvement whatsoever in this exchange. JA-790:10-12 (no one from NYMC present for Bassi and Chattahil's conversation regarding Core Faculty); JA-795:21-22 (only Chattahil present for conversation between Bassi and Kilpatrick).

For his part, Bassi did not understand Chattahil's comment to mean that he (Bassi) was discouraged from wearing a Sikh head covering – but that he (Bassi) was encouraged to wear the more formal turban as opposed to the patka. JA-794:13-22; JA-1190 ¶ 58.

Bassi reported Chattahil's comment to the Human Resources ("HR") Departments at Phelps and Open Door. JA-796:24-JA-797:10. He did not report the patka comment to NYMC. *See* JA-796:24-JA-797:10.

Following Bassi's reports to Phelps and Open Door, a meeting was held at Phelps with Bassi, an HR representative from Phelps, an HR representative from Open Door, Chattahil, the Program's Chief Resident (another Phelps employee), and Harkisoon. JA-798:3-JA-799:17; JA-1191 ¶¶ 61-62; *see also* JA-182:10-16. NYMC was not involved in this meeting. *See* JA-798:3-JA-799:17; JA-1191 ¶¶ 61-62.

At the meeting, Harkisoon apologized for the patka comment and made clear that Bassi was free to wear whatever head covering he so desired. JA-293:2-10; JA-297:5-12. Bassi concedes that there is nothing any of the appellee-defendants should have done differently in response to his complaints, and there were no further

12

comments regarding Bassi's patka or turban at any time after the meeting. JA-175:13-22; JA-431:19-22; JA-432:3-6; JA-432:24-25.

There is no dispute the record evidence shows that NYMC was not involved in, or privy to, the goings on related to the patka comments or Bassi's resulting complaint.

## IV. PROCEDURAL POSTURE

Bassi filed the operative complaint in this case on February 19, 2021, alleging six claims against NYMC:[2] (1) discrimination on the basis of race or religion as a proxy for race under Section 1981; (2) religious discrimination and retaliation under the New York State Human Rights Law ("NYSHRL"); (3) religious discrimination under Title VII; (4) retaliation under Title VII; (5) breach of contract; and (6) tortious interference with contract. JA-41-JA-68.

On June 2, 2022, Bassi moved for partial summary judgment with respect to his contract claim only and the defendant-appellees moved for summary judgment on all claims. The United States District Court for the Southern District of New York granted defendant appellees' respective motions for summary judgment and denied Bassi's motion for partial summary judgment on March 2, 2023. JA-1539-JA-1573. This appeal followed. JA-1574.

---

[2] Bassi alleged two claims against Harkisoon alone, which are not addressed here.

## SUMMARY OF ARGUMENT

The District Court correctly held that each and every one of Bassi's claims against NYMC fail as a matter of law.

At this stage, Bassi has abandoned or waived most of his arguments against NYMC by failing to preserve them below or failing to raise them on appeal. Specifically, NYMC's arguments that Bassi fails to prove a *prima facie* case of discrimination or retaliation against NYMC, that Bassi fails to prove that NYMC is his employer, that Bassi fails to prove NYMC is a party to the contracts at issue, and that Bassi fails to prove a claim of tortious interference are all unopposed. *See* Sections VI.A, VII.B, and VIII.A below. This alone is fatal to Bassi's claims and sufficient to affirm judgment against NYMC.

What's more, even if Bassi had not abandoned or waived his arguments against NYMC, his opening Brief on appeal ("Brief") and the undisputed record evidence before this Court make clear that each of his claims against NYMC fail as a matter of law on the merits.

### *None of Bassi's Evidence Relates to NYMC*

The only argument Bassi *does* raise on appeal is that the District Court improperly discounted certain evidence in his favor. Even if this were the case, the evidence he cites has absolutely nothing to do with NYMC, and Bassi's own brief proves the point.

In his Brief, Bassi dedicates roughly 16 pages to his version of the facts. Brief pp. 2-17. Therein, he references NYMC only a handful of times, and the totality of the allegations pertaining to NYMC are as follows:

- NYMC established the Program with Phelps and Open Door. Brief p. 2.[3]

- Northwell assumed NYMC's duties with respect to the Program in 2017. Brief p. 2.

- Sometime at the beginning of the 2015-2016 academic year, Bassi and others approached McCarrick intending to call to his attention their dissatisfaction with the way the Program was run, but refrained from sharing any information with him once they realized he could not promise anonymity. Brief p. 5.

- At some point, McCarrick became aware that the Program was videotaping certain of Bassi's interactions, which it did for all residents, intending to

---

[3] Bassi takes the liberty of stating that NYMC "operated" the Program along with Phelps and Open Door, but the evidence to which he cites (JA-935-JA-936) states only that NYMC "established" the Program with Phelps and Open Door. JA-935 ¶ 3.

use the tapes to ensure that any reports of alleged performance deficiencies could be corroborated.  Brief p. 10.[4]

- NYMC's counsel informed the appeals committee that it could not place Bassi into another NYMC program after NYMC's sponsorship of the Program had ended.  Brief pp. 12-13.

Even if true, these facts would not give rise to any actionable claim against NYMC, and every other action at issue in this case is alleged to be by someone other than NYMC.  Brief pp. 2-17; *see also* Brief pp. 22-48 (arguing that the Court improperly discounted evidence relating to *Harkisoon,* the *Core Faculty* and the *CCC* – not NYMC).

## *Bassi's Section 1981, NYSHRL, Title VII Claims Fail as a Matter of Law Because He Fails to Prove a Prima Facie Case*

Bassi's Section 1981, NYSHRL, and Title VII claims against NYMC fail as a matter of law because each requires an employment relationship.  Here, the record evidence establishes that Phelps – who paid Bassi, provided Bassi's benefits,

---

[4] Again, Bassi takes liberties with the record insofar as his Brief states that McCarrick testified the videos would be used to obtain a "consensus" on Bassi's poor performance.  Brief p. 10.  In reality, the cited testimony says no such thing.  It states that videotaping is a normal part of family residency, and that, with respect to Bassi, the Program intended to use the recordings to ensure that if an individual supervisor reported deficiencies in Bassi's performance, such report could be validated as opposed to blindly accepted.  JA-1452-JA-1453.

16

supervised Bassi, and managed Bassi's assignments – was Bassi's employer. There is simply nothing to suggest NYMC employed Bassi.

Moreover, even if NYMC were Bassi's employer for purposes of these claims, the lack of evidence against NYMC on the whole means that Bassi cannot prove that NYMC took any action against him – let alone an adverse action or an action under circumstances giving rise to an inference of discrimination or retaliation.

*Bassi's Breach of Contract Claim Fails Because NYMC is Not Party to the Contract at Issue and Bassi Cannot Prove Breach or Damages*

Bassi's contract claim against NYMC fails as a matter of law because there is no dispute NYMC was not a party to the Residency Agreements he seeks to enforce, and he has wholly failed to establish that he was entitled to any promise or benefit that was breached and resulted in cognizable damages.

*Bassi Made No Argument on His Tortious Interference Claim*

Bassi provided no argument at all on tortious interference in his papers on summary judgment below or in his opening Brief on appeal, which leaves NYMC to reassert what it argued at summary judgment below – namely, that the record is devoid of any evidence that would support such a claim.

## <u>ARGUMENT</u>

## V.    STANDARD OF REVIEW

This Court reviews the grant of summary judgment *de novo*.  *Ruiz v. Cnty. of Rockland*, 609 F.3d 489, 491 (2d Cir. 2010).  Summary judgment is appropriate where the record shows "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *Ruiz*, 609 F.3d at 491; Fed. R. Civ. P. 56(a).

Critically, however, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Burlington Coat Factory Warehouse Corp. v. Espirit De Corp.*, 769 F.2d 919, 923 (2d Cir. 1985) ("disputes over irrelevant facts must not be allowed to obscure the lack of a material dispute").  "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion."  *Parsons v. JPMorgan Chase Bank, N.A.*, 2018 WL 4861379, at *4 (E.D.N.Y. Sept. 30, 2018 (quoting *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016)).  Conclusory statements, speculation, and conjecture are insufficient to defeat summary judgment.  *E.g., Beards v. Bronxcare Health Sys.*,

18

2021 WL 704177, at *8 (S.D.N.Y. Feb. 23, 2021); *Abdu-Brisson v. Delta Air Lines Inc.*, 239 F.3d 456, 466 (2d Cir. 2001), *cert. denied*, 534 U.S. 993 (2001); *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999), *cert. denied*, 530 U.S. 1242 (2000); *McLee v. Chysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *Meloff v. New York Life Ins. Co.*, 51 F.3d 3725 (2d Cir. 1995); *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000); *SEC v. Grossman*, 887 F. Supp. 649, 656 (S.D.N.Y. 1995).

## VI. SUMMARY JUDGMENT FOR NYMC ON BASSI'S DISCRIMINATION AND RETALIATION CLAIMS SHOULD BE AFFIRMED.

NYMC's judgment on Bassi's discrimination and retaliation claims under Title VII, Section 1981, and the NYSHRL should be affirmed because Bassi has waived all arguments to the contrary by failing to properly address them in his papers below or on appeal. Assuming *arguendo* that Bassi had not waived his arguments, the judgment should nevertheless be affirmed because the evidence Bassi uses as the basis for his appeal has nothing to do with NYMC, NYMC was not Bassi's employer, and Bassi's discrimination and retaliation claims fail necessary elements as a matter of law.

A. **Judgment for NYMC on Bassi's discrimination and retaliation claims should be affirmed because Bassi abandoned or waived his arguments to the contrary.**

There are multiple ways a plaintiff-appellee might abandon or waive an argument, three of which are relevant here.

First, he abandons an argument if he fails to raise it in his opposition to a motion for summary judgment before the summary judgment is decided. *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 110 (S.D.N.Y. 2022) (citing *Robinson v. Am. Int'l Grp., Inc.*, 2009 WL 3154312, at *4 & n. 65 (S.D.N.Y. Sept. 30, 2009, *aff'd* 396 Fed. App'x 781 (2d Cir. 2010).

Next, he waives an argument if he fails to raise it during the summary judgment proceedings before the District Court and attempts to raise it for the first time on appeal. *Joseph v. Ocwen Fin. Corp.*, 2023 WL 3635077, at *1 n. 1 (2d Cir. May 25, 2023) (citing *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994) and *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 124 n. 29 (2d Cir. 2005)).

Finally, he waives an argument if he fails to address it in his opening brief on appeal. "Arguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court or raise[s] them in a reply brief." *In re Platinum & Palladium Antitrust Litigation*, 61 F.4th 242, 276 (2d Cir. 2023) (quotations omitted); *see also Syntel Sterling Best Shores Mauritius Ltd. v. The Trizetto Grp., Inc.*, 68 F.4th 792, 814 n. 44 (2d Cir. 2023) (issue not preserved

20

when raised only in footnote in opening brief); *U.S. v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013); *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012); *Shah v. Wilco Sys., Inc.*, 76 Fed. App'x 383, 384 (2d Cir. 2003).

> 1.  *Bassi abandoned below any argument that NYMC was responsible for the conduct complained of and, consequently, any argument that he could prove a prima facie case of discrimination or retaliation against NYMC.*

In its brief in support of its motion for summary judgment below, NYMC argued, among other things, that Bassi's Title VII, Section 1981, and NYSHRL claims against it must fail because the undisputed record evidence showed it was not involved in the allegedly discriminatory or retaliatory conduct complained of.  In other words, NYMC argued that Bassi failed as a matter of law to prove the elements required for a discrimination or retaliation claim against NYMC.  Brief in Support of the Motion for Summary Judgment Filed by New York Medical College (ECF 108) pp. 18-22.

Bassi failed to address NYMC's arguments in this regard in his opposing memorandum at the District Court.[5]  Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment (ECF 132) pp. 37-39.  Bassi therefore

---

[5] Bassi does not make any legitimate argument that NYMC is responsible for the conduct complained of in his appellate Brief either, but that is addressed in detail at Section VI.B below.

21

abandoned the substance of his discrimination and retaliation claims against NYMC during the summary judgment proceedings below, and judgment for NYMC should be affirmed.

        2.    *Bassi waived on appeal any argument that NYMC was his employer.*

An employer-employee relationship is a necessary element for discrimination and retaliation claims under Section 1981, Title VII, and the NYSHRL, and an indirect employer cannot be liable for conduct about which it was unaware. Sections VI.C, below.

During the summary judgment proceedings at the District Court, NYMC strenuously argued that it was not Bassi's employer and Bassi argued to the contrary. Brief in Support of the Motion for Summary Judgment Filed by New York Medical College (ECF 108) pp. 13-18; Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment (ECF 132) pp. 37-39.

On appeal, however, Bassi wholly failed to address the matter in his opening Brief. He has therefore waived on appeal any argument that NYMC was his employer, and the judgment for NYMC should be affirmed.

**B.** **Even if Bassi had not abandoned his arguments against NYMC with respect to his discrimination and retaliation claims, judgment for NYMC should be affirmed on these claims because none of Bassi's evidence on appeal has anything to do with NYMC.**

Even if Bassi had not abandoned the substance of his argument against NYMC during the summary judgment proceedings below, NYMC's judgment should be affirmed because none of the evidence Bassi relies on for his appeal has anything to do with NYMC.

Bassi's *only* argument on appeal for his discrimination and retaliation claims is that the District Court improperly discounted certain evidence. Specifically, Bassi argues that the District Court's decision to dismiss his discrimination and retaliation claims was improper for three reasons: (1) the District Court allegedly disregarded direct evidence of discrimination; (2) the District Court allegedly disregarded evidence of pretext; and (3) the District Court allegedly disregarded both direct and indirect evidence of retaliation. NYMC does not agree that the District Court improperly discounted any competent evidence from Bassi – but even if it had, the evidence Bassi cites as the grounds for his appeal has nothing to do with NYMC.

1.    *Bassi's so-called direct evidence of discrimination has nothing to do with NYMC.*

In Point I of his Brief, Bassi contends that the District Court improperly disregarded two specific items of direct evidence from which a factfinder could infer discrimination – namely, testimony regarding comments about Bassi's patka and

23

declarations regarding "differential treatment" of Bassi. This evidence cannot defeat NYMC's summary judgment because the record conclusively establishes, and Bassi's own Brief concedes, that NYMC was not involved in the patka comment or the purportedly "differential treatment." Brief pp. 22-24.

On the former, Bassi claims he presented evidence that the *Core Faculty* (as relayed by Chattahil) and *Harkisoon* commented on his patka. Brief pp. 22-24. Even if this were true, it does not involve NYMC. The Core Faculty were employed by Open Door, not NYMC. JA-497:21-23; JA-830:12-14. Harkisoon and Chattahil were employed by Phelps, not NYMC. JA-822:12-25; JA-824:20-25; JA-830:4-8; JA-854:20-25; JA-1119 ¶¶ 1, 3; JA-1179 ¶ 12. Bassi offers no argument or evidence to connect NYMC to the purported comments, and the undisputed record evidence shows that NYMC did not make the comments, was not present for the conversations regarding the comments, and was not privy to the complaint[6] or resulting meeting regarding the comments. JA-790:10-12; JA-795:21-22; JA-796:24-JA-797:10; JA-798:3-JA-799:17; JA-1191 ¶¶ 61-62; *see also* JA-182:10-16.

---

[6] To the extent Bassi's Brief can be read to imply that NYMC became aware of the patka-comment complaint by way of the conversation Bassi and his colleagues attempted to have with McCarrick, the record does not support the implication. First, the record shows that the meeting with McCarrick was, at the latest, at the beginning of the 2015-2016 academic year (JA-1487, JA-1493, JA-1503), which would have been prior to Bassi's January 2016 complaint. Second, the record shows that no information was actually shared with McCarrick in any event. JA-1487; JA-1493; JA-1503.

On the latter, Bassi claims he presented evidence of differential treatment in the form of declarations[7] from three former Program residents, Dr. Heidi Mandry ("Mandry"), Dr. Edwin Roberts ("Roberts"), and Dr. Jessica Zaks ("Zaks"). Brief pp. 25-26. Again, this evidence has nothing to do with NYMC, and Bassi's own Brief makes the point. In his Brief, he alleges this evidence shows the *Core Faculty* "questioned Bassi more aggressively than other residents," the *Core Faculty* "tried to 'stump' or 'grill' Bassi," the *Core Faculty* prohibited Bassi from looking up information available to other residents, the *Core Faculty* held Bassi to a medical notes deadline despite "admit[ing] they did not know if Bassi turned in his notes later than the other residents," and the *Core Faculty*[8] required Bassi to complete "learning modules" that it did not require of other residents. Brief pp. 25-26.

The declarations themselves further establish that NYMC was not involved in the purportedly differential treatment.

---

[7] The declarations upon which Bassi relies are not "direct evidence" at all. They are largely opinion statements by former colleagues saying no more than they feel Bassi's day-to-day supervision was harsh. JA-1492-JA-1506. The deficiencies of this evidence are discussed more fully at Section VI.D below. Here, NYMC addresses the declarations in the context that Bassi presented them to demonstrate that – even in his arguments about purportedly direct evidence – he concedes it was not NYMC that was responsible.

[8] In his Brief, Bassi attributes this action to "the program" but the evidence to which he cites speaks only of the Core Faculty. Brief p. 26 (citing JA-1497-JA-1498).

The Mandry declaration attributes the purportedly differential treatment to the *Core Faculty*. JA-1492 ¶ 3 ("Core Faculty treated Dr. Bassi differently than the other residents"); JA-1493 ¶ 4 ("Core Faculty would demand that [Bassi] ask the patients about a broader variety of health conditions not related to their visit").

The Roberts declaration attributes the purportedly differential treatment to the *Core Faculty*. JA-1496 ¶ 5 ("Core Faculty treated Dr. Bassi differently than the other residents in the program" … . "Core Faculty were significantly more scrutinous of his work, and questioned him much more aggressively than other residents"), ¶ 6 (comparing when "Core Faculty precepted other residents" with "when the Core Faculty precepted Dr. Bassi"), ¶ 7 (comparing how "Core Faculty would normally ask" questions of Dr. Bassi and other residents); JA-1497 ¶ 8 ("Core Faculty would ask Dr. Bassi questions" and "expect Dr. Bassi to ask" questions unrelated to the purpose of the patient's visit), ¶ 9 ("Core Faculty also expected Dr. Bassi to answer questions about diagnoses or treatments from memory"), ¶ 11 ("Core Faculty demanded that [Bassi] complete various assignments"); JA-1498 ¶ 11 ("Core Faculty demanded that Dr. Bassi complete each module in its entirety"); JA-1499 ¶ 15 ("Dr. Bassi was treated differently by the Core Faculty").

The Zaks declaration attributes the purportedly differential treatment to the *Core Faculty*. JA-1501 ¶ 5 ("Core Faculty took a noticeable and unnecessarily harsh approach"), ¶ 6 ("Core Faculty, who worked under the supervision of Dr. Harkisoon,

26

almost always required him to answer questions or propose a plan of care from memory," "Core faculty would aggressively question Dr. Bassi"); JA-1502 ¶ 7 ("core faculty members" relaxed notes requirements for other residents); JA-1503 ¶ 11 ("Core Faculty treated Dr. Bassi differently than the other residents … . "Core Faculty had treated him more harshly").

Whatever the day-to-day interactions between Bassi, other residents, and the Core Faculty may have been – there is absolutely no dispute that they did not involve NYMC. Bassi and the "other residents" were employed by Phelps, not NYMC. JA-830:4-8. The Core Faculty were employed by Open Door, not NYMC. JA-252:9-22; JA-497:21-23; JA-830:12-14.

Bassi also claims that the decision to award, or not award, him credit for certain procedures during his time in the Program constituted evidence of discrimination that was disregarded by the District Court. Brief p. 26. Again, this is unrelated to NYMC, as the undisputed record evidence shows, the decisions regarding Bassi's credit were made by Harkisoon and the CCC, not NYMC. JA-320-JA-323; JA-357-JA-358; JA-486:15-JA-487:2; JA-509:2-20.

Because none of the so-called "direct" evidence that serves as the basis for Bassi's appeal has anything to do with NYMC, judgment for NYMC should be affirmed.

27

2.    *Bassi's purported evidence of pretext is unrelated to NYMC.*

The gist of Bassi's argument on pretext is that the District Court disregarded evidence showing that Harkisoon, the Core Faculty, and the CCC's assessments and decisions with regard to his performance were incorrect.  Brief pp. 26-43.  This too is unrelated to NYMC because NYMC did not make any assessments of, or decisions about, Bassi's performance in the first instance.  JA-200; JA-247:8-13; JA-320-JA-323; JA-331:7-14; JA-334:15-24; JA-351:4-17; JA-353:13-JA-354:10; JA-357-JA-358; JA-389:6-10; JA-486:15-JA-487:2; JA-494; JA-500-JA-503; JA-509:2-20; JA-598-JA-599;  JA-632;  JA-635-JA-646;  JA-651-JA-653;  JA-669-JA-683;  JA-686-JA-700;  JA-707-JA-708;  JA-710-JA-738;  JA-742;  JA-747;  JA-757-JA-758;  JA-828:5-13; JA-830:12-16; JA-835:10-21; JA-837:9-JA-838:2; JA-839:19-JA-841:5; JA-900-JA-905; JA-946 ¶ 48; JA-974 ¶ 51; JA-1125 ¶ 30; JA-1152 ¶ 131; JA-1157 ¶ 146; JA-1180-JA-1181 ¶¶ 20-21; JA-1188 ¶¶ 47-48.  Bassi himself acknowledges as much when he states: "The record submitted by the Appellees consists almost entirely of testimony by *Harkisoon* and the *Core Faculty Members* who constituted the *CCC*, or the evaluations they prepared.  *These are the individuals whose decision making is at issue in this case.*"  Brief p. 41 (emphasis added).

NYMC did not employ Harkisoon, the Core Faculty, or the CCC.  JA-252:9-22; JA-497:21-23; JA-822:12-25; JA-824:20-25; JA-830:4-8; JA-830:12-14; JA-854:20-25; JA-1119 ¶¶ 1, 3; JA-1179 ¶ 12.  NYMC did not supervise or evaluate

28

Bassi. JA-183:3-6; JA-252:9-22; JA-497:21-23; JA-628-JA-644; JA-669-JA-672; JA-675-JA-683; JA-686-JA700; JA-713-JA-738; JA-830:12-14; JA-832:20-JA-833:11; JA-859:4-19; JA-1181 ¶ 22; JA-1122 ¶ 15. Bassi was not an NYMC student. JA-847:12-16. NYMC no longer sponsored the Program at the time of Bassi's separation. JA-831:10-24; JA-990; JA-1177 ¶ 3.

Because none of the purported evidence of pretext that serves as the basis for Bassi's appeal has anything to do with NYMC, the judgment for NYMC should be affirmed.

### 3. *Bassi's purported evidence of retaliation is unrelated to NYMC.*

Much like his pretext argument, the gist of Bassi's argument on retaliation is that the District Court disregarded evidence showing Harkisoon, the Core Faculty, and the CCC's assessments and decisions with regard to his performance were retaliatory. Brief pp. 43-48 ("the *CCC* confirmed their knowledge of the complaint," the "*Core Faculty* and *CCC* were well aware of Bassi's complaint," "both residents and faculty were afraid to raise any complaints for fear of retribution from *Harkisoon*," "*Harkisoon* and those under her retaliated") (emphasis added). Again, this is unrelated to NYMC because NYMC did not make any assessments of, or decisions about, Bassi's performance in the first instance. JA-200; JA-247:8-13; JA-320-JA-323; JA-331:7-14; JA-334:15-24; JA-351:4-17; JA-353:13-JA-354:10; JA-357-JA-358; JA-389:6-10; JA-486:15-JA-487:2; JA-494; JA-500-JA-503; JA-

509:2-20; JA-598-JA-599; JA-632; JA-635-JA-646; JA-651-JA-653; JA-669-JA-683; JA-686-JA-700; JA-707-JA-708; JA-710-JA-738; JA-742; JA-747; JA-757-JA-758; JA-828:5-13; JA-830:12-16; JA-835:10-21; JA-837:9-JA-838:2; JA-839:19-JA-841:5; JA-900-JA-905; JA-946 ¶ 48; JA-974 ¶ 51; JA-1125 ¶ 30; JA-1152 ¶ 131; JA-1157 ¶ 146; JA-1180-JA-1181 ¶¶ 20-21; JA-1188 ¶¶ 47-48.

Because none of the purported evidence of retaliation that serves as the basis for Bassi's appeal has anything to do with NYMC, the judgment for NYMC should be affirmed.

**C.    Even if Bassi had not waived the opportunity to argue that NYMC was his employer, judgment for NYMC should be affirmed on these claims because the undisputed record evidence proves NYMC was not Bassi's employer.**

Even if Bassi had not waived his chance to argue an employment relationship with NYMC on appeal, and even if Bassi could point to evidence linking NYMC to the conduct complained of, Bassi's discrimination and retaliation claims against NYMC would fail as a matter of law because the undisputed record evidence shows NYMC was not his employer.

An employer-employee relationship is a necessary element for discrimination and retaliation claims under Section 1981, Title VII, and the NYSHRL. *E.g.,* 42 U.S.C. § 2000e-2(a) ("[i]t shall be an unlawful employment practice *for an employer* to … discriminate against any individual … ") (emphasis added); 42 U.S.C. § 2000e-3(a) (unlawful for an *employer* to retaliate against employee for protected activity);

30

*Nelson v. Argyropoulous*, Case No. 1:18-cv-11413 (AT) (SDA), 2021 WL 4927059, at *5-8 (S.D.N.Y. Mar. 18, 2021) (collecting cases and dismissing Title VII, Section 1981 and NYSHRL claims due in relevant part to lack of employment relationship), *report and recommendation adopted* 2021 WL 4352326 (S.D.N.Y. Sept. 24, 2021); *Ayyaz v. City of N.Y.*, Case No. 19-CV-01412-LTS-SN, 2021 WL 1225684, at *7 (S.D.N.Y. Mar. 31, 2021) (Title VII standards apply to NYSHRL); *Mira v. Kingston*, 715 Fed. App'x 28, 30 (2d Cir. 2017) ("Section 1981 protects against racial discrimination in employment relationships, and most of the substantive Title VII standards apply to Section 1981 claims"); *Shiflett v. Scores Holding Co., Inc.*, 601 Fed. App'x 28 (2d Cir. 2015) (affirming summary judgment for defendant on Title VII and NYSHRL discrimination and retaliation claims in relevant part due to lack of employment relationship); *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006) ("[T]he existence of an employer-employee relationship is a primary element of Title VII claims."). A direct employment relationship is one method of meeting this element, but is not required so long as the plaintiff can alternately prove a single employer or joint employer relationship. *Nelson*, 2021 WL 4927059, at *5. Here, Bassi cannot prove employment by NYMC under any theory.

1.    *NYMC was not Bassi's direct employer under Section 1981, Title VII or the NYSHRL.*

a)    <u>There was no requisite hiring by NYMC.</u>

"To determine whether an individual is an employee [under the direct employment theory], courts first consider whether an individual … has been hired in the first instance and, if that prerequisite is met, then apply the common law of agency." *Nelson*, 2021 WL 4927059, at *6 (quotations omitted) (citing *Salamon v. Our Lady of Victory Hosp.,* 514 F.3d 217, 226 (2d Cir. 2008)), *report and recommendation adopted by* 2021 WL 4352326 (S.D.N.Y. Sept. 24, 2021); *O'Connor v. Davis*, 126 F.3d 112, 115-16 (2d Cir. 1997).  To determine whether the threshold "hiring" has occurred, "courts look primarily to whether a plaintiff has received direct or indirect remuneration from the alleged employer." *Nelson*, 2021 WL 4927059, at *6 (quotations omitted) (citing *Gulino*, 460 F.3d at 372); *O'Connor*, 126 F.3d at 115-16; *Ayyaz*, 2021 WL 1225684, at *5-6 (citing, *inter alia*, *York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 126 (2d Cir. 2002)); *Glaser v. Upright Citizens Brigade, LLC*, 377 F. Supp. 3d 387, 395-98 (S.D.N.Y. 2019) (collecting cases).  "Where no financial benefit is obtained by the purported employee from the employer, no plausible employment relationship of any sort can be said to exist." *Nelson*, 2021 WL 4927059, at *6 (citing *Gulino*, 460 F.3d at 372); *O'Connor*, 126 F.3d at 115-16; *Ayyaz*, 2021 WL 1225684, at *5-6; *York*, 286 F.3d

at 125-27 (affirming dismissal of Title VII and NSYHRL claims); *Glaser*, 377 F. Supp. 3d at 395-98.

In *O'Connor*, among other cases, this Court held the "preliminary question of remuneration is dispositive" and there can be no employment relationship where the record shows an alleged employer provided the plaintiff with "no salary or other wages, and no employee benefits such as a health insurance, vacation, or sick pay" or promises thereof. *O'Connor*, 126 F.3d at 116 (affirming summary judgment for defendant).

Here, the undisputed record evidence shows that Bassi's wages and benefits – including medical benefits, vacation, and professional malpractice insurance – were provided by Phelps, not NYMC. JA-605-JA-627. Phelps alone had the discretion to extend or renew Bassi's Residency Agreement(s). JA-608; JA-620. There is nothing in the record to suggest that NYMC provided or promised to provide Bassi with remuneration, and this ends the direct employment analysis.

> b) <u>There was no agency-based employer relationship between Bassi and NYMC.</u>

Assuming *arguendo* that there was some evidence to suggest NYMC "hired" Bassi – which there is not – the next step of the analysis would still come up short of establishing an employment relationship. In cases where "the prerequisite hiring has been shown," the analysis then turns to a "fact-specific analysis of thirteen

factors" under the common law of agency. *Nelson*, 2021 WL 4927059, at \*6. Those

factors are:

> [1] the hiring party's right to control the manner and means by which
> the product is accomplished [;] … [2] the skill required; [3] the source
> of the instrumentalities and tools; [4] the location of the work; [5] the
> duration of the relationship between the parties; [6] whether the hiring
> party has the right to assign additional projects to the hired party; [7]
> the extent of the hired party's discretion over when and how long to
> work; [8] the method of payment; [9] the hired party's role in hiring
> and paying assistants; [10] whether the work is part of the regular
> business of the hiring party; [11] whether the hiring party is in business;
> [12] the provision of employee benefits; and [13] the tax treatment of
> the hired party.

*Nelson*, 2021 WL 4927059, at \*6; *Shehab v. N.Y. State Dep't of Transp.*, 251 Fed.

App'x 9, 10 (2d Cir. 2007) (quoting *Community for Creative Non-Violence v. Reid*,

490 U.S. 730, 751-52 (1989) in affirming summary judgment for defendant).

In this case, there is absolutely nothing in the record to suggest that NYMC

had any control whatsoever over Bassi's day-to-day residency work or the ability to

assign Bassi additional projects. To the contrary, Phelps determined Bassi's

schedule, assignments, and work location. JA-605-JA-627; *see also* JA-123:11-19

(NYMC's McCarrick not so much as aware of what rotations Bassi was assigned

to). There is absolutely nothing in the record to suggest that NYMC provided Bassi

with any instrumentalities or tools. To the contrary, Phelps provided the Program's

supplies and learning materials. JA-829:8-15. There is no evidence that Bassi

worked at an NYMC location. To the contrary, Bassi worked at Phelps for his

rotations and at Open Door for his clinic. JA-1121 ¶ 14; JA-936 ¶¶ 6-7; JA-1195 ¶¶ 3, 5, 9. Finally, there is nothing to suggest that NYMC had any direct relationship with Bassi, or provided Bassi with pay or benefits. To the contrary, Bassi was employed pursuant to a series of Residency Agreements between he and Phelps, not NYMC. JA-605-JA-627. Under those Residency Agreements, Bassi was required to assign all billings and collections for his services to Phelps, not NYMC, and Phelps alone had the discretion to extend or renew the term. JA-607-JA-608; JA-619-JA-620. Phelps, not NYMC, provided Bassi's compensation and benefits. JA-605-JA-627. Consequently, Bassi cannot meet either prong of the direct employment test with respect to NYMC.

2. *NYMC was not a single or joint employer under Section 1981, Title VII or the NYSHRL.*

Where a direct employment relationship is lacking, the plaintiff may prove an indirect employment relationship using either a single- or joint-employer theory. *Shiflett v. Scores Holding Co.*, 601 Fed. App'x 28, 29 (2d Cir. 2015) (summary order); *Nelson*, 2021 WL 4927059, at *5-8, *report and recommendation adopted at* 2021 WL 4352326 (S.D.N.Y. Sept. 24, 2021). These theories of liability are not to be used lightly, however, because "a corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances." *Shiflett*, 601 Fed. App'x at 29. Conclusory allegations are insufficient. *Toledo v. Brend Restoration,*

*LLC*, Case No. 21 Civ. 882 (GBD) (SN), 2023 WL 3381249, at *3 (S.D.N.Y. May

11, 2023).

This Court succinctly explained the single- and joint-employer analyses as

follows:

> Under the single employer doctrine, separate corporations under
> common ownership and management … can be deemed to constitute a
> single enterprise.  This Circuit examines four factors in order to assess
> whether two nominally distinct entities are actually a single employer:
> (1) interrelation of operations, (2) centralized control of labor relations,
> (3) common management, and (4) common ownership or financial
> control.  Although no one factor is determinative, control of labor
> relations is the central concern.
>
> Under the joint employer doctrine, an entity other than an employee's
> formal employer can be held liable not because it is party of a single
> integrated enterprise, but rather because the two entities handle certain
> aspects of their employer-employee relationship jointly.  Under the
> joint employer doctrine, a court may conclude that the employee is …
> constructively employed by the defendant.  While [this Circuit] has not
> yet fully … described a test for what constitutes joint employment in
> the context of Title VII, factors courts have used to examine whether
> an entity constitutes a joint employer of an individual include
> commonality of hiring, firing, discipline, pay, insurance, records, and
> supervision.

*Shiflett*, 601 Fed. App'x at 30 (internal quotations and citations omitted); *Arculeo v.*

*On-Site Sales & Marketing, LLC*, 425 F.3d 193, 198-99 (2d Cir. 2005); *see also Vitti*

*v. Macy's Inc.*, 758 Fed. App'x 153, 156 (2d Cir. 2018) (summary order) (affirming

summary judgment for defendant on ADA claim due to lack of employment

relationship where there was no evidence defendant had "close managerial control"

of plaintiff).  The single-employer doctrine has been applied to situations involving

36

related entities, such as parent-and-subsidiary relationships. The joint-employer doctrine has been applied to situations where multiple entities mutually benefit from the work, such as contractors and subcontractors or staffing agencies and their clients. *Lima v. Addeco*, 634 F. Supp. 2d 394, 399-401 (S.D.N.Y. 2009), *aff'd* 375 Fed. App'x 54 (2d Cir. 2010).

Here again, Bassi fails to establish an employment relationship with NYMC under either theory. With regard to the single-employer theory, there is nothing in the record to suggest that Bassi's employer, Phelps, shared its operations, labor relations, management, ownership, or finances with NYMC. To the contrary, the Affiliation Agreement indisputably shows Phelps and NYMC to be independent entities that engaged in arms' length transactions with regard to the Program. JA-870-JA-884. The fact that Bassi complained about the patka comment to Phelps but not NYMC indisputably shows the entities maintained separate HR functions throughout the Program. *See* JA-796:24-JA-797:10. The fact that NYMC had exited the Program by the time of Bassi's separation indisputably shows that the entities were not intertwined. *See* JA-831:10-24; JA-990; JA-1177 ¶ 3.

As to the joint-employer theory, there is nothing in the record to establish that Phelps and NYMC "handle their employer-employee relationship[s] jointly." Bassi was hired and employed by Phelps pursuant to a series of Residency Agreements with Phelps, not NYMC, and Phelps alone had the authority to extend or renew those

Agreements. JA-605-JA-627. Phelps, not NYMC, provided Bassi's pay and fringe benefits. JA-605-JA-627; JA-829:4-15. Phelps, not NYMC, received and processed Bassi's HR complaint. JA-796:24-JA-797:10; JA-798:3-JA-799:17; JA-1191 ¶¶ 61-62; *see also* JA-182:10-16. NYMC was not involved in Bassi's supervision or evaluation, or the decisions regarding his standing in the Program. JA-200; JA-247:8-13; JA-320-JA-323; JA-331:7-14; JA-334:15-24; JA-351:4-17; JA-353:13-JA-354:10; JA-357-JA-358; JA-389:6-10; JA-486:15-JA-487:2; JA-494; JA-500-JA-503; JA-509:2-20; JA-598-JA-599; JA-632; JA-635-JA-646; JA-651-JA-653; JA-669-JA-683; JA-686-JA-700; JA-707-JA-708; JA-710-JA-738; JA-742; JA-747; JA-757-JA-758; JA-828:5-13; JA-830:12-16; JA-835:10-21; JA-837:9-JA-838:2; JA-839:19-JA-841:5; JA-900-JA-905; JA-946 ¶ 48; JA-974 ¶ 51; JA-1125 ¶ 30; JA-1152 ¶ 131; JA-1157 ¶ 146; JA-1180-JA-1181 ¶¶ 20-21; JA-1188 ¶¶ 47-48.

Because Bassi cannot prove a direct or indirect employment relationship with NYMC under any theory, the judgment for NYMC should be affirmed.

> 3. *Even if NYMC were a joint employer, NYMC would not be liable as a matter of law given the facts of record.*

Even if Bassi were able to establish that NYMC was a joint employer, it would not follow that NYMC is liable. As this Court established in *Lima*, an indirect joint employer cannot be liable – and summary judgment for the defendant is proper – absent evidence that the indirect employer knew or should have known about the alleged discrimination. *Lima v. Adecco*, 375 Fed. App'x 54, 55 (2d Cir. 2010);

*Toledo v. Brend Restoration, LLC*, 2023 WL 3381249, at \*3 (S.D.N.Y. May 11, 2023). Here, there is simply no evidence NYMC was aware of the conduct complained of. The undisputed record evidence shows the attempted meeting with McCarrick occurred before the patka comment and, in any event, no information was shared with McCarrick. JA-789:21-JA-790:9; JA-1189-JA-1190 ¶¶ 55-56; JA-1241 ¶ 13; JA-1487 ¶ 11; JA-1493 ¶ 6; JA-1503 ¶ 12. The undisputed record evidence shows NYMC did not make the patka comments, was not present for the conversations regarding the patka comments, was not privy to the complaint or resulting meeting regarding the patka comments, and was not involved in or privy to the purportedly disparate day-to-day interactions between the Core Faculty and the Residents. JA-252:9-22; JA-497:21-23; JA-790:10-12; JA-795:21-22; JA-796:24-JA-797:10; JA-798:3-JA-799:17; JA-830:4-8; JA-830:12-14; JA-1191 ¶¶ 61-62; *see also* JA-182:10-16. The judgment for NYMC should therefore be affirmed.

**D. Even if Bassi had not abandoned or waived his arguments against NYMC with respect to his discrimination and retaliation claims, judgment for NYMC should be affirmed on these claims because Bassi cannot prove the required elements.**

*1. Bassi cannot establish a prima facie case of discrimination against NYMC.*

By this point in the analysis, connecting Bassi's discrimination and retaliation claims to NYMC requires so many unproven assumptions that it is a fiction.

39

Nevertheless, in the interest of thoroughness, if we were to assume *arguendo* that Bassi's evidence actually related to NYMC (which it indisputably does not) and NYMC were Bassi's employer (which it indisputably was not), Bassi's discrimination and retaliation claims fail as a matter of law for numerous reasons.

According to Bassi, the framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), should not apply to this case because he submitted direct evidence in the form of the patka comments and comparator declarations discussed above. He is wrong.

Because, as discussed in detail above, Bassi offers nothing to connect the patka comments or the disparate treatment alleged in the declarations to NYMC, there is not so much as an allegation of direct evidence against NYMC. Thus, the *McDonnell Douglas* standard is the *only* standard applicable to Bassi's discrimination and retaliation claims against NYMC. *See e.g., Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (*McDonnell Douglas* applies to claims under Section 1981); *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014) (same standard applies to Title VII); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (same standard applies to NYSHRL); *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 111-12 (S.D.N.Y. 2022) (collecting cases) (Title VII, NYSHRL and Section 1981 claims all analyzed under *McDonnell Douglas*).

40

Under the *McDonnell Douglas* framework, a plaintiff must establish a *prima facie* case of discrimination by proving that: (1) he is a member of a protected class; (2) he is qualified for the position sought or held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination. *Ruiz*, 609 F.3d at 491-92 (citations omitted). Bassi's fails the *prima facie* case on multiple fronts.

a) <u>Bassi cannot prove he was qualified.</u>

For a discussion regarding Bassi's failure to prove he was qualified for the position sought or held, NYMC joins Section I(B) of the Brief for Defendants-Appellees Phelps Memorial Hospital Association, DBA Phelps Hospital, Northwell Health, Inc. and Shantie Harkisoon, M.D. ("Hospital Defendants Brief").

b) <u>Bassi cannot prove an adverse employment action by NYMC.</u>

As detailed above, the undisputed record evidence shows that Bassi was employed by Phelps and all actions taken with regard to Bassi's day-to-day interactions or standing in the Program were made by actors other than NYMC. Because Bassi cannot prove that NYMC was his employer or took any action against him whatsoever – let alone an adverse action – the judgment for NYMC should be affirmed.

For further discussion regarding Bassi's failure to prove an adverse employment action as a matter of law, NYMC joins Section I(A) of the Hospital Defendants Brief.

c)     <u>Bassi cannot prove circumstances that give rise to an inference of discrimination by NYMC.</u>

As detailed above, the undisputed record evidence shows that Bassi was employed by Phelps and all actions taken with regard to Bassi's day-to-day interactions or standing in the Program were made by actors other than NYMC. Because Bassi cannot prove that NYMC was his employer or took any action against him whatsoever, he certainly cannot prove that NYMC took an employment action under circumstances suggesting an intent to discriminate against him. The judgment for NYMC should therefore be affirmed.

Nevertheless, NYMC will briefly address Bassi's claim that the patka comments and declarations by his former colleagues should defeat summary judgment on this point. For a discussion as to why this evidence is not direct and, in any event, fails to establish circumstances giving rise to an inference of discrimination, NYMC joins Section I(C) of the Hospital Defendants Brief.

The declarations, in particular, are inadmissible hearsay statements recounting in the vaguest of terms things purportedly heard from Core Faculty or about Core Faculty from third parties. *See* Fed. R. Civ. Pro. 56(c)(4) (declarations used to oppose summary judgment must be admissible evidence); *Johnson v. L'Oreal*, 2023

42

WL 2637456, at *4 (2d Cir. Mar. 27, 2023) (same) (citing *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169-70 (2d Cir. 2014)); JA-1493 ¶ 4 ("Core Faculty would demand that [Bassi] ask the patients about a broader variety of health conditions"); JA-1496-JA-1497 ¶ 7 ("Core Faculty would normally ask us what the appropriate medication was," "Core Faculty would ask [Bassi] follow up questions such as what alternative should be offered if the patient was allergic …, would demand that Dr. Bassi recite any potential side effects of that medication, and ask why he had no considered prescribing alternative medications"); JA-1497 ¶ 8 ("Core Faculty would ask Dr. Bassi questions about a patient's conditions"); JA-1502 ¶ 7 ("Some core faculty members told us that if we had other more pressing work to do, such as call in the hospital, medical notes could be submitted past the 24-hour mark."), ¶ 10 (recounting comments allegedly made by Dr. Rachna Kaul); JA-1503 ¶ 11 (recounting remarks allegedly made by Dr. Kevin Brown" and "[o]ther family physicians").

The declarations also fall far short of establishing disparate treatment. In order to prove an inference of intent through disparate treatment – meaning, that an employer treated the plaintiff less favorably than another employee outside his protected classification – the plaintiff must show that the other employee, the comparator, was similarly situated "in all material respects." *E.g., Ruiz*, 609 F.3d at 494-95 (affirming summary judgment for defendants where plaintiff failed to

establish sufficient similarity with comparators); *Baity v. Kralik*, 51 F. Supp. 3d 414, 445-48 (S.D.N.Y. 2014) (granting summary judgment for employer and collecting cases explaining that comparators must be similarly situated in all material respects). A comparator is "similarly situated" if they were "(1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Ruiz*, 609 F.3d at 494-95. "[T]he issue of whether fellow employees are similarly situated is somewhat strict," and conclusory statements are not sufficient to defeat summary judgment "where it is clear that no reasonable jury could find the similarly situated prong met." *Graham v. Elmira City Sch. Dist.*, Case No. 6:15-CV-6645T, 2015 WL 1383657, at *5 (W.D.N.Y. Mar. 25, 2015) (internal quotations and citations omitted) (granting summary judgment for employer); *e.g. Johnson v. L'Oreal USA*, Case No. 21-2914-cv, 2023 WL 2637456, at *4 (2d Cir. Mar. 27, 2023) (affirming summary judgment for employer); *Jordan v. United Health Grp., Inc.*, 783 Fed. App'x 31, 33-34 (2d Cir. 2019) (affirming summary judgment for employer); *Saji v. Nassau Univ. Med. Cntr.*, 724 Fed. App'x 11, 17-18 (2d Cir. 2018) (summary order) (affirming summary judgment for employer); *Fahrenkrug v. Verizon Svcs. Corp.*, 652 Fed. App'x 54, 56-57 (2d Cir. 2016) (summary order) (affirming summary judgment for employer); *Zuk v. Onondaga Cnty.*, 471 Fed. App'x 70, 71-72 (2d Cir. 2012) (affirming summary judgment for employer); *Ruiz*, 609 F.3d at 494-95. Vague references to unidentifiable employees are not sufficient.

44

*Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 115 (S.D.N.Y. 2022) (plaintiff "must actually identify a similarly situated employee" to make out *prima facie* case).

Here, the declarations do no more than establish that three former residents subjectively believe unnamed Core Faculty treated Bassi more harshly than other unnamed residents during his day-to-day training in the Program. JA-1492-JA-1506. There is no record evidence sufficient to prove that the "other residents" were outside of Bassi's protected class *or* similarly situated to Bassi in the Program. There is no competent evidence from which a reasonable juror could conclude that all of the Program's "other residents" were not South Asian/Punjabi or Sikh. *See* JA-291:18-23 (Bassi lacks personal knowledge regarding other residents' religious preferences). There is no competent evidence from which a reasonable juror could conclude that any of the "other residents" failed to perform certain clinician duties, as Bassi admits having done (JA-478:7-14); improperly back-dated the time stamp on notes, as Bassi did (JA-210-JA-211); failed to complete the expected number of patient encounters, as Bassi did (JA-638, JA-697; JA-716, JA-727, JA-735); or struggled with medical knowledge, patient questioning, or plan development like Bassi (JA-632, JA-636, JA-640-JA-644, JA-669-JA-700, JA-713-JA-738).

Moreover, there is no record evidence connecting the day-to-day harshness that is alleged in the declarations to any actual decision regarding Bassi's standing in the Program. *See Brown v. CSX Transp., Inc.*, 155 F. Supp. 3d 265, 275

45

(W.D.N.Y. 2016) (no inference of discrimination where alleged disparate treatment unrelated to the alleged adverse action at issue). Nor is there evidence to suggest that NYMC was involved in whatever interactions the Core Faculty may have had with Bassi or any other resident. Put differently, in order for Bassi to defeat NYMC's summary judgment the Court would have to assume, without record evidence: the identities of the "other residents" who purportedly received differential treatment; the identities of the Core Faculty members purportedly responsible for the differential treatment; how the "other residents" might, or might not, have been similarly situated to Bassi; how the Core Faculty's day-to-day interactions with Bassi or the "other residents" are connected with Harkisoon and the CCC's decisions regarding Program standing; and that NYMC was involved in some way in the day-to-day interaction between the residents and Core Faculty.

Even if Bassi intended the Court to construe the declarations as evidence that Mandry, Roberts, and Zaks were themselves specific comparators, the evidence fails to establish that any among them were similarly situated with Bassi.

Mandry's declaration states that Core Faculty questioned her less broadly than Bassi about patient conditions.[9] JA-1493 ¶ 4. Other than that she was "a classmate

---

[9] This is the portion of Mandry's declaration that pertains her individual treatment, as opposed to the treatment of the unnamed "other residents."

46

of Dr. Bassi" (JA-1492 ¶ 2), there is no evidence to prove she was similarly situated to Bassi in any respect.

Roberts' declaration states that Core Faculty questioned him less repeatedly than Dr. Bassi (JA-1476 ¶¶ 6-7), Core Faculty did not pressure him to complete learning modules (JA-1497 ¶ 11-JA-1498 ¶ 11), he was permitted to complete the Program despite being one Intrauterine Device ("IUD") insertion procedure short of the requirement (JA-1498 ¶ 12), and he was permitted to complete the Program despite the fact that his procedures were not all observed by Core Faculty (JA-1498 ¶ 13).[10] First, this misses the mark. The record evidence makes clear that Bassi was given an academic action plan, put on remediation, and held back from PGY-3 because of his deficiencies in, among other things, patient care and medical knowledge – not his failure to complete individual learning modules or an IUD insertion. JA-635-JA-640; JA-645-JA-646; JA-707-JA-708; JA-711-JA-712; JA-740-JA-742. Second, this does nothing to prove that Roberts was similarly situated to Bassi. By way of example, Roberts' 2017 Summative Evaluation shows that he performed far better than Bassi in all areas, including patient care and medical knowledge. *Compare* SA-5-SA-14, *with* JA-635-JA-640, JA-690-700, and JA-729-JA-738. Roberts' 2017 Summative Evaluation shows that he met the required

---

[10] These are the portions of Roberts' declaration that pertain to his individual treatment, as opposed to the treatment of the unnamed "other residents."

47

number of patient encounters for his level. SA-11. Bassi's 2014, 2016, and 2017 Summative Evaluations, by contrast, show he did not. JA-638; JA-697; JA-735. Where Roberts alleges he was *one* IUD procedure short of the requirement, Bassi's 2017 Summative Evaluation shows that he was multiple procedures short of the target. JA-735.

Zaks' declaration states that she received credit for procedures not observed by Core Faculty. [11] JA-1503 ¶ 13. As with Roberts, this misses the mark because the primary problem with Bassi's performance were deficiencies in patient care and medical knowledge – topics about which Zaks offers no evidence that would allow a comparison between she and Bassi. And, as with Mandry, there is no other evidence to prove she was similarly situated to Bassi in any respect.

On the whole, there is no evidence sufficient to prove that any comparator – named or not[12] – was similarly situated to Bassi in any respect. Because Bassi cannot establish a *prima facie* case of discrimination against NYMC using direct or circumstantial evidence, judgment for NYMC on these claims should be affirmed.

---

[11] This is the portion of Zaks' declaration that pertains to her individual treatment, as opposed to the treatment of the unnamed "other residents."

[12] Bassi includes in the appendix certain disciplinary memoranda for other named residents, but there is no cogent argument from which to discern how or why he alleges such individuals might be similarly situated to him. *See* SA-15-SA-23.

48

> **2.** *Bassi cannot establish a prima facie case of retaliation against NYMC.*

To prove a *prima facie* case of retaliation under Title VII, Section 1981, or the NYSHRL, the plaintiff must show: (1) he engaged in protected activity; (2) the employer was aware of the activity; (3) he suffered a materially adverse action; and (4) there was a causal connection between the protected activity and the adverse action. *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 116-17 (S.D.N.Y. 2022) (collecting cases). Here, too, Bassi's claims against NYMC fail on multiple fronts.

> a) <u>Bassi cannot prove NYMC was aware of any protected activity.</u>

Though his Brief is less than clear, it seems the sole protected activity Bassi relies upon for his retaliation claim is his complaint regarding the patka comments. Brief pp. 43-48. In his Brief, he states that he brought this complaint "to the Human Resources department of both Phelps and Open Door" and that the "Core Faculty and CCC were well aware of [the] complaint." Brief pp. 45-46. There is no evidence sufficient to prove that NYMC had knowledge of the complaint.

> b) <u>Bassi cannot prove a materially adverse action by NYMC.</u>

As detailed above, the undisputed record evidence shows that Bassi was employed by Phelps and all actions taken with regard to Bassi's day-to-day interactions or standing in the Program were made by actors other than NYMC. Because Bassi cannot prove that NYMC was his employer or took any action against

49

him whatsoever – let alone a materially adverse action – the judgment for NYMC should be affirmed.

> c) Bassi cannot prove a materially adverse action by NYMC.

For discussion on why Bassi's retaliation claims fail as a matter of law due to his failure to establish a causal connection between his complaint and the actions complained of, NYMC joins Section II(A) of the Hospital Defendants Brief.

## VII. SUMMARY JUDGMENT FOR NYMC ON BASSI'S BREACH OF CONTRACT CLAIM SHOULD BE AFFIRMED.

NYMC's judgment on Bassi's contract claim should be affirmed first and foremost because NYMC is not a party to the contracts Bassi seeks to enforce and Bassi has waived all arguments that NYMC should be liable thereunder. In addition, Bassi fails as a matter of law to prove the elements required for this claim.

> **A.** **Bassi's contract claim against NYMC fails as a matter of law because NYMC is not a party to the contracts Bassi seeks to enforce.**

To prove a breach of contract claim under New York law, the plaintiff must establish: "(i) the formation of a contract *between the parties*; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (emphasis added). The contract claim fails as a matter of law where the defendant is not a party to the contract at issue. *E.g. Rennaker Co. Consulting, Inc. v. TLM Grp., LLC*, Case No. 16 Civ. 3787 (DAB), 2017 WL 2304302, at *2-3 (S.D.N.Y. May 18, 2017) (dismissing contract

claims because "it is black letter law that non-parties ordinarily cannot be held liable for a breach of contract"); *Reels v. Dynamics in Play, LLC*, Case No. 516534/2020, 2023 WL 2721671, at *9-10 (N.Y. Sup. Ct. Mar. 30, 2023) (dismissing contract claim against non-party defendant where plaintiff alleged contract applied to all "defendants" but face of agreement showed specific parties); *Black Car & Livery Ins., Inc. v. H & W Brokerage, Inc.*, 28 A.D.3d 595, 595-96 (N.Y. App. Div. 2006) (affirming dismissal of contract claim against non-party to contract).

Here, Bassi's breach of contract claim is based on his Residency Agreements with Phelps. JA-66 ¶¶ 158-160; Brief p. 2, p. 48. NYMC, however, is not a party to the Residency Agreements. JA-605-JA-627.

The face of the Residency Agreements clearly state that they are between Bassi and Phelps alone. JA-605 ("This Agreement is made and entered into … by and between Harmeetinder Bassi and Phelps Memorial Hospital Center."); JA-617 (same). The Residency Agreements are signed by Bassi, Phelps employee Harkisoon, and Phelps Chief Executive Officer Keith Safian – not NYMC. JA-610; JA-622. The terms of the Residency Agreements do not provide for any benefits to, or obligations from, NYMC. JA-605-JA-627. In fact – aside from the fact that the NYMC is included in the name of the Program – the Agreements do not so much as mention NYMC. JA-605-JA-627.

Because the record clearly shows that NYMC is not a party to the Residency Agreements and, under New York law, NYMC cannot be liable for any alleged breach thereof, judgment for NYMC should be affirmed.

### B. Bassi waived his arguments that non-party NYMC should be bound to the Residency Agreements on appeal.

As previously discussed, arguments not raised in the appellant's opening brief are waived. *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 110 (S.D.N.Y. 2022) (citing *Robinson v. Am. Int'l Grp., Inc.*, 2009 WL 3154312, at *4 & n. 65 (S.D.N.Y. Sept. 30, 2009), *aff'd* 396 Fed. App'x 781 (2d Cir. 2010); *Joseph v. Ocwen Fin. Corp.*, 2023 WL 3635077, at *1 n. 1 (2d Cir. May 25, 2023) (quoting *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994) and *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 124 n. 29 (2d Cir. 2005)); *In re Platinum & Palladium Antitrust Litigation*, 61 F.4th 242, 276 (2d Cir. 2023).

In this case, NYMC argued that it was entitled to summary judgment on Bassi's contract claim because it is not a party to the Residency Agreements Bassi seeks to enforce, and the District Court entered judgment for NYMC on that basis. Brief in Support of the Motion for Summary Judgment Filed by New York Medical College (ECF 108) pp. 22-23; JA-1567 ("At the outset, Plaintiff's breach of contract claim against NYMC is dismissed with prejudice because NYMC is not a party to the contract at issue.").

LEGAL\65787581\1

Bassi wholly ignores this issue on appeal. In his Brief, Bassi declines to put forth any argument whatsoever regarding whether, how, or to what extent, NYMC could be held liable under the Residency Agreements despite its status as a non-party. Brief pp. 48-60. In the portion of his Brief that pertains to his breach of contract claim, Bassi offers no authority addressing non-party contractual liability.[13]

Because Bassi waived his opportunity to argue that NYMC is legally bound to the Residency Agreements despite being a non-party, judgment for NYMC on Bassi's breach of contract claim should be affirmed.

### C.  New York law does not allow for NYMC to be added as a party.

As set forth above, Bassi failed to raise any argument in support of his contract claim against NYMC on appeal, his time to do so has passed, and NYMC is entitled to judgment.

---

[13] Bassi cites generally to cases standing for the proposition that an implied contract may be recognized between a school and its students in various degree programs. Brief p. 49, p. 55. These cases do not address the issue of non-party contractual liability and, moreover, are irrelevant to the instant case because: (a) Bassi was not an NYMC student; and (b) the contract Bassi seeks to enforce is not an implied contract, but rather an express contract between Bassi and Phelps. Brief p. 49, p. 55; JA-605-JA-627; JA-847:12-16. Bassi also cites *Barsoumian v. Univ. at Buffalo,* but in that case the non-contracting-party university was dismissed from the action prior to summary judgment by way of immunity and there was no discussion whatsoever regarding its purported liability on the contract. *Barsoumian v. Univ. at Buffalo*, 2012 WL 930331, at *3 (W.D.N.Y. Mar. 19, 2012)

Assuming *arguendo* that Bassi had been inclined to put forth an argument on his contract claim against NYMC, it perhaps would have been that the Court should make NYMC a party to the Residency Agreements simply because Harkisoon signed them as Director of the Program and NYMC sponsored the Program at the time. This result, however, would be contrary to applicable New York law.

Even if Harkisoon's signature were construed as a signature on behalf of "the Program" rather than Phelps (who employed Bassi, employed Harkisoon, and operated the Program), it would not follow that NYMC becomes a party. The Program was not a legal entity and, under New York law, where an individual executes a contract on behalf of a non-existent entity, the individual becomes liable for the non-existent entity's breach. JA-828:25-JA-829:3; *see Sutton v. Houllou*, 191 A.D.3d 1031 (N.Y. App. Div. 2021). Consequently, Harkisoon's signature could be construed: (a) as a signature on behalf of named-party Phelps, in which case Phelps may be a proper defendant in the contract action; or (b) as a signature on behalf of the legally non-existent Program, in which case Harkisoon may have been[14] a proper defendant in the contract action. In no event can it be construed to bind NYMC to the Residency Agreements based on the record here.

---

[14] Bassi does not assert a contract claim against Harkisoon. JA-65-JA-66.

**D.     Bassi's contract claim fails as a matter of law because there he cannot establish a brief or recoverable damages.**

For discussion regarding Bassi's failure to prove the breach and damages elements of his contract claim, NYMC joins Section II of the Hospital Defendants Brief.

**E.     Bassi is certainly not entitled to summary judgment on his breach of contract claim against NYMC.**

In the event the Court decides NYMC is not entitled to summary judgment on Bassi's breach of contract claim, NYMC maintains that Bassi's motion for summary judgment on that claim was properly denied for the reasons stated herein.

**VIII.  SUMMARY JUDGMENT FOR NYMC ON BASSI'S TORTIOUS INTERFERENCE CLAIM SHOULD BE AFFIRMED.**

**A.     Bassi abandoned and waived all arguments relating to his tortious interference claim by failing to raise them at summary judgment or on appeal.**

As discussed above, a plaintiff abandons an argument if he fails to raise it in his opposition to a motion for summary judgment before the summary judgment is decided. *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 110 (S.D.N.Y. 2022) (citing *Robinson v. Am. Int'l Grp., Inc.*, Case No. 08-CV-1724, 2009 WL 3154312, at *4 & n. 65 (S.D.N.Y. Sept. 30, 2009), *aff'd* 396 Fed. App'x 781 (2d Cir. 2010)). An appellate court will not hear arguments raised for the first time on appeal or arguments that were omitted from the appellant's opening brief. *Joseph v. Ocwen Fin. Corp.*, Case No. 22-1042, 2023 WL 3635077, at *1 n. 1 (2d Cir. May 25, 2023)

(quoting *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994) and *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 124 n. 29 (2d Cir. 2005); *In re Platinum & Palladium Antitrust Litigation*, 61 F.4th 242, 276 (2d Cir. 2023) (arguments "not made in an appellant's opening brief are waived").

"It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. This rule has *particular force* where an appellant makes an argument only in a footnote." *U.S. v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013) (citations omitted) (emphasis added); *e.g., Syntel Sterling Best Shores Mauritius Ltd. v. The Trizetto Grp., Inc.*, 68 F.4th 792, 814 n. 44 (2d Cir. 2023) (footnote insufficient to preserve claim); *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012) (footnote insufficient to preserve claim); *Shah v. Wilco Sys., Inc.*, 76 Fed. App'x 383, 384 (2d Cir. 2003) ("[a]n argument mentioned only in a footnote is not adequately raised"). "Merely mentioning or simply stating an issue in an appellate brief in insufficient to preserve it" for review, and the appellant "cannot resurrect such an argument in its reply brief." *Niagara Mohawk Power Corp.*, 673 F.3d at 107 (first quote); *Shah*, 76 Fed. App'x at 384 (second quote).

Here, NYMC clearly argued that it was entitled to summary judgment on Bassi's tortious interference claim, and Bassi failed to put forth any argument to the

contrary in his opposition to NYMC's motion below or in his opening Brief on appeal.  Brief in Support of the Motion for Summary Judgment Filed by New York Medical College (ECF 108) pp. 23-24; Memorandum of Law in Opposition to defendants' Motions for Summary Judgment (ECF 132) pp. 37-39; Brief pp. 22-60. He mentions it only in passing at a footnote on page 48 of the Brief, which offers no legal authority and does nothing to address why the District Court's grant of summary judgment for NYMC was purportedly incorrect.  Brief p. 48 n. 2.  Instead, Bassi simply states that he "reserves his right to respond to any arguments raised by Appellees but not addressed by the lower court."  Brief p. 48 n. 2.  No such right exists.  As the appellant, Bassi is obligated to make his case in the opening brief. Fed. R. App. P. 28(a)(8).  He is not entitled to withhold his argument and then attempt to cobble together an appeal based off of NYMC's responsive briefing.  To allow such a procedure would be contrary to well-established appellate law and have the practical effect of denying NYMC the opportunity to respond to the as-yet-undisclosed merits of Bassi's appeal on this claim.

Because Bassi advanced no argument in support of his tortious interference claim, the judgment for NYMC should be affirmed.

**B.      Bassi's tortious interference claims fails as a matter of law because Bassi cannot show NYMC induced Phelps to breach the Residency Agreement.**

If we were to assume Bassi did not entirely waive his argument with regard to tortious interference (which he did), because NYMC has no indication of what Bassi might argue on appeal, NYMC is left to repeat here what it argued at summary judgment: To state a claim for Tortious Interference with Contract against NYMC under New York law, Bassi must establish "the existence of a valid contract between [himself] and some third party; knowledge of that contract by [NYMC]; [NYMC's] intentional inducement of a breach by the third party to the contract; and damages to [Bassi] as a result of the third party's breach." *Action Nissan, Inc. v. Nissan N. Am.*, 454 F. Supp. 2d 108, 132 (S.D.N.Y. 2006) (quoting *Lazar's Auto Sales, Inc. v. Chrysler Fin. Corp.*, 83 F. Supp. 2d 384, 391 (citing *Int'l Minerals & Rs., SA v. Pappas*, 96 F.3d 586, 595 (2d Cir. 1996))).

In this case, Bassi was a party to the Residency Agreements with Phelps. JA-605-JA-627. In his Amended Complaint, Bassi baldly asserted that NYMC "intentionally procured the breach of the Residency Contract with Phelps by, inter alia, taking the actions in paragraph 160" of his Amended Complaint. JA-67 ¶ 164. Paragraph 160 of the Amended Complaint, in turn, alleged that Phelps breached the Residency Agreement by (a) failing to give Bassi timely notice of his non-promotion, (b) failing to give Bassi timely notice of his non-renewal, (c) withholding

academic credit for rotations that Bassi successfully passed, (d) denying Bassi due process with respect to his non-promotion, non-renewal, appeal, and receipt of academic credit, (e) interfering with deliberations and decisions of the Appeals Committee, and (f) refusing to implement either the original or improperly modified decision of the Appeals Committee. JA-66 ¶ 160. Critically, Bassi did not make any specific allegations to support – and there is no record evidence to prove – that NYMC "induced" Phelps to take these alleged actions or to otherwise breach Bassi's Residency Agreement(s).

Consequently, judgment for NYMC on Bassi's tortious interference claim should be affirmed.

## **CONCLUSION**

For the reasons stated herein, the District Court was correct to deny Bassi's motion for partial summary judgment and judgment for NYMC on all accounts should be affirmed.

Dated: September 7, 2023                   Respectfully submitted,

                                        */s/Mariah L. Passarelli*
                                        Mariah L. Passarelli
                                        Cozen O'Connor
                                        One Oxford Centre
                                        301 Grant Street, 41st Floor
                                        Pittsburgh, PA 15219
                                        Telephone – (412) 620-6502
                                        Email –mpassarelli@cozen.com

59

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with: (1) the length and type-volume limitation of Fed. R. App. P. 32(a)(7)(A) and Second Circuit Local R. 28.1.1(a) because it contains 12,418 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and (2) the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman) using Microsoft Word 365 (the same program used to calculate the word count).